IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| REBEKAH JENNINGS; BRENNAN HARMON; ANDREW PAYNE; NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN McCRAW, in his official capacity as Director of the Texas Department of Public Safety, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 5:10-CV-141-C |

## ORDER

On this date, the Court considered:

(1) Plaintiffs Rebekah Jennings, Brennan Harmon, Andrew Payne, and National Rifle Association of America, Inc.'s ("Plaintiffs") Motion for Summary Judgment, Brief, and Appendix, filed May 16, 2011;

(2) the Response and Brief filed by Defendant Steven McCraw, in his Official Capacity as Director of the Texas Department of Public Safety ("McCraw") on June 6, 2011;

(3) Defendant McCraw's Motion for Summary Judgment, Brief, and Appendix, filed May 16, 2011;

(4) Plaintiffs' Response and Brief, filed June 6, 2011; and

**EXHIBIT "B"**

  (5) Brief of *Amici Curiae* Brady Center to Prevent Gun Violence, Graduate Student Assembly and Student Government of the University of Texas at Austin, Mothers Against Teen Violence, Students for Gun-Free Schools in Texas, and Texas Chapters of the Brady Campaign to Prevent Gun Violence in Support of Defendants [sic], filed May 18, 2011.

After considering the relevant arguments and authorities, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment.

## I. FACTS

### a. Preliminary Statement

Plaintiffs bring this action for declaratory and injunctive relief challenging the constitutionality of Texas statutes that prohibit persons under the age of 21 and who have not served or are not serving currently in the military from carrying a handgun outside the home. The crux of Plaintiffs' allegations is that the statutes violate both the Second Amendment to the United States Constitution, as it applies to the states through the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### b. Statutory Scheme

Under Texas law, a "person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun . . . if the person is not: (1) on the person's own premises or premises under the person's control[1]; or (2) inside of or directly en route to a motor vehicle or watercraft that is owned by the person or under the person's control."

---

[1] It is undisputed that, under Texas law, the Individual Plaintiffs can carry a handgun in their own homes, among other specified locations not at issue here.

2

Tex. Penal Code § 46.02(a). If a person "is at least 21 years of age" (and meets other requirements), he or she "is eligible for a license to carry a concealed handgun" ("CHL") ("the licensing scheme"). Tex. Gov't Code § 411.172(a)(2).[2]

Moreover, if "a person . . . is at least 18 years of age but not yet 21 years of age," he or she "is eligible for a license to carry a concealed handgun if the person is a member or veteran of the United States armed forces, including a member or veteran of the reserves or national guard" or "was discharged under honorable conditions, if discharged from the United States armed forces, reserves, or national guard" and meets other eligibility requirements except the age condition mentioned above.[3] Tex. Gov't Code §§ 411.172(g).

*c. Plaintiffs*

Jennings, Harmon, and Payne are all Texas residents between the ages of 18 and 20. They have expressed a desire to carry a handgun outside of the home or automobile for self-defense purposes but currently do not because Texas law prohibits them from doing so. All of the Individual Plaintiffs allege that they meet each of the requirements for obtaining a Texas CHL save the age requirement. They have completed a handgun safety course taught by a CHL instructor licensed by the Texas Department of Public Safety and have passed both the written and range tests that are given to applicants for a CHL. The Individual Plaintiffs further allege

---

[2]Texas Penal Code § 46.02(a) also does not apply to, in general, a person who is traveling or engaging in lawful hunting, fishing, or other sporting activity. Tex. Penal Code § 46.15. Various occupational exceptions also apply to the general prohibition. *See id.*

[3]For ease of reference, the Court will refer to those excluded from this classification as "non-military personnel."

3

that but for the age requirement they would have been able to obtain a Texas CHL and would occasionally carry a handgun as permitted by the license.

The National Rifle Association ("NRA") is a membership organization committed to protecting and defending the fundamental right to keep and bear arms as well as promoting the safe and responsible use of firearms for self-defense and other lawful purposes. Hundreds of the NRA's members in Texas are 18 to 20 years old. But for the minimum age requirement imposed by Texas Government Code § 411.172, some of these 18- to 20-year-old NRA members, including Jennings, Harmon, and Payne, would be eligible to obtain a CHL and would carry a handgun for self-defense outside of the home or automobile.

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); that is, "[a]n issue is material if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). When reviewing a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006). In doing so, the court "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Where parties have filed cross-motions for summary judgment, the court must consider each motion separately because each movant bears the burden of showing that no genuine

dispute of material fact exists and that it is entitled to judgment as a matter of law. *Shaw Constructors, Inc. v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

### III. ANALYSIS

*a. Standing*

McCraw challenges the standing to bring suit of the Individual Plaintiffs where they have not actually applied for a CHL and they do not face immediate criminal prosecution,[4] as well as the associational standing of the NRA, who brings this suit on behalf of its 18- to 20-year-old members. Article III restricts the judicial power to actual "cases" and "controversies," a limitation understood to confine the federal judiciary to "the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009); *see* U.S. Const. art. III, § 1. The doctrine of standing enforces this limitation. *Summers*, 555 U.S. at 492; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

1. Texas Government Code § 411.172

In order to satisfy the standing requirement of an "actual or imminent" injury, a plaintiff generally must submit to the challenged policy before pursuing an action to dispute it. *See, e.g., Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-71 (1972); *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 388 (5th Cir. 2003). Strict adherence to this general rule, however, may

---

[4]McCraw also challenges Plaintiffs' standing based on their failure to exhaust administrative remedies. No argument accompanies this assertion in McCraw's brief, nor does it identify any potential administrative remedies Plaintiffs could have pursued prior to the filing of this suit. Nevertheless, when a plaintiff's claims are premised on 42 U.S.C. § 1983, as are the ones here, no exhaustion of administrative remedies is required. *Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 497 n.10 (5th Cir. 2004).

be excused when a policy's flat prohibition would render submission futile. *Davis v. Tarrant Cnty. Tex.*, 565 F.3d 214, 220 (5th Cir. 2009) (citing *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005)); *see also Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998) (holding that plaintiffs did not need to apply for building permits to establish standing where the defendant had already "specifically stat[ed] that it would not permit the construction or placement of any structures on their land.").

Plaintiffs seek to carry a concealed handgun but are prevented from doing so because they do not posses a CHL. The right to carry a concealed handgun arguably touches on Plaintiffs' Second Amendment right to bear arms, and this Court could provide Plaintiffs the relief sought should it hold unconstitutional the age requirement of Texas Government Code § 411.172. Although Plaintiffs have not actually completed their applications for a CHL, to do so would be futile. The issuance of this license to non-military individuals under 21 years of age is categorically prohibited by statute. *See* Tex. Gov't Code § 411.172(a)(2) & (g). Plaintiffs have put forward evidence that they would be qualified for a CHL but for the minimum age requirement, and McCraw has not demonstrated evidence to the contrary. The futility of a formal application, coupled with the fact that Plaintiffs would qualify for a CHL but for the age requirement, is sufficient to confer standing.

Once a court has determined that at least one plaintiff has standing, it need not consider whether the remaining plaintiffs have standing to maintain the suit. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977). Because the Court has held that the Individual Plaintiffs have standing to challenge Texas Government Code § 411.172, it need not reach the question of the NRA's associational standing to challenge the same statute.

2. Texas Penal Code § 46.02

To establish standing to challenge the constitutionality of a criminal statute, a plaintiff must show a "credible threat" that the statute will be enforced against the plaintiff. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). While a plaintiff need not first expose himself to actual arrest or prosecution to gain standing to challenge a criminal statute, "[w]hen plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Id.* at 298-299 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

Plaintiffs have not alleged facts sufficient to confer standing to challenge Texas Penal Code § 46.02 because they cannot demonstrate a credible threat that McCraw will enforce the statute against them.[5] The relief Plaintiffs seek, as detailed in their complaint, is the issuance of a CHL in order to lawfully carry a handgun. *See* Pls.' Second Am. Compl. 7, 9, & 10 ("But for the age requirement, [Plaintiff] would have obtained [his or her] Texas CHL and occasionally would carry a handgun as permitted by the license."). At no point in their complaint do Plaintiffs allege that they desire to carry a handgun openly (as opposed to concealed), concealed without a license, or in a manner inconsistent with the limitations governing licensed concealed carry. And because the possession of a validly issued CHL excepts the license holder from

---

[5]Although the Court has misgivings as to whether McCraw, under *Ex parte Young*, 209 U.S. 123 (1908), is the proper defendant with respect to Plaintiffs' challenge of Texas Penal Code § 46.02, it need not reach this question in light of its resolution of the Article III standing issue.

prosecution under Texas Penal Code § 46.02 for all intents and purposes, Plaintiffs have not demonstrated a credible threat of prosecution.

Therefore, the Court is of the opinion that Plaintiffs lack standing to challenge Texas Penal Code § 46.02. The Court is also of the opinion that, because the relief sought by the NRA with respect to its challenge to Texas Penal Code § 46.02 involves the issuance of CHLs for its otherwise qualified 18- to 20-year-old membership, it therefore lacks standing for the same reasons that are fatal to the Individual Plaintiffs' challenge.

### *b. Second Amendment*

The text of the Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2008, the Supreme Court held in *District of Columbia v. Heller* that the Second Amendment confers an individual right to keep and bear arms apart from any connection with a state-regulated militia.[6] 554 U.S. 570, 595 (2008). The Court stated, however, that the right to bear arms is not absolute: "Like most rights, *the right secured by the Second Amendment is not unlimited*. From Blackstone through the 19th-century cases, commentators and courts routinely explained that *the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose*." *Id.* at 626-27 (citations omitted and emphasis added).

---

[6] Two years later, in *McDonald v. City of Chicago*, the Supreme Court held that the Second Amendment is fully applicable to the states. 130 S. Ct. 3020, 3026 (2010). While this case is of obvious importance with regard to constitutional challenges to state laws, the Court focuses its discussion on *Heller* because it is the case that more fully discusses the nature of the right conferred by the Second Amendment.

8

As groundbreaking as *Heller* was to the realm of constitutional jurisprudence, the Court's treatment of the Second Amendment is actually quite narrow in that the opinion focuses primarily on self-defense in the home. *See id.* at 635 ("In sum, we hold that the District's ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition against rendering any lawful firearm *in the home* operable for the purpose of immediate self-defense."); *see also District of Columbia v. Heller*, 552 U.S. 1035, 1035 (2007) (The Supreme Court certified the following question for consideration: Whether the [D.C. gun laws] violate the Second Amendment rights of individuals who are not affiliated with any state-regulated militia, but who wish to keep handguns and other firearms for private use *in their homes*?) (emphasis added).

While not addressed directly in any controlling authority of which the Court is aware, the specific relief requested by Plaintiffs, i.e., the right to carry a handgun outside of the home, seems to be beyond the scope of the core Second Amendment concern articulated in *Heller*. *See, e.g., Moreno v. N.Y. City Police Dep't*, Civ. No. 10-6269, 2011 U.S. Dist. LEXIS 76129, at *7-8 (S.D.N.Y. May 9, 2011) (noting that "*Heller* has been narrowly construed, as protecting the individual right to bear arms for the specific purpose of self-defense within the home."), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 76131 (S.D.N.Y. July 14, 2011); *Osterweil v. Bartlett*, No. 1:09-CV-825, 2011 U.S. Dist. LEXIS 54196, at *18 (N.D.N.Y May 20, 2011) (quoting *Heller*, 554 U.S. at 635 (*Heller* "appears to suggest that the core purpose of the right conferred by the Second Amendment was to allow 'law-abiding, responsible citizens to use arms in defense of hearth and home'")); *United States v. Tooley*, 717 F. Supp. 2d 580, 596 (S.D. W. Va. 2010) ("[P]ossession of a firearm outside of the home or for purposes other than

9

self-defense in the home are not within the 'core' of the Second Amendment right as defined by *Heller*."); *Gonzalez v. Vill. of W. Milwaukee*, No. 09-384, 2010 U.S. Dist. LEXIS 46281, at *10 (E.D. Wis. May 11, 2010) (citing *Heller* for the proposition that "[t]he Supreme Court has never held that the Second Amendment protects the carrying of guns outside the home"); *Heller v. District of Columbia*, 698 F. Supp. 2d 179, 188 (D.D.C. 2010) (the "core Second Amendment right" is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home") (internal quotation marks omitted); *see also United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011) ("[A]s we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense."); *Yohe v. Marshall*, Civ. No. 08-10922-MBB, 2010 U.S. Dist. LEXIS 109415, at *7-8 (D. Mass. Oct. 14, 2010) (quoting *McDonald v. City of Chicago*, 130 S. Ct. at 3047) ("Thus, incorporating the right to bear arms in the Second Amendment as a fundamental right applicable to the states through the Fourteenth Amendment 'does not imperil every law regulating firearms.'"); *Beachum v. United States*, 19 A.3d 311, 320 n.11 (D.C. 2011) ("*Heller* does not address, and we have not decided, whether the Second Amendment protects the possession of handguns for other than defensive use in the home."); *Little v. United States*, 989 A.2d 1096, 1100-01 (D.C. 2010) (rejecting defendant's Second Amendment challenge to his conviction under D.C. gun statute because "[i]n *Heller*, the issue was the constitutionality of the District of Columbia's law on the possession of usable handguns in the home," and defendant conceded that he was outside of his home) (internal quotation marks and citation omitted); *State v. Knight*, 218 P.3d 1177, 1189 (Kan. Ct. App. 2009) ("It is clear that the Court [in *Heller*] was drawing a narrow line regarding the violations related solely to use of a handgun in the home for self-defense purposes.").

Indeed, the D.C. laws at issue in *Heller* were extreme in that they totally banned handgun possession in the home and required that any lawful firearm in the home be disassembled or bound by trigger lock at all times, rendering it inoperable. *Heller*, 554 U.S. at 628. These laws essentially made it impossible for citizens to use guns for their core lawful purpose of self-defense. *See id.* at 630. By contrast, Texas law permits broad usage of long arms outside of the home[7] and actually confers wider protection with regard to handgun usage than that specifically addressed in *Heller* in that, in general, it permits anyone over the age of 18 to carry a handgun in his or her vehicle or watercraft, carves out various exceptions for hunting and sport, and provides for the concealed carriage of a handgun by most of the law-abiding population. *See* Tex. Penal Code §§ 46.02 & 46.15; Tex. Gov't Code § 411.172.

It is axiomatic that a statutory scheme that essentially provides more protection of an individual right than that conferred by the Constitution cannot, therefore, be unconstitutional. Absent further guidance from controlling authority, the Court is unwilling to expound upon the meaning of the Second Amendment beyond the parameters previously recognized by the Supreme Court. *See Williams v. State*, 417 Md. 479, 496 (Md. 2011) ("If the Supreme Court . . . meant its holding to extend beyond home possession, it will need to say so more plainly."); *see also Dronenburg v. Zech*, 741 F.2d 1388, 1396 (D.C. Cir. 1984) ("If it is in any degree doubtful that the Supreme Court should freely create new constitutional rights, we think it certain that lower courts should not do so."). The proper remedy to supply Plaintiffs' desired relief is

---

[7]The Court is cognizant of the fact that granting rights for the usage of long guns does not necessarily mitigate against the encroachment, if any, on the right to possess a handgun. *See Heller*, 554 U.S. at 629. Nevertheless, the Court mentions this aspect of Texas law merely to highlight the fact that the state law provides more broad-reaching protections than the right recognized in *Heller*.

11

legislative in nature, not judicial: either to petition the Texas Legislature for a change in state law or, on a national level, to rally for a constitutional amendment. *See Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963) ("Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation.").

While not skirted entirely, the focus of the parties' briefing does not center on the breadth of the Second Amendment but rather on the question of at what age does the right to keep and bear arms vest. This approach puts the cart before the horse. Because the Court is of the opinion that the Second Amendment does not confer a right that extends beyond the home, it need not reach the question regarding the age of investiture of such a right. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) (suggesting that a court's inquiry into the constitutionality of a statute is complete upon holding that a challenged law does not burden conduct falling within the scope of the Second Amendment's guarantee).

Therefore, with regard to the Second Amendment issue, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Summary Judgment is **DENIED**.

*c. Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The focus of Plaintiffs' Equal Protection claim is on the allegedly unequal treatment effected by the licensing scheme between non-military personnel, ages 18 to 20 years, and those over the age of 20, as well as between those over the age of 18 who have served or are currently serving in the military.

While creating no substantive rights, the Equal Protection Clause embodies a general rule that states must treat like cases alike but may treat unlike cases accordingly. *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940) ("The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.")). A legislative classification or distinction that does not burden either a fundamental right or target a suspect class will be upheld if it bears a rational relation to some legitimate end. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "The burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (internal quotation marks omitted).

As the Court has discussed above, the licensing scheme does not burden the fundamental right to keep and bear arms.[8] Neither does the licensing scheme target a suspect class. Traditionally, suspect class status is applied to a class that has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973).

The Supreme Court has categorically rejected age as a suspect classification. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000) ("[A]ge is not a suspect classification under the Equal Protection Clause."). Therefore, Texas "may discriminate on the basis of age without

---

[8]Although pleaded in broad terms, Plaintiffs' Equal Protection argument seems to center on the infringement of a fundamental right. The Court has rejected that argument. Therefore, the Court will conduct only a short analysis on suspect classification because, although not clear from the complaint, Plaintiffs' briefing indicates that they likely did not intend to raise this issue.

offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." *Id.* The Constitution permits states to "draw lines on the basis of age when they have a rational basis for doing so at a class-based level, even if it 'is probably not true' that those reasons are valid in the majority of cases." *Id.* at 86.

It follows, then, that Plaintiffs must demonstrate that no reasonably conceivable state of facts could provide a rational basis for the licensing scheme. McCraw avers that individuals under 21 are less suited to carry concealed handguns than persons over the age of 21 and that withholding licenses from underage residents promotes public safety and crime prevention. McCraw likens Texas Government Code § 411.172 to Texas Alcoholic Beverage Code § 106.06, which makes it a crime to furnish an alcoholic beverage to a minor, the policy basis of which considers the relative immaturity and poor judgment of young people. Therefore, in implementing Texas Government Code § 411.172, Texas has identified a legitimate state interest—public safety—and passed legislation that is rationally related to addressing that issue—the licensing scheme; thus, it acted within its constitutional powers and in accordance with the Equal Protection Clause. *See Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004) (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993) ("Under rational basis review, differential treatment 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'")).

As for Plaintiffs' companion claim under the Equal Protection Clause, the Court is of the opinion that what can best be described as "non-military personnel" does not constitute a suspect class. Therefore, like the age distinction, McCraw demonstrates merely that the issuance of

CHLs to military personnel between the ages of 18 and 20 and not to non-military personnel of the same ages is rationally related to a legitimate state interest. In so doing, McCraw avers that those who are serving currently or have previously served in the military are more equipped to handle concealed handguns than those members of the citizenry between the ages of 18 and 20 who have not served in the military. *See* Def.'s App. 22, Senate Comm. on Veterans Affairs and Military Installations, Bill Analysis, Tex. S.B. 322, 79th Leg., C.S. (2005) ("[M]ilitary personnel currently receive[] extensive training in handling weapons."). The fact that most military personnel have extensive training in handling weapons is rationally related to the concept that they could be entitled to CHL privileges earlier than the general citizenry. Therefore, Plaintiffs' Equal Protection challenge must fall.

Accordingly, with regard to the Equal Protection issues, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Summary Judgment is **DENIED**.

## IV. CONCLUSION

For the reasons stated herein,

(1)   Defendant's Motion for Summary Judgment is **GRANTED**; and

(2)   Plaintiffs' Motion for Summary Judgment is **DENIED**.

SO ORDERED.

Dated January 19, 2012.

*[signature]*
SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE