RICHARD L HOLCOMB (HI Bar No. 9177)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@live.com

ALAN BECK (HI Bar No. 9145)
Attorney at Law
4780 Governor Drive
San Diego, California 92122
Telephone: (619) 971-0414
Email:  ngord2000@yahoo.com

KEVIN O'GRADY (HI Bar No. 8817)
The Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite #808
Honolulu, HI  96813
Telephone:  (808) 521-3367
Facsimile:  (808) 521-3369
Email:  Kevin@CriminalAndMilitaryDefenseHawaii.Com

Attorneys for Plaintiff Christopher Baker

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER BAKER,<br><br>          Plaintiff,<br>     vs.<br><br>LOUIS KEALOHA, as an individual and in his official capacity as Honolulu Chief of Police;<br>STATE OF HAWAII;<br>CITY AND COUNTY OF HONOLULU;<br>HONOLULU POLICE DEPARTMENT;<br>NEIL ABERCROMBIE, in his official capacity as Hawaii Governor,<br><br>          Defendants.<br>_____ | ) CASE NO. CV11-00528 ACK-<br>)          KSC<br>)<br>)<br>)<br>)<br>)<br>)PLAINTIFF          CHRISTOPHER<br>)BAKER'S     RESPONSE      TO<br>)DEFENDANTS    MOTION     FOR<br>)JUDGMENT ON THE PLEADINGS<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF CHRISTOPHER BAKER'S RESPONSE TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

I.  Introduction

Defendants State of Hawaii and Governor Neil Abercrombie are not entitled to judgments on the pleadings.  The crux of their argument is that sovereign immunity bars Plaintiff Christopher Baker's actions against them.  And, while Mr. Baker concedes that he is not entitled to *damages* against these defendants, Mr. Baker is entitled to *equitable* relief – relief that he has unambiguously requested.

Specifically, the State of Hawaii's assertion of sovereign immunity is misplaced.  Congress, through adoption of the Fourteenth Amendment, has abrogated sovereign immunity in actions asserting violations of the fundamental constitutional rights guaranteed by the first eight amendments of the United States Constitution.  Accordingly, as this action arises from the State of Hawaii's prohibition of the right to keep and bear arms, the State may not erect sovereign immunity to bar Mr. Baker's claims.

Further, Defendant Abercrombie also may not avoid accountability through operation of the Eleventh Amendment.  First, case law clearly identifies Governor Abercrombie as a "person" contemplated by Title 42, Section 1983 of the United States Code.  Second, Governor Abercrombie argues that he in no way participated in or had knowledge of any of the acts that led to this lawsuit.  In other words, Governor Abercrombie urges this Court to ignore the authority vested upon his

office pursuant to the Hawaii Constitution and, in addition, the ancillary responsibilities necessitated by such authority.  This Court should not be seduced into disregarding the obvious role of the Governor in this action or any similar future actions.  Such actions are, unfortunately, inevitable should this Court decline to compel fundamental change in the current statutory scheme prohibiting the keeping and bearing of arms in Hawaii.

## II. ARGUMENT

A. In ratifying the Fourteenth Amendment, Congress abrogated sovereign immunity in actions involving state violations of fundamental constitutional rights

The Defendant correctly notes, "Congress has the power to abrogate the sovereign immunity of the states pursuant to Section 5 of the Fourteenth Amendment to the United States".  See Defendants' Motion for Judgment on the Pleadings at 4.  In fact, Congress has effectively done so with ratification of the Fourteenth Amendment.

The first clause of the Fourteenth Amendment states:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const., amend. VIX.  And, the United States Supreme Court has specifically held that the enforcement provision of the Fourteenth Amendment limits state immunity:

> But we think that the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of s 5 of the Fourteenth Amendment. In that section Congress is expressly granted authority to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, *which themselves embody significant limitations on state authority*. When Congress acts pursuant to s 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

Fitzpatrick v. Bitzer, 427 U.S. 445 (1976); Tennessee v. Lane, 541 U.S. 509 (2004).[1]

Although 42 U.S.C. § 1983 names "persons" as appropriate defendants, this Court has consistently recognized that the United States Supreme Court has extended the definition of "persons" to include governmental entities:

---

[1] In Fitzpatrick, *supra*., the U.S. Supreme Court dealt decided the issue of whether Congress had abrogated the Sovereign Immunity of the States as to Title VII claims.  They ruled the Congress had done so pursuant to their power enumerated in Section 5 of the Fourteenth Amendment. Here, the Court does not need to look for congressional action taken pursuant to Section 5.  Instead, Section 1 of the Fourteenth Amendment, itself, explicitly contains the abrogation language.

> '[I]t is well-settled that '[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell [v. Dept. of Social Services, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)] . . . local government units can be sued directly for damages and injunctive or declaratory relief.'" Wong v. City & County of Honolulu, 333 F.Supp.2d 942, 947 (D. Haw. 2004) (citing Kentucky v. Graham, 473 U.S. 159, 166-67 n. 14, 105 S. Ct. 3099, 87 L. Ed. 2d 114); Carnell v. Grimm, 872 F.Supp. 746, 752 (D. Haw. 1994) (same).'

Young v. Hawaii, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008).

This counterintuitive interpretation of the word "persons" was derived not only from the historical use of that term, but also from recognition that many civil rights violations are a result of:

> implement[ation] or execut[ion] of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.

Monell, 436 U.S. at 690-91.  And, the importance of including those government entities is underscored by the lack of remedies available to those wronged by the governmental entity:

> Representative Bingham, for example, in discussing § 1 of the bill, explained that he had drafted § 1 of the Fourteenth Amendment with the case of *Barron v. Mayor of Baltimore,* 7 Pet. 243, 8 L.Ed. 672 (1833), especially in mind. "In [that] case the *city* had taken private property for public use, without COMPENSATION . . . , AND

> THERE WAS NO REDRESS FOR THE wrong . . . ." globe App. 84 (emphasis added). Bingham's further remarks clearly indicate his view that such takings by cities, as had occurred in *Barron,* **would be redressable under § 1 of the bill**. See Globe App. 85. **More generally, and as Bingham's remarks confirm, § 1 of the bill would logically be the vehicle by which Congress provided redress for takings, since that section provided the only civil remedy for Fourteenth Amendment violations and that Amendment unequivocally prohibited uncompensated takings. Given this purpose, it beggars reason to suppose that Congress would have exempted municipalities from suit, insisting instead that compensation for a taking come from an officer in his individual capacity rather than from the government unit that had the benefit of the property taken.**

Monell, 436 U.S. at 686-87 (emphasis added).

Thus, Section 1 of the Fourteenth Amendment was specifically drafted to provide a remedy where none other existed.  Accordingly, although the United States Supreme Court has specifically rejected that the term "persons" in Section 1983 includes the states, Will v. Michigan Dep't of State Police, 491 U.S. 58, 65-66 (1989), the effect of ratification of the Fourteenth Amendment, itself, on the Eleventh Amendment's grant of sovereign immunity is less clear.  However, the reasons for ratifying the Fourteenth Amendment support Mr. Baker's contention that Section 1 of the Fourteenth Amendment permit this action to proceed against the State.

In this case, for example, a fundamental right made applicable to the States pursuant to the Fourteenth Amendment, McDonald 130 U.S. at 3026, has been violated through "a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by th[e] [State's] officers." <u>Monell</u>, 436 U.S. at 690.

Specifically, the passage of the statutory criminal prohibitions on keeping and

bearing arms are the root of the claims brought by Mr. Baker.  And, just as

Representative Bingham recognized that it made no sense to cause a government

official to personally pay for a taking accomplished by a government entity, it

makes no sense to enjoin only Governor Abercrombie, Chief Kealoha and the City

and County from enforcing these statutes.

Indeed, should this Court decline Mr. Baker's prayer that the criminal

prohibitions be completely struck as unconstitutional on their face, the ultimate

result in this case will be worse than that of requiring an official to pay for the

government's action in taking private property.  Although clearly liable for their

actions in this case, the Chief and the City and County will be left with the

Hobson's Choice of either complying with an injunctive order of this Court, or

fulfilling the duties incumbent upon the executive branch of Hawaii local

government – enforcing unconstitutional State law.  And, Hawaii citizens,

including Mr. Baker (despite having prevailed on the issue) will remain subject to

unconstitutional criminal prohibitions of their right to keep and bear arms.  Other

law enforcement officials, such as the statewide Sheriff's Department will not be

subject to the injunction, leaving Mr. Baker potentially facing felony charges

without (at least immediate) redress.

Mr. Baker's position finds some support in existing case law.   Justice Hugo Black, who is considered by most scholars to be the most prominent proponent of incorporation, authored a dissent in Adamson v. California, 332 U.S. 46 (1947) in which he posited that the Bill of Rights was incorporated to the States at the time of the ratification of the Fourteenth amendment:

> My study of the historical events that culminated in the Fourteenth Amendment, and the expressions of those who sponsored and favored, as well as those who opposed its submission and passage, persuades me that one of the chief objects that the provisions of the Amendment's first section, separately, and as a whole, were intended to accomplish was to make the Bill of Rights, applicable to the [332 U.S. 46 , 72] states. 5 With full knowledge of the import of the Barron decision, the framers and backers of the Fourteenth Amendment proclaimed its purpose to be to overturn the constitutional rule that case had announced. This historical purpose has never received full consideration or exposition in any opinion of this Court interpreting the Amendment.

Adamson, 332 U.S. at 331-332 (Black, J. dissenting).

While the Court has not yet specifically adopted total incorporation as Justice Black advocated, it has ruled that "the Due Process Clause fully incorporates particular rights contained in the first eight Amendments". McDonald, 130 U.S. at 15. And, states must respect fundamental constitutional rights. See Duncan, 391 U. S., at 149, and n. 14.

Furthermore, in Palko v. Connecticut, 302 U.S. 319 (1937), Justice Benjamin Cardozo held that the Due Process Clause protected those rights that

were "of the very essence of a scheme of ordered liberty" and that the court should therefore gradually incorporate the Bill of Rights onto the States as justiciable violations arose, based on whether the infringed right met that test.

Following this view, the cases which have incorporated parts of the Bill of Rights essentially were court orders enjoining the state to follow the law as it always had been since the ratification of the Fourteenth Amendment.   In the process of adoption, the Fourteenth Amendment was ratified by both houses of Congress, by a two-thirds majority in each.  See Article Five of the United States Constitution.  Therefore, at the time of the ratification of the Fourteenth Amendment, Congress abrogated the Eleventh Amendment sovereign immunity of the states in regards to claims involving violations of fundamental constitutional rights (including the right to keep and bear arms) as those rights have always existed since the adoption of the bill of rights. Accordingly, this Court is not deprived of jurisdiction to enforce the Second Amendment via the Fourteenth Amendment as Congress intended.

It should be noted that this court ruled for the State in a case with very similar facts.  Young v. Hawaii, *supra.*  However, this argument is distinguishable. In Young, this Court was presented with the question of whether Congress abrogated the sovereign immunity of the states through passing 42 U.S.C. 1983. Young, 548 F. Supp. 2d at 1158.   As noted above, that argument had been

expressly rejected by the United States Supreme Court.  <u>Will</u>, *supra*.  Here, however, Mr. Baker argues that the ratification of the Fourteenth amendment abrogated the sovereign immunity of the States as to Second Amendment claims. Accordingly, <u>Young</u> is clearly distinguishable and this action is not barred by sovereign immunity.

## B. Governor Abercrombie, in his official capacity, may be sued for equitable relief.

Governor Abercrombie is an appropriate Defendant in this action for at least two reasons.

First, where injunctive relief is sought, a state official acting in his or her official capacity is a "person" for the purposes of Section 1983 actions.  <u>Will</u>, 491 U.S. at 71, n. 10 (<u>citing</u> <u>Kentucky v. Graham</u>, 473 U.S. at 473, n. 14); <u>Ex parte Young</u>, 209 U. S. 123. 159–160 (1908) *(...*official-capacity actions for prospective relief are not treated as actions against the State.) (citations omitted).  Mr. Baker has plainly sought injunctive relief in his Complaint.  Complaint, page 8. Accordingly, Defendant Abercrombie, in his official capacity, is considered a person in this instance.

Second, Defendant Abercrombie may not rely on sovereign immunity to bar this action.  In <u>Ex parte Young</u>, 209 U. S. 123 (1908), the United States Supreme Court created an exception to the general principle that a State official, sued in their official capacity, is the same entity as the State.  Specifically, where a

Plaintiff challenges the constitutionality of a state official's action in enforcing state law, that official is not considered the State.

In Ex Parte Young, *supra.*, the Defendant contended that he was merely acting for the state of Minnesota when he sought to enforce its laws. The Court specifically rejected that argument, holding that when a state official does something that is unconstitutional, the official is not acting in the name of the state. *Id*. at 159. This is because the Supremacy Clause of the United States Constitution operates to invalidate any unconstitutional state laws:

> The answer to all this is the same as made in every case where an official claims to be acting under the authority of the State. The act to be enforced is alleged to be unconstitutional, and, if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a State official in attempting, by the use of the name of the State, to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is, in that case, stripped of his official or representative character, and is subjected in his person to the consequences of his individual conduct.

*Id*. at 160.

Thus, this suit, insofar as it names Defendant Abercrombie, is not against the State, but merely against the individual officer, who is not acting as the State when enforcing an unconstitutional law. Therefore, Defendant Abercrombie is both a

representative of the state and an individual person who can have suit brought against them. And, it is appropriate to seek injunctive relief against his future enforcement of Hawaii's unconstitutional laws. Frew v. Hawkins, 540 US 431 (2004) ("to ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."); Will, 491 U.S. at 71 n.10 ("official-capacity actions for prospective relief are not treated as actions against the State."); Wilbur, 423 F.3d at 1111 (holding that "under the doctrine established in Ex parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a suit 'for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law.'") (quoting Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000)); Young, 548 F. Supp. 2d at 1162.

Defendant Abercrombie's argument in this case is the exact argument raised by the Ex Parte Young Defendant; and, therefore, should be summarily rejected. This conclusion is inevitable following "'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 645 (2002). This suit alleges that the Defendants' ongoing enforcement of Sections 134-23, 134-24, 134-25, 134-26,

134-27, 134-51, 134-16, and 134-9 of the Hawai'i Revised Statutes constitutes violations of Plaintiff Baker's and all Hawaii citizens' fundamental constitutional rights.  Furthermore, the complaint asks for equitable relief in the form of a declaration that the statutes are unconstitutional and an order enjoining the defendants from enforcing said laws.  Unless the Second and Fourteenth Amendments are to be ignored, it is clear that that this complaint fulfills the Ex Parte Young standard and avoids the Eleventh Amendment bar to suit.

Nevertheless, Defendant Abercrombie argues that he has no knowledge of any of the issues raised in Plaintiff Baker's complaint and has played no role in the violations of Mr. Baker's constitutional rights.  Indeed, Ex Parte Young requires that the named official "must have some connection with the enforcement of the [allegedly unconstitutional] act." Ex Parte Young 209 U. S. at 453.   The nexus between the issues in this case and Defendant Abercrombie in his role as governor, is both obvious and pervasive.

Defendant Abercrombie, as Governor, is a state officer who is in direct control of  "the armed forces of the State and may call out such forces to execute the laws, suppress or prevent insurrection or lawless violence or repel invasion." Hawaii Constitution Article 5.  Thus, Defendant Abercrombie, as head of the Executive Branch, is *the* state official ultimately responsible for enforcing the laws – even the unconstitutional laws at issue in this suit.

Moreover, at the beginning of every term the Governor is responsible for appointing a new Deputy Director of Law Enforcement for the Department of Public Safety. See Hawaii Constitution, Section 6. The Deputy Director is under the supervision of the governor. *Id*. at Section 6.   The two law enforcement departments under the appointee's authority (*i.e.*, the Sherriff Division and Narcotics Enforcement Division), along with the county police, routinely enforce the challenged statutes of this action.   This clearly establishes a connection between the Governor and the enforcement of the statutes which is the basis for this action.

Accordingly, Defendant Abercrombie's role is analogous to the roles of the defendant, California Governor Wilson, in Los Angeles County Bar Ass'n v EU, 979 F.2d 697 (9th Cir. 1992).   There, the Ninth Circuit found a sufficient nexus where the Governor, in his official capacity, has a duty to appoint judges.  *Id*. at 704.   Civil trials were being delayed due to a state statute which limited the number of judges in Los Angeles County.  *Id*. at 700.  Because the Governor was obliged to "appoint judges to any newly-created judicial positions," the Ninth Circuit specifically found that this was sufficient to include the Governor as a party to the suit.  *Id*. at 704.  Such a duty to appoint is precisely the role Defendant Abercrombie plays in this case.

Mr. Baker is entitled to have Defendant Abercrombie enjoined from enforcing the unconstitutional laws at issue in this case.

## III. Conclusion

For any and all of the reasons above, the Defendants' motion should be DENIED.

DATED:  San Diego, California, February 16, 2012

s/Alan Beck
Alan Beck (HI Bar No. 9145)

DATED:  Honolulu, Hawaii, February 16, 2012

s/Richard L. Holcomb
Richard L. Holcomb (HI Bar No. 9177)

s/Kevin O'Grady
Kevin O'Grady (HI Bar No. 8817)