Case 1:11-cv-00528-ACK-KSC  Document 41-1  Filed 02/24/12  Page 1 of 10  PageID #:
422
Case 2:10-cv-08377-JAK -JEM  Document 96  Filed 01/13/12  Page 1 of 10  Page ID
#:1215

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**                          **JS-6**

| | |
|---|---|
| Case No.    LA CV10-08377 JAK (JEMx) | Date    January 13, 2011 |
| Title    Jonathan Birdt v. Charlie Beck, et al. | |

Present: The Honorable          JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**          **ORDER RE PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkt. 20, 54, 56)**

**I.      Introduction**

In California, a person may carry a concealed firearm only if first issued a license by the sheriff of the county in which the licensee resides. Such licenses are to be issued only upon a showing of "good cause." Cal. Penal Code § 12050. Plaintiff Jonathan Birdt applied for a concealed carry weapons ("CCW") license from the Los Angeles Police Department and the Los Angeles County Sheriff's Department. Each denied his application; this action followed.

Plaintiff has named the Los Angeles Police Department ("LAPD"), the Los Angeles County Sherriff's Department ("LACSD"), Los Angeles Chief of Police Charlie Beck, and Los Angeles County Sherriff Lee Baca as defendants in his claims brought pursuant to 42 U.S.C. §§ 1983 and 1988. Relying on *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), Plaintiff argues that, as applied to Plaintiff, the LAPD and LACSD policies under which his CCW license application was denied, violate the Second Amendment to the United States Constitution. Plaintiff also claims that LAPD and LACSD policies violate his rights under the Equal Protection Clause and interfere with his right to interstate travel.

Plaintiff and Defendants have filed cross-motions for summary judgment. The parties stipulated at oral argument on September 19, 2011 that there are no disputed issues of material fact.

**II.      Background**

**A.      California's Concealed Weapons Law**

California Penal Code section 12031 prohibits the open carrying of loaded firearms in public, and section 12025 prohibits the carrying of concealed firearms in public, subject to a licensing process. Section 12050(a)(1)(A) allows "[t]he sheriff of a county, upon proof that the person applying

**EXHIBIT "A"**

Case 1:11-cv-00528-ACK-KSC   Document 41-1   Filed 02/24/12   Page 2 of 10   PageID #:
423
Case 2:10-cv-08377-JAK -JEM   Document 96   Filed 01/13/12   Page 2 of 10   Page ID
#:1216

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

is of good moral character, that good cause exists for the issuance, and that the person applying satisfies" other statutory requirements, to "issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person." Without a license, a person cannot carry a concealed weapon. "Section 12050 gives extremely broad discretion to the sheriff concerning the issuance of concealed weapons licenses and explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements." *Gifford v. City of Los Angeles*, 88 Cal. App. 4th 801, 805 (2001).

The LAPD and the LACSD each has formulated definitions of "good cause" to evaluate permit applications.

The LAPD defines "good cause" in these terms:

> [G]ood cause exists if there is convincing evidence of a clear and present danger to life or of great bodily injury to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm . . .

> Good cause is deemed to exist, and a license will issue in the absence of strong countervailing factors, upon a showing of any of the following circumstances:
> (a) The applicant is able to establish that there is an immediate or continuing threat, express or implied, to the applicant's, or the applicant's family, safety and that no other reasonable means exist which would suffice to neutralize the threat.

Tompkins Decl., Exh. 1, Dkt. 56-4. The LAPD does not consider general fear for one's personal safety good cause. *Id.* at ¶ 4.

The LACSD's definition of "good cause" requires the following showing:

> Convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.

Waldie Decl., Exh. 1, Dkt. 55. The LACSD does not consider a general desire for self-defense good cause; the applicant must "demonstrate a credible threat of violence." Waldie Decl. ¶ 7, Dkt. 55.

### B.     Plaintiff's Applications for a License

Plaintiff is a lawyer. He resides in Los Angeles County. Plaintiff applied to the LAPD and the

---

Case 1:11-cv-00528-ACK-KSC   Document 41-1   Filed 02/24/12   Page 3 of 10   PageID #:
424
Case 2:10-cv-08377-JAK -JEM   Document 96   Filed 01/13/12   Page 3 of 10   Page ID
#:1217

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

LACSD for a CCW license in 2010. Each department denied his application. On his LAPD application, Plaintiff listed his reasons for seeking a CCW license. These included his work as a volunteer bench officer for the Los Angeles Superior Court, his frequent interstate travel with large sums of cash, his representation of clients in high-profile litigation involving violent crime, and unspecified threats against his employees. Tompkins Decl., Exh. 2, Dkt. 56-4. The LAPD rejected his application, concluding that Plaintiff did not establish "a clear and present danger to life or great bodily injury" that could not "be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures." Tompkins Decl., Exh. 3, Dkt. 56-4. The Citizens Advisory Review Board that reviews denied applications also found that Plaintiff had failed to show good cause for licensure. Tompkins Decl., Exh. 4, Dkt. 56-4.

Plaintiff's LACSD application identified substantially similar reasons in support of licensure. The LACSD denied his application for the same reasons previously advanced by the LAPD. As the LACSD wrote in denying the license:

> Typically, the verbiage "convincing evidence of a clear and present danger . . ." refers to a current situation which involves a specific person(s) who has threatened an individual and who has displayed a pattern of behavior which would suggest that the threat(s) could be carried out. Situations which would suggest only a potential danger to one's safety, (e.g. carrying large amounts of money to the bank, profession/job, working late hours in a high crime rate area, etc.) are not consistent with the criteria for issuance of a concealed weapon license.

Waldie Decl., Exh. 3, Dkt. 55.

**III.    The Second Amendment Claims**

    **A.    Legal Standard**

        1.    The Second Amendment

The Second Amendment protects the "individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). In *Heller*, the Supreme Court held that a total prohibition on handguns within the home precluded citizens from using guns "for the core lawful purpose of self-defense and [was] hence unconstitutional." *Id.* at 630. In *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010), the Court held "that the Second Amendment right is fully applicable to the States." *McDonald* stated that *Heller*'s "central holding" was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *Id.* at 3044.

*Heller* also explained that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever

Case 1:11-cv-00528-ACK-KSC  Document 41-1  Filed 02/24/12  Page 4 of 10  PageID #:
425
Case 2:10-cv-08377-JAK -JEM  Document 96  Filed 01/13/12  Page 4 of 10  Page ID
#:1218

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

and for whatever purpose." *Id.* The Court listed examples of "presumptively lawful regulatory measures" that would not infringe Second Amendment rights, including "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 570. The Court added that, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* This observation is significant, because under *Heller*, the scope of the Second Amendment's protection turns on "the historical background of the Second Amendment." *Id.* at 592.

> 2.      Case Law with Respect to the Standard of Review

Six of the Circuits have applied a standard of review resembling intermediate scrutiny to claims under the Second Amendment.

In *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011), the Seventh Circuit subjected a Chicago gun-control ordinance to "rigorous" review, "if not quite 'strict scrutiny.'" The ordinance at issue in that case amounted to a total ban on gun ownership. It conditioned gun ownership -- even within the home -- on the gun owner having completed firing range training. The same ordinance, however, also banned firing ranges within the city. The Seventh Circuit found that this ban impacted too greatly the "core Second Amendment right to possess firearms for self-defense." *Id.* at 711. Where such a core right is not implicated, the Seventh Circuit has applied intermediate scrutiny. For example, in *United States v. Skoien*, that court applied intermediate scrutiny to a regulation prohibiting those convicted of domestic violence misdemeanor crimes from carrying firearms; in its view, such a regulation did not infringe the core right to self-defense. 614 F.3d 638, 641 (7th Cir. 2010).

Similarly, in *United States v. Marzzarella*, 614 F.3d 85, 97 (3rd Cir. 2010), the Third Circuit applied intermediate scrutiny to a regulation of the sale of firearms because the "burden imposed by the law [did] not severely limit the possession of firearms." The court reasoned that the *Heller* handgun ban was "an example of a law at the far end of the spectrum of infringement on protected Second Amendment rights" because it prohibited all handgun possession. *Id.* The regulation at issue in *Marzzarella* did not prohibit all handgun possession; as a result, the court found that it was far from the restrictions that *Heller* found improper. *Id.*

Other circuits have applied intermediate scrutiny to restrictions on the use of firearms. *See, e.g., United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) (requiring "a substantial relationship between the restriction and an important governmental objective"); *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011) ("[w]hile we find the application of strict scrutiny important to protect the core right of the self-defense of a law-abiding citizen in his home . . . we conclude that a lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home.); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny); *Heller v. District of Columbia*, No. 10–7036, 2011 WL 4551558, at *8 (D.C. Cir. Oct. 4,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. LA CV10-08377 JAK (JEMx) | Date January 13, 2011 |
| Title Jonathan Birdt v. Charlie Beck, et al. | |

2011) (same).

Although not binding on this Court , two District Courts in California have considered certain of the issues raised in this action. These decisions are instructive here. In *Richards v. County of Yolo*, the District Court for the Eastern District of California considered a challenge to Yolo County's concealed weapon policy implementing California Penal Code section 12050. No. 09-01235, 2011 WL 1885641 (E.D. Cal. May 16, 2011). The court held that "the Second Amendment does not create a fundamental right to carry a concealed weapon in public." *Id.*, 2011 WL 1885641, at *3. Given the various exceptions to the concealed weapons law, discussed below, the court found that there was adequate opportunity for the plaintiff to use a weapon in self-defense. Therefore, the county's policy did not substantially burden his Second Amendment rights. The court applied rational basis review to find the county policy constitutional.

In *Peruta v. County of San Diego*, the District Court for the Southern District of California considered claims -- like those of the Plaintiff in this action -- brought by a party whose application for a CCW license was denied for lack of good cause pursuant to section 12050. 758 F. Supp. 2d. 1106 (S.D. Cal. 2010). The court applied intermediate scrutiny in assessing the county's policy, noting that

> the Court is not aware of . . . a case in which a court has employed strict scrutiny to regulations that do not touch on the "core" Second Amendment right: possession in the home. If it exists, the right to carry a loaded handgun in public cannot be subject to a more rigorous level of judicial scrutiny than the 'core right' to possess firearms in the home for self-defense.

*Id.* at 1116.

**B.     Application**

**1.     Intermediate Scrutiny Is Appropriate**

California Penal Code section 12025, prohibiting the carrying of concealed weapons, California Penal Code section 12050, creating the concealed weapon licensure requirements, and the LACSD and LAPD policies do not infringe the "core" Second Amendment right of self-defense within the home. They do not prevent Plaintiff from using "arms in defense of hearth and home." *Heller*, 554 U.S at 635. They do not effect a total ban on gun ownership. Thus, they are not presumptively unconstitutional, as was the handgun ban in *Heller*. For these reasons, strict scrutiny is not appropriate. The Court need not decide whether intermediate scrutiny, or mere rational review, applies to Plaintiff's claims; the regulations at issue, as applied to Plaintiff, satisfy intermediate scrutiny.

**2.     The Regulations Satisfy Intermediate Scrutiny**

"To withstand intermediate scrutiny, a statutory classification must be substantially related to

---

Case 1:11-cv-00528-ACK-KSC  Document 41-1   Filed 02/24/12   Page 6 of 10    PageID #:
427
Case 2:10-cv-08377-JAK -JEM   Document 96   Filed 01/13/12   Page 6 of 10   Page ID
#:1220

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | |
|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date   January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | |

an important governmental objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). The government bears the burden of showing the "substantial relation" to an "important government objective." *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 465 (2002).

        a)      "Important Government Objective"

It is clear that the protection of public health and safety are important government objectives, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996), as is crime prevention, *Foucha v. Louisiana*, 504 U.S. 71, 81 (1992). In considering California's concealed weapons regulations, the *Peruta* court noted:

> In particular, the government has an important interest in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations. The government also has an important interest in reducing the number of concealed handguns in public because of their disproportionate involvement in life-threatening crimes of violence, particularly in streets and other public places.

758 F. Supp. 2d at 1117.

This Court finds this reasoning persuasive. Thus, the concealed weapons regulations serve an important government objective.

        b)      "Substantial Relation"

California's concealed weapons regime is substantially related to the important government objective identified above. A licensing regime allows the state to protect the general public from widespread and unchecked public carrying of concealed and loaded firearms. Such widespread carrying of weapons poses the threat of criminal use of firearms by stealth and surprise. Limiting the number of concealed firearms in public places strengthens law enforcement and prevents the need for public places -- such as restaurants, malls, theaters and parks -- to be equipped with metal detectors, fencing, guards, and other forms of security, in order to protect patrons from unchecked concealed firearms. As the *Peruta* court noted, "[r]equiring documentation enables [the state] to effectively differentiate between individuals who have a bona fide need to carry a concealed handgun for self-defense and individuals who do not." 758 F. Supp. 2d at 1117.

It is also significant that the ban on carrying loaded weapons has numerous exceptions. These allow the carrying of weapons by police officers, private investigators, members of the military forces, target shooters, hunters, and others. Cal. Penal Code § 12031(b). The statute also specifically allows the keeping of loaded weapons at one's home. Cal. Penal Code § 12031(*l*). More importantly, a person may carry a loaded firearm in public when he

reasonably believes that the person or property of himself or herself or of another is in

Case 1:11-cv-00528-ACK-KSC  Document 41-1  Filed 02/24/12  Page 7 of 10  PageID #:
428
Case 2:10-cv-08377-JAK -JEM  Document 96  Filed 01/13/12  Page 7 of 10  Page ID
#:1221

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date   January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | |

immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property. As used in this subdivision, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance.

Cal. Penal Code § 12031(j)(1). The section also permits carrying a loaded firearm "while engaged in the act of making or attempting to make a lawful arrest." Cal. Penal Code § 12031(k). These exceptions ensure that California's concealed weapons law is tailored to the safety issues raised by gun violence and does not infringe unnecessarily on the right to use guns in self-defense.

Because of these exceptions, and because the regulatory regime for concealed weapons focuses on the carrying of such weapons in public, the statutory system imposes much more narrow limitations on firearm possession than the sweeping prohibition presented by the statute addressed in *Heller*. Thus, California's concealed weapon laws are substantially related to an important government objective, and survive intermediate scrutiny.

c)     The Parties' Expert Declarations

The parties have provided competing expert declarations with respect to the threat of concealed weapons. Defendants have presented evidence that concealed weapons are a particularly serious threat to public safety. As one example, Defendants point out that the

> special danger of a hidden handgun is that it can be used against persons in public robbery and assault. The concealment of a handgun means that other citizens and police don't know it is in their shared space until it is brandished. Concealed handguns are a special problem for police because an armed police officer has no warning that persons carrying concealed handguns are doing so. A police officer will be vulnerable to an element of surprise that will not be present if a person is openly carrying a firearm.

Zimring Decl. ¶ 4, Dkt. 56-5. Defendants also have produced evidence that, during 2010, approximately 39% of those arrested by the LAPD on a charge of homicide had no prior felony convictions. Torrez Decl. ¶¶ 4-15, Dkt. 56-6. This data suggests that eliminating restrictions on permitting the carrying of concealed weapons, or a policy less stringent than that presently in place, could readily increase the number of future felons who may use such weapons while committing a crime. Thus, if the regulations were invalidated, rescinded, or severely restricted, those with no prior felony convictions could more readily obtain CCW licenses and go on to commit homicides. Zimring Decl. ¶ 5, Dkt. 56-5. By contrast, Plaintiff has provided competing expert testimony arguing that CCW permits reduce crime. Mudgett Decl. ¶ 7, Dkt. 69-1.

As noted, the parties have stipulated that there are no genuine issues of material fact presented by the instant motions. As such, these competing expert declarations should not be

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. LA CV10-08377 JAK (JEMx) | Date January 13, 2011 |
| Title Jonathan Birdt v. Charlie Beck, et al. | |

deemed to create disputed questions of fact. Rather, they reflect differing opinions within the law enforcement community regarding the impact of limitations on the carrying of concealed weapons -- something that can be considered in the intermediate scrutiny analysis. Thus, Defendants' policy need not be a perfect empirical fit to the problem of gun violence; it must merely be "substantially related." "In contrast with strict scrutiny, intermediate scrutiny, by definition, allows the government to paint with a broader brush." *Peruta*, 758 F. Supp. 2d at 1117. Because the concealed weapons law focuses on the particular threat posed by concealed weapons, there is a substantial relationship between the state's means and its important objectives. It is also noteworthy that the variations in the declarations are a reflection of the responsibility that lies with the California Legislature to weigh the effectiveness of concealed weapons laws as a tool to combat crime and violence. As the Supreme Court has noted, when applying intermediate scrutiny in the First Amendment context:

> What our decisions require is a "fit" between the legislature's ends and the means chosen to accomplish those ends -- a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served; that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective. Within those bounds we leave it to governmental decisionmakers to judge what manner of regulation may best be employed.

*Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). Thus, to prevail on their motion for summary judgment, Defendants need not prove that California's approach to concealed weapons is more empirically sound, that Plaintiff's expert is incorrect, or that California's approach is otherwise the "correct" one. Rather, Defendants need only show a sufficient "fit," which they have done. The Legislature's decision in balancing or addressing competing views will be upheld where, as here, it is substantially related to the important objectives described.

           3.      <u>The LASD and LACSD Policies</u>

           a)     The Policies Themselves Do Not Violate the Second Amendment

That the LASD and LACSD policies implementing California's concealed weapons laws define "good cause" as requiring the applicant to show a "clear and present danger to life or of great bodily injury" does not render them unconstitutional. To the contrary, that California allows those facing a clear and present danger to carry concealed weapons provides further support for the conclusion that the CCW regulations are substantially related to an important government objective. Not only can Plaintiff keep loaded guns in his house, but he can carry them in public when he is in immediate grave danger, and can obtain a concealed weapon permit when there is a clear and present danger. The focus of the Second Amendment right is "to possess and carry weapons in case of confrontation," *Heller*, 554 U.S. at 592, and these exceptions to California's gun control laws are in harmony with that right to self-defense. Because the Supreme Court suggested that long-standing prohibitions on carrying concealed weapons would be constitutional, *id.* at 626, a concealed weapons law that allows exceptions tailored to the need for self-defense is certainly constitutionally

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.    LA CV10-08377 JAK (JEMx)                    Date    January 13, 2011

Title    Jonathan Birdt v. Charlie Beck, et al.

sound.

b)    The LASD and LACSD Policies as Applied to Plaintiff

The LASD and LACSD policies have been applied to Plaintiff in a consistent manner. Plaintiff has been unable to point to any direct, physical threats against him or his family as a result of his work as an attorney, as a volunteer bench officer, or otherwise. *See* Lehman Decl., Exh. C, Dkt. 61-3. Plaintiff has produced no evidence that his application was not properly and fairly reviewed. Thus, Plaintiff lacked "good cause" to receive a CCW license under the LASD and LACSD policies.

**C.    Conclusion**

Because the LASD and LACSD policies, as implementing the California concealed weapons regime and as applied to Plaintiff, satisfy intermediate scrutiny, they do not violate the Second Amendment. There has been no violation of Plaintiff's constitutional rights, and no resulting violation of 42 U.S.C. §§ 1983 and 1988.

**IV.    <u>Equal Protection</u>**

Plaintiff argues that the LAPD and LACSD policies violate the Equal Protection Clause to the Fourteenth Amendment because those who have been subjected to a "clear and present danger to life or of great bodily injury" are generally victims of past crimes. Plaintiff argues that, as a result, the policies grant broader Second Amendment rights to crime victims by allowing them CCW licenses. Plaintiff argues that classifications based on whether one has been a crime victim violates the Equal Protection Clause.

This argument is unpersuasive. First, the policies do not classify applicants based on whether or not an applicant for a CCW license has been a victim of a crime. Instead, they classify applicants based on whether a person has a need for a concealed weapon due to the showing of a sufficient, immediate danger to the applicant. Second, even if the policies did classify based on whether the applicant was a crime victim, the policies would pass constitutional muster. Persons who have not been crime victims are not a suspect class under the Constitution. Rather, crime victims are those who rationally may be thought to legitimately fear some future criminal act. A law that classifies based on crime victim status must merely "rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Preventing crime is a legitimate state interest. It is entirely rational for the LAPD and LACSD to believe that those who have been victims of crime once may be victims again, and have a greater need for self-protection by carrying a concealed weapon. Accordingly, it is rational for the LAPD and LACSD to restrict CCW licenses to such applicants.

Case 1:11-cv-00528-ACK-KSC  Document 41-1  Filed 02/24/12  Page 10 of 10  PageID
#: 431
Case 2:10-cv-08377-JAK -JEM  Document 96  Filed 01/13/12  Page 10 of 10  Page ID
#:1224

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

## V.    Interstate Travel

Plaintiff also claims that his right to interstate travel is burdened by the challenged regulations and by his resulting inability to obtain a CCW license. Thus, he claims that he has a permit to carry a concealed weapon in Nevada, but that when he enters California, he must move any weapons carried to a locked container in the trunk of this car, thereby "brandishing" his weapon in violation of the Nevada law authorizing his Nevada CCW license.

This argument is not sufficient to support this claim. "A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986). The right to interstate travel is tied to the Article IV Privileges and Immunities Clause. *See Zobel v. Williams*, 457 U.S. 55, 79 (1982). However, the Article IV Privileges and Immunities Clause protects only those activities "sufficiently basic to the livelihood of the Nation." *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988). The Supreme Court has found such a right implicated in a waiting period for the right to vote, *Dunn v. Blumstein*, 405 U.S. 330 (1972), a residency period to receive welfare benefits, *Shapiro v. Thompson*, 394 U.S. 618 (1969), and a residency period to receive medical benefits, *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974).

The inconvenience of moving a weapon from the passenger compartment to the trunk of a car does not rise to the level of such activities "sufficiently basic to the livelihood of the Nation." The LAPD and LACSD policies do not deter travel, have impeding travel as their objective, or serve to penalize travel.

## VI.    Conclusion

California's concealed weapons law, the LAPD and LACSD policies promulgated under that law, and those policies as applied to Plaintiff do not infringe upon Plaintiff's constitutional rights. Consequently, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    ak