DAVID M. LOUIE                2162
Attorney General of Hawaii

CARON M. INAGAKI              3835
KENDALL J. MOSER              6515
Deputy Attorneys General
Department of the Attorney
  General, State of Hawaii
425 Queen Street
Honolulu, Hawaii 96813
Telephone: (808) 586-1494
Facsimile: (808) 586-1369
E-Mail: Kendall.J.Moser@hawaii.gov

Attorneys for Defendants
STATE OF HAWAII and
NEIL ABERCROMBIE, in his
official capacity as Hawaii Governor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER BAKER,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>LOUIS KEALOHA, as an individual and in his official capacity as Honolulu Chief of Police; STATE OF HAWAII; CITY AND COUNTY OF HONOLULU; HONOLULU POLICE DEPARTMENT; NEIL ABERCROMBIE, in his official capacity as Hawaii Governor,<br><br>　　　　　　　Defendants. | CIVIL NO. 11-00528 ACK-KSC<br><br>DEFENDANTS STATE OF HAWAII AND NEIL ABERCROMBIE'S, in his official capacity as Hawaii Governor, MEMORANDUM IN OPPOSITION TO PLAINTIFF CHRISTOPHER BAKER'S MOTION FOR PRELIMINARY INJUNCTION; CERTIFICATE OF SERVICE<br><br>Hearing<br>Date: March 21, 2012<br>Time: 10:00 a.m.<br>The Honorable Alan C. Kay<br><br>Docket No. 5 |

# DEFENDANTS STATE OF HAWAII AND NEIL ABERCROMBIE'S, in his official capacity as Hawaii Governor, MEMORANDUM IN OPPOSITION TO PLAINTIFF CHRISTOPHER BAKER'S MOTION FOR PRELIMINARY INJUNCTION

Defendants State of Hawaii and Neil Abercrombie, in his official capacity as Hawaii Governor, by and through their attorneys, David M. Louie, Attorney General of Hawaii, and Caron M. Inagaki and Kendall J. Moser, Deputy Attorneys General, hereby submit their opposition to Plaintiff's Motion for Preliminary Injunction, filed on August 30, 2011.

## I.   INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff complains that he was denied a firearms permit in violation of his Second Amendment rights, inter alia. Plaintiff has brought suit against the State of Hawaii and Governor Abercrombie in his official capacity, as well as against the City and County of Honolulu and others, and seeks monetary damages and declaratory and injunctive relief. In his Motion for Preliminary Injunction, Plaintiff requests that this Court issue an order:

(1) Enjoining the Defendants during the pendency of this action from enforcing and maintaining the following nine state statutes:

    a.    Hawaii Revised Statutes, Section 134-5  Possession by licensed hunters and minors; target shooting; game hunting.

    b.    Hawaii Revised Statutes, Section 134-9(c) Licenses to carry.

    c.    Hawaii Revised Statutes, Section 134-16  Restriction on possession, sale, gift, or delivery of electric guns.

    d.    Hawaii Revised Statutes, Section 134-23  Place to keep loaded firearms other than pistols and revolvers; penalty.

    e.    Hawaii Revised Statutes, Section 134-24  Place to keep unloaded firearms other than pistols and revolvers.

    f.    Hawaii Revised Statutes, Section 134-25  Place to keep pistol or revolver; penalty.

    g.    Hawaii Revised Statutes, Section 134-26  Carrying or possessing a loaded firearm on a public highway; penalty.

    h.    Hawaii Revised Statutes, Section 134-27  Place to keep ammunition; penalty.

    i.    Hawaii Revised Statutes, Section 134-51  Deadly weapons; prohibitions; penalty;

    (2)    Enjoining the Defendants during the pendency of this action from requiring license-to-carry applicants to show that their circumstances constitute an "exceptional case"; from requiring that they show any "urgency or necessity" in support of their applications; and from denying licenses-to-carry to those who fail to do so where the applicants are otherwise fit and qualified;

(3) Enjoining the Defendants during the pendency of this action from depriving license-to-carry applicants from bearing or transporting firearms and ammunition until such applicants are afforded due process; and

(4) Compelling the Defendants during the pendency of this action to issue a license to carry authorizing Plaintiff "to bear a concealed or openly displayed firearm, including a handgun or pistol, in public for all protected purposes."

For the following reasons and authorities, Plaintiff's request should be denied.

## II. STANDARD OF REVIEW

"[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008). In order to obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20.

A plaintiff seeking preliminary injunctive relief must "demonstrate that irreparable injury is likely in the absence of an injunction[;]" the mere possibility of irreparable harm is insufficient. Id. at 22. If shown, courts must then "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Id. at 24. The court

"should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (quoting Bernhardt v. Los Angeles County, 339 F.3d 920, 931 (9th Cir. 2003)). "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans, 586 F.3d at 1139. "[Where] an injunction is asked which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-13 (1982).

When a party seeks more than maintaining the status quo, and seeks mandatory injunctive relief, the moving party must show that the law and facts clearly favor granting such relief. Stanley v. University of Southern California, 13 F.3d 1313, 1320 (9th Cir. 1994).

III. **ARGUMENT**

   A.   <u>Plaintiff Is Not Likely to Succeed on the Merits.</u>

Plaintiff is not likely to succeed on his claims, at least not against the State of Hawaii and Governor Abercrombie. As set out in their pending Motion for Judgment on the Pleadings (Doc. #18), Plaintiff's claims against the State and the Governor are barred by the Eleventh Amendment; and his claims against the Governor for injunctive relief are also barred because Plaintiff fails to allege a "nexus between the violation of federal law and the individual accused of violating the law." <u>Pennington Seed, Inc. v. Produce Exchange No. 299</u>, 457 F.3d 1334, 1342-43 (C.A. Fed. 2006). <u>See</u> also <u>Los Angeles County Bar Ass'n v. Eu</u>, 979 F.2d 697, 704 (9th Cir. 1992) ("a generalized duty to enforce state law . . . will not subject an official to suit."). Indeed, in his Motion for Preliminary Injunction, Plaintiff points out that under Hawaii Revised Statutes, Section 134-9 "[t]he Chief of Police has sole and absolute discretion to grant or deny the permits." <u>See</u> Memorandum in Support of Motion at page 2. Regardless of whatever merit his claims may have against other defendants in this action, Plaintiff does not allege anywhere that Governor Abercrombie had any involvement in the denial of his firearm application.

Accordingly, Plaintiff's request for injunctive relief should be denied because he cannot succeed on the merits of his claims against the State and the Governor.

In <u>District of Columbia v. Heller</u>, 554 U.S. 570, 630 (2008), the Supreme Court held that a total prohibition on handguns within the home precluded citizens from using guns "for the core lawful purpose of self-defense and [was] hence unconstitutional." In <u>McDonald v. City of Chicago</u>, 130 S.Ct. 3020, 3026 (2010), the Court held "that the Second Amendment right is fully applicable to the States." The Court stated that <u>Heller</u>'s "central holding" was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." <u>Id.</u> at 3044.

The Court also explained in <u>Heller</u> that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." <u>Id.</u> For example, the Court noted that:

> [T]he majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

<u>Id.</u> at 626-27. In a footnote immediately following, the Court explained: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." <u>Id.</u> at 627 n.26.

In analyzing Plaintiff's request for injunctive relief, it is important to understand what Heller and McDonald stand for - that citizens have the right to protect themselves within their homes, and that those cases do not stand for the proposition that there is an unlimited right to bear arms in public. As one court put it, Heller's language "warns readers not to treat Heller as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense." United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) (en banc), cert. denied, 131 S.Ct. 1674 (2011).

Hawaii law provides for the carrying of a concealed weapon: "In an exceptional case, where an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant . . . to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted." Hawaii Revised Statutes, Section 134-9(a). Hawaii law also provides for the open carrying of a weapon: "Where the urgency or the need has been sufficiently indicated, the respective chief of police may grant . . . a license to carry a pistol or revolver and ammunition therefor unconcealed on the person within the county where the license is granted." Id.

In his Declaration attached to his Motion, Plaintiff indicates that as a licensed process server he allegedly "was at risk of attack, on a daily basis" and

"faced immediate threats of death and/or serious injury", and that in several of those instances the Honolulu Police Department responded.[1] Declaration at ¶¶14-18. Nowhere does Plaintiff say that those situations were not adequately dealt with by existing law enforcement resources. Plaintiff presumably recited those experiences in his August 2010 license-to-carry application. Id. at ¶¶20-22. Nonetheless, he reports that Honolulu Police Chief and defendant Louis Kealoha denied his application, informing him that "[w]e do not believe that the reasons you have provided constitute sufficient justification to issue you a permit. Therefore your application has been denied." Id. at ¶24.

Plaintiff had a full opportunity to explain to the issuing authority the reasons why he felt he needed to carry a firearm outside his home while serving process, and that authority determined, in his discretion, that Plaintiff's was not an exceptional case and that the urgency or need had not been sufficiently indicated. Neither Plaintiff's experiences as a process server nor Heller's central holding supports his argument that he should be given a permit to carry a weapon in public. Hawaii Revised Statutes, Chapter 134 does not infringe the "core" Second Amendment right of self defense within the home. Those statutes do not prevent Plaintiff from using "arms in the defense of hearth and home." Heller, 554 U.S. at

---

[1] Plaintiff claims that he was unable to defend himself in those situations (Declaration at ¶18), but also states that he has "received training regarding the appropriate escalation of force – training designed to ensure that no weapon is used prematurely and that lethal force is used only as a last resort, when all lesser means have failed or could not reasonably be employed." Id. at ¶8.

635. They do not effect a total ban on gun ownership. Thus, they are not presumptively unconstitutional, as was the handgun ban in Heller.[2]

In this District, Judge Ezra has already had occasion to rule in a case arising from the denial of a plaintiff's application for a permit to carry under Section 134-9, and concluded that under Heller and Ninth Circuit law there is no fundamental right to possess a firearm in public. In Young v. State of Hawaii, No. 08-00540, 2009 WL 1955749, at *9 (D. Haw. Jul. 2, 2009), Judge Ezra wrote:

> Plaintiff claims that the right to possess a firearm unconcealed on his person in public falls within the scope of his fundamental Second Amendment right as defined in Heller and Nordyke. Plaintiff, however, fails to support his claim with any language from these cases. Rather, Plaintiff appears to rely on a broad reading of these cases as well as his own convictions and interpretation of the Constitution to determine the scope of his fundamental right. Although this Court accepts that Heller and Nordyke expanded the scope of the Second Amendment to embody an individual right to possess firearms for the purpose of self-defense, this Court cannot identify any language that establishes the possession of an unconcealed firearm in public as a fundamental right. Heller held as unconstitutional a law that effectively banned the possession of a useable handgun *in one's home.* Nordyke followed Heller, but upheld an ordinance banning firearms on government property because

---

[2] The gravamen of Plaintiff's Motion is his desire to carry a firearm in public (as is allowed under Section 134-9). On pages 11 and 12 of his Memorandum in Support of Motion, Plaintiff makes several misstatements about other sections of Chapter 134. For example, Section 134-23, "Place to keep *loaded* firearms other than pistols and revolvers; penalty," allows for the possession of a loaded firearm within "the possessor's place of business, residence, or sojourn." Section 134-26, "Carrying or possessing a *loaded* firearm on a public highway; penalty," allows for the transport of *unloaded* firearms on public highways. Section 134-25, "Place to keep pistol or revolver; penalty," allows for the carrying of an unloaded pistol or revolver to "[a] target range."

10

> the property was considered a "sensitive" place where firearm possession could be regulated. Neither case stands for Plaintiff's proposition of a fundamental right to possess an unconcealed firearm in public. If Plaintiff does have right [sic] to possess a firearm in public, it is at most a non-fundamental right.

Id. (Emphasis in original).

Accordingly, Plaintiff is not likely to succeed on the merits against any defendant in this action, and his request for injunctive relief should therefore be denied.

    B.    <u>The Public Interest Weighs Against an Injunction.</u>

Under the standards set out in <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7 (2008), <u>supra</u>, Plaintiff must also demonstrate that the injunction he seeks is in the public interest. <u>Id.</u> at 20.

It is clear that the protection of public health and safety are important government objectives, <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 475 (1996), as is crime prevention, <u>Foucha v. Louisiana</u>, 504 U.S. 71, 81 (1992). In a recent decision where the District Court for the Southern District of California considered that state's concealed weapons regulations, the court in <u>Peruta v. County of San Diego</u>, 758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010) noted:

> In particular, the government has an important interest in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations. The government also has an important interest in reducing the number of concealed handguns in public because of their disproportionate involvement in life-threatening

11

      crimes of violence, particularly in streets and other public places.

Plaintiff does not demonstrate how striking Hawaii's statutes will help protect public health and safety, or prevent crime. While not binding on this Court, the reasoning in <u>Peruta</u> is persuasive. Increasing the number of weapons carried in public can only result in greater, not fewer risks to the public. "[U]nlike possession in the home, carrying a concealed firearm in public presents a 'recognized threat to public order' and 'poses an imminent threat to public safety.'" <u>Peruta</u>, 758 F.Supp. at 1117 (citations omitted). In <u>Young v. State of Hawaii</u>, discussed above, Judge Ezra, in dismissing the plaintiff's challenge to Section 134-9, held that the State of Hawaii has a legitimate governmental interest in public welfare and safety. 2009 WL 1955749, at *9.

      Further, for the reasons discussed above, this Court should also deny Plaintiff's alternative request for an order compelling the Defendants to issue a license authorizing him "to bear a concealed or openly displayed firearm, including a handgun or pistol, in public for all protected purposes." Plaintiff has not demonstrated that his circumstances warrant such relief, or that his perceived need to carry a weapon in public outweighs the public's interest in safety. When, as here, a party seeks mandatory injunctive relief, the moving party must show that the law and facts clearly favor granting such relief. <u>Stanley v. University of</u>

Southern California, 13 F.3d 1313, 1320 (9th Cir. 1994). Plaintiff has failed to show either.

  C.  Due Process.

  Finally, Plaintiff claims that Section 134-9 violates due process, and that without an injunction he "will suffer both an irreparable liberty interest and a property interest." See Memorandum in Support of Motion at pages 13, 18. Defendants note that Plaintiff voluntarily gave up his work as a process server.

  A threshold requirement for asserting a due process claim is the existence of a property or liberty interest. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Under the authorities discussed above, there is no fundamental right to possess a firearm in public, thus the Due Process Clause did not require the issuing authority to provide Plaintiff with due process when considering his application.

IV. CONCLUSION

  Plaintiff has not pointed to any threats to his person or property which were not adequately dealt with by law enforcement. He has produced no evidence that his application was not properly and fairly reviewed. Thus, Plaintiff's was not an exceptional case and the urgency or need for him to carry a firearm in public was not sufficiently indicated. His request for injunctive relief should therefore be denied.

DATED: Honolulu, Hawaii, February __27__, 2012.

STATE OF HAWAII

DAVID M. LOUIE
Attorney General
State of Hawaii

_/s/ Kendall J. Moser_
KENDALL J. MOSER
Deputy Attorney General

Attorney for Defendants
STATE OF HAWAII and
NEIL ABERCROMBIE, in his
official capacity as Hawaii Governor