Slip Copy, 2009 WL 1955749 (D.Hawai'i), 73 Fed.R.Serv.3d 1635
**(Cite as: 2009 WL 1955749 (D.Hawai'i))**

Only the Westlaw citation is currently available.

United States District Court, D. Hawai'i.
George K. YOUNG, Jr., Plaintiff,
v.
State of HAWAII; Mark Bennett in his Individual Capacity; County of Hawaii; Lawrence K. Mahuna in his Individual Capacity; John Does 1-15; Jane Does 1-25; corporations 1-5; and Doe Entities 1-5, Defendants.

Cv. No. 08-00540 DAE-KSC.
July 2, 2009.

West KeySummary**Civil Rights** 78 🗝1376(6)

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(6) k. Sheriffs, Police, and Other Peace Officers. Most Cited Cases

    Petitioner's § 1983 claim against a police chief for denying petitioner's application for a gun license was dismissed for failure to state a claim. It was undisputed that the police chief acted under the color of state law. However, at the time the police chief denied petitioner's license application, petitioner's fundamental right to possess a firearm only served as protection from laws passed by the federal government. Only after the Ninth Circuit's decision in *Nordyke v. King,* 563 F.3d 439 (9th Cir.2009) did petitioner's fundamental right extend to protect him from state and local firearm restrictions. Thus, petitioner's allegations showed that when the chief denied petitioner's application he acted in accordance with a law that had recently been upheld as constitutional. U.S.C.A. Const.Amend. 2; 42 U.S.C.A. § 1983.

*ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANTS COUNTY OF HAWAII AND LAWRENCE K. MAHUNA'S MOTION TO DISMISS*

DAVID ALAN EZRA, District Judge.

**\*1** Pursuant to Local Rules 7.2(d) and 7.2(e), the Court finds these matters suitable for disposition without a hearing. After reviewing Plaintiff's and Defendants' motions and the supporting and opposing memoranda, the Court DENIES Plaintiff's Motion for Reconsideration, (Doc. # 38.), and GRANTS Defendants County of Hawaii and Lawrence K. Mahuna's Motion to Dismiss. (Doc. # 37.)

*BACKGROUND*

Plaintiff, pro se, filed his complaint in the instant action on December 2, 2008 ("Complaint"). (Doc. # 1.) The factual basis of the Complaint stemmed from the denial of Plaintiff's application for a permit to carry a firearm pursuant to Hawaii Revised Statute Chapter 134 section 134-9. Plaintiff alleged violations of his (1) Second Amendment right to bear arms; (2) Fourteenth Amendment due process and equal protection rights; and (3) Ninth Amendment rights. Plaintiff further alleged that the Hawaii statute constitutes an impermissible bill of attainder.

In later supporting memoranda, Plaintiff claims that under the Second Amendment he has a right to possess a firearm for the purpose of self defense and, more specifically, to carry an unconcealed firearm on his person in public. Plaintiff seeks either a permit to carry a pistol or revolver on his person, or suspension of enforcement of section 134-9 until a revised statute is created that abolishes the Chief of Police's allegedly unfettered discretion in issuing firearm licenses. Plaintiff further seeks from Defendants Mark Bennett and Lawrence K. Mahuna, in their individual capacities, and County of Hawaii $2,000,000 in damages for physical and emotional distress and $5,000,000 in punitive damages.

Slip Copy, 2009 WL 1955749 (D.Hawai'i), 73 Fed.R.Serv.3d 1635
**(Cite as: 2009 WL 1955749 (D.Hawai'i))**

On April 1, 2009, this Court granted Defendants State of Hawaii and Mark Bennett's motion to dismiss ("Dismissal Order"), because it found that except for two differences Plaintiff's Complaint contained claims identical to those in a previous action by Plaintiff, *Young v. Hawaii,* 548 F.Supp.2d 1151 (D.Haw.2008) ("Previous Action"). This Previous Action was assigned to Judge Helen Gillmor, who dismissed all of Plaintiff's claims with prejudice on March 12, 2008. Particularly relevant to the current motion is that Judge Gillmor dismissed Plaintiff's Second Amendment claims for lack of standing, stating that only the federal government was bound by the Second Amendment and that the Hawaii State government was not so bound. *See Young,* 548 F.Supp.2d at 1168.

Judge Gillmor also rejected Plaintiff's Fourteenth Amendment claim because at the time there was no fundamental individual right to bear arms. *See id.* at 1171. This Court found that the Complaint reiterated the same claims as the Previous Action and therefore were barred from relitigation under the doctrine of collateral estoppel, or issue preclusion. This Court dismissed all claims against Defendants State of Hawaii and Mark Bennett, in his individual capacity, from the instant action. The two differences present were not significant enough to give rise to viable new claims, and were thus insufficient to overcome collateral estoppel.

**\*2** Specifically, the first difference between the instant Complaint and the Previous Action was the issuance of the *District of Columbia v. Heller,* ---U.S. ----, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) decision, which was issued after Judge Gillmor's decision in the Previous Action. Plaintiff argued that because *Heller* held that the Second Amendment conferred an individual right to bear arms, the reasoning to the contrary in the Previous Action was erroneous. This Court distinguished Heller on the grounds that it involved a federal law applying only to the District of Columbia, a federal enclave, and not to the states. This Court held that *Heller* did not overrule the longstanding precedent relied on in the Previous Action that states are not bound by the Second Amendment.[FN1] (Doc. # 36 at 10-11.)

> FN1. In the Previous Action, Judge Gillmor relied on *United States v. Cruikshank,* 92 U.S. 542, 553, 23 L.Ed. 588 (1876), and *Presser v. Illinois,* 116 U.S. 252, 264-65, 6 S.Ct. 580, 29 L.Ed. 615(1886), which both held that the Second Amendment limits only Congressional action. Judge Gillmor also noted that the Ninth Circuit followed *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), in *Hickman v. Block,* 81 F.3d 98, 101-02 (9th Cir.1996), which rejected the argument that the Second Amendment establishes an individual right.

Although *Heller* may have conferred standing to Plaintiff, it did so only for claims against the federal government, not a state or local government. Moreover, this Court held that even if *Heller* applied to the states, the Hawaii statute was easily distinguished from the statute in *Heller.* The Hawaii statute is not a complete ban on firearms in one's home, but "pertains only to the carrying of weapons on one's person ... and provides an exception for those who can establish a fear of injury."[FN2] (Doc. # 36 at 11.)

> FN2. The relevant statute, Hawaii Revised Statute section 134-9, states in part:
>
> (a) In an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant ... to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted. Where the urgency or the need has been sufficiently indicated, the respective chief of police may grant to an applicant of good moral character ... is engaged in the protection of life and property, and is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry a pistol or revolver and ammunition therefor unconcealed on the person within the county where the license is granted.

The other difference was Plaintiff sued Defendant Mark Bennett in his individual capacity in the Complaint, instead of in his official capacity as in the Previous Action. This Court found that since Plaintiff still could not prove any constitutional violation, he could not bring a 42 U.S.C. § 1983 claim against Mark Bennett in his individual capacity.

After this Court issued the Dismissal Order on April 20, 2009, the Court of Appeals for the Ninth Circuit decided Nordyke v. King, 563 F.3d 439 (9th Cir.2009). Plaintiff, pro se, filed the instant Motion for Reconsideration claiming the decision in *Nordyke* abrogates the reasoning of this Court in the Dismissal Order. Defendants Mark Bennett and State of Hawaii filed a brief in opposition to Plaintiff's motion on May 5, 2009. Plaintiff did not file a reply brief. On April 29, 2009, Defendants County of Hawaii and Lawrence K. Mahuna filed the instant Motion to Dismiss. Plaintiff, pro se, filed a brief in opposition on May 27, 2009. (Doc. # 43.) Defendants County of Hawaii and Lawrence K. Mahuna filed a reply on June 5, 2009. (Doc. # 45.)

*STANDARD OF REVIEW*
I. *Motion for Reconsideration*

Plaintiff's motion is titled "Motion for Relief from Judgment or Order, F.R.C.P. Rule 60(b2)." Plaintiff appears to believe that the intervening change of law constituted "new evidence" under 60(b)(2) and/or was unaware of Local Rule 60.1(b). As Plaintiff is proceeding pro se, this Court construes Plaintiff's pleadings as best addressed under LR 60.1(b). *See* Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir.2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions ....") (citations omitted).

**\*3** Motions for reconsideration of an order may be brought under LR 60.1, and are allowed for the following three reasons: "(a) Discovery of new material facts not previously available; (b) Intervening change in law; (c) Manifest error of law or fact." LR 60.1.

The disposition of a motion for reconsideration is within the discretion of the district court. Lolli v. County of Orange, 351 F.3d 410, 411 (9th Cir.2003); Plotkin v. Pac. Tel. & Tel. Co., 688 F.2d 1291, 1292 (9th Cir.1982). This rule derives from the compelling interest in the finality of judgments, which should not be lightly disregarded. Rodgers v. Watt, 722 F.2d 456, 459 (9th Cir.1983); Carnell v. Grimm, 872 F.Supp. 746, 758 (D.Haw.1994).

The Ninth Circuit requires a successful motion for reconsideration to furnish both a reason why the court should reconsider its prior decision, as well as facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Carnell, 872 F.Supp. at 758. Mere disagreement with a previous order is an insufficient basis for reconsideration and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. *See* Haw. Stevedores, Inc. v. HT & T Co., 363 F.Supp.2d 1253, 1269 (D.Haw.2005).

II. *Motion to Dismiss*

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6). The Ninth Circuit requires only that a complaint satisfy the pleading standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure of "a short and plain statement of the claim showing that the pleader is entitled to relief." Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 839 (9th Cir.2007) (internal quotations omitted). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir.2005). A complaint does not need to include detailed facts to survive a Rule

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). However, in providing grounds for relief, a plaintiff must do more than recite the formulaic elements of a cause of action. *Id.* at 1966. "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988).

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally. *Bernhardt,* 339 F.3d at 925; *Jackson v. Carey,* 353 F.3d 750, 757 (9th Cir.2003). Pro se plaintiffs in a civil rights action must be afforded the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.' " *Id.* (quoting *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987), *superceded by statute, Lopez v. Smith,* 203 F.3d 1122, 1126-30 (determining that a district court retains its discretion to dismiss a pro se prisoner's in forma pauperis complaint with or without leave to amend under the Prisoner's Litigation Reform Act)). "[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies." *Id.*

## DISCUSSION

**\*4** Plaintiff asserts that the Ninth Circuit Court of Appeals case of *Nordyke,* 563 F.3d 439, is an intervening change of law, vitiating this Court's reasoning in the Dismissal Order.[FN3]

> FN3. This Court notes that the holding reached by the Ninth Circuit Court of Appeals in *Nordyke* has not been followed in a subsequent case heard by the Seventh Circuit Court of Appeals. *See Nat'l Rifle Ass'n of America, Inc. v. City of Chicago,* Nos. 08-4243, 08-4244, 08-4241, 2009 WL 1515443 (7th Cir. June 2, 2009). The Seventh Circuit rejected any incorporation of the Second Amendment to the states, and the plaintiffs petitioned for certiorari on June 3, 2009. A decision on the petition is due in August, 2009.

I. *The Nordyke Case*

In 1999, Alameda County, California, passed an ordinance ("the Ordinance") making it "a misdemeanor to bring onto or posses a firearm on County property." *Nordyke* 563 F.3d at 443. Plaintiffs Nordykes were longtime promoters of a popular gun show in the County that regularly took place on the County fairgrounds. The Nordykes believed the Ordinance was designed to solely target gun shows and alleged that without guns present at the fairgrounds there could be no show. The Nordykes filed suit against the County and its supervisors under 42 U.S.C. § 1983 for various constitutional violations, including a Second Amendment claim.[FN4]

> FN4. The procedural history of the Nordykes' claims is complex, but the only relevant issue here is whether or not the Nordykes could bring a claim for violation of their individual Second Amendment rights by a local government. The District Court dismissed the claim, but the Ninth Circuit on appeal, in light of the recent decision in *Heller,* allowed the parties to file briefs with regard to that claim.

The Ninth Circuit acknowledged that *Heller* presented a different interpretation of the Second Amendment than its precedent of *Hickman v. Block,* 81 F.3d 98 (9th Cir.1996), and decided to approach the Nordykes' Second Amendment claim in three steps. First, it would determine whether or not *Heller* abrogated *Hickman,* specifically in regards to the type of right conferred by the Second Amendment. Second, if *Hickman* no longer controlled, the Ninth Circuit would determine whether the Second Amendment was incorporated to the states through the Fourteenth Amendment. Third, if the Second Amendment was incorporated, the

Slip Copy, 2009 WL 1955749 (D.Hawai'i), 73 Fed.R.Serv.3d 1635
**(Cite as: 2009 WL 1955749 (D.Hawai'i))**

Page 5

Ninth Circuit would determine whether the Ordinance violates that Amendment.

In *Hickman,* the Ninth Circuit interpreted the holdings of various Supreme Court Second Amendment cases and found that the Amendment conferred a collective right to the states, not an individual right to the people.[FN5] Under this interpretation, "individuals lacked standing to raise a Second Amendment challenge to a [state or local] law regulating firearms." *Nordyke,* 563 F.3d at 445 (citing *Hickman,* 81 F.3d at 102-03). *Heller,* however, held that the Second Amendment unequivocally confers an individual right. Thus, the Ninth Circuit found that *Heller* abrogated *Hickman* by removing the collective right basis for its decision.

FN5. *See supra* note 2.

Unencumbered by *Hickman,* the Ninth Circuit had to then determine if the Second Amendment could be made enforceable against the states. It identified three potential methods through which this could occur: "(1) direct application, (2) incorporation by the Privileges and Immunities Clause of the Fourteenth Amendment, or (3) incorporation by the Due Process Clause of the same Amendment." *Nordyke* 563 F.3d at 446. The Ninth Circuit summarily ruled out the first potential application because longstanding Supreme Court precedent holds that the Bill of Rights only applies to the federal government, except when selectively incorporated by the Fourteenth Amendment. *Id.* at 446 (citing *Barron v. Mayor of Balt,* 32 U.S. (7 Pet.) 243, 247-51, 8 L.Ed. 672 (1833)). With respect to the second potential application, the Ninth Circuit stated that the Privileges and Immunities Clause does not incorporate the Second Amendment, as that clause only protects new rights granted by the Constitution. Because the right to bear arms preexisted the formation of the Constitution, the Second Amendment did not create a new right protected by that clause. *Id.* at 447 (citing *United States v. Cruikshank,* 92 U.S. 542, 553, 23 L.Ed. 588(1875)).

*5 The third potential application of the Second Amendment, incorporation through the Due Process Clause, required a more thorough analysis. The Ninth Circuit recognized that its decision in *Fresno Rifle & Pistol Club, Inc. v. Van de Kamp,* 965 F.2d 723 (9th Cir.1992), rejected incorporation of the Second Amendment through the Fourteenth Amendment. However, the *Fresno* opinion did not specify whether it relied on the Privileges and Immunities Clause or the Due Process Clause in reaching its decision. Instead, the opinion relied on the holdings in *United States v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1875), and *Presser v. Illinois,* 116 U.S. 252, 6 S.Ct. 580, 29 L.Ed. 615 (1886), to reject incorporation through the Fourteenth Amendment. As *Cruikshank* and *Presser* only addressed the Privileges and Immunities Clause in their decisions, the Ninth Circuit reasoned that the *Fresno* court employed these cases as "shorthand" in its own reasoning to reject the Privileges and Immunities Clause incorporation argument. Under this reading, *Fresno* never reached the Due Process Clause incorporation argument and would not preclude the Ninth Circuit from making that determination now.

The Ninth Circuit then stated that it had "to determine whether the right to keep and bear arms ranks as fundamental, meaning 'necessary to an Anglo-American regime of ordered liberty.' If it does, then the Fourteenth Amendment incorporates it." *Nordyke,* 563 F.3d at 450 (citation omitted) (emphasis deleted). The Ninth Circuit proceeded through a thorough substantive due process analysis and found that the right to bear arms is both a right deeply rooted in American history and tradition, and one that "is indeed fundamental." *Id.* at 457. Additionally, the Ninth Circuit specifically noted that the "language throughout *Heller* suggests that the right [to keep and bear arms] is fundamental by characterizing it the same way other opinions described enumerated rights found to be incorporated." *Id.* at 456-57. For these reasons, the Ninth Circuit concluded that the Due Process Clause incorporated the Second Amendment to make it enforceable against the states and their local govern-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1955749 (D.Hawai'i), 73 Fed.R.Serv.3d 1635
**(Cite as: 2009 WL 1955749 (D.Hawai'i))**

ments.

The Ninth Circuit's final task was to determine if the Ordinance violated the Nordykes' Second Amendment right. The Ninth Circuit found that *Heller* identified the central right conferred by the Second Amendment as " 'the inherent right of self-defense,' " *Nordyke,* 563 F.3d at 458 (quoting *Heller,* 128 S.Ct. at 2817), and more specifically, "the ability of individuals to defend themselves in their homes with usable firearms." *Id.* at 460. The Ninth Circuit further recognized that, notwithstanding this inherent right, the *Heller* court would continue to presume valid "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id.* (quoting *Heller,* 128 S.Ct. at 2817).[FN6]

> FN6. The Court in *Heller* noted that these examples of regulatory measures were only examples, and not an exhaustive list. *Heller,* 128 S.Ct. at 2817 n. 26.

The Ninth Circuit upheld the Ordinance finding that, unlike *Heller,* the *Nordyke* Ordinance did not affect self-defense or restrict the possession of firearms in one's home. Put another way, the Ordinance did not interfere with the core right conferred by the Second Amendment. Moreover, the Ordinance fit into the exception provided by *Heller* for sensitive places because it only applied to public government property like county parks and fairgrounds.

II. *Plaintiff's Motion for Reconsideration*

*\*6* Plaintiff argues that *Nordyke* constitutes an intervening change of law that partially vitiates this Court's reasoning in the Dismissal Order, as well as Judge Gillmor's reasoning in the Previous Action. Under *Nordyke,* Plaintiff has standing to bring a cause of action for infringement of his individual Second Amendment right by a state or local government. However, even assuming without deciding that Plaintiff's Second Amendment right is violated by Hawaii Revised Statute section 134-9, he cannot maintain a claim against either the State of Hawaii or Mark Bennett in his individual capacity for the reasons stated below. Because Plaintiff has provided no other justification why this Court should reconsider its Dismissal Order, Plaintiff's motion for reconsideration is DENIED.

Defendant State of Hawaii's immunity from suit is unaffected by *Nordyke.* The mechanism for all of Plaintiff's constitutional claims is 42 U.S.C. § 1983, which states in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. This statute however "does not provide a federal forum for litigants who seek a remedy against a State" or its officers acting in their official capacity, since neither the State nor those officers are persons within the meaning of § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *Nordyke* did not change this longstanding precedent. Furthermore, the Eleventh Amendment bars such suits unless the State has waived its immunity or "unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.* (citation omitted). State of Hawaii has not waived its immunity under § 1983, and Congress has not exercised its § 5 power to override it. *See Linville v. State of Hawaii,* 874 F.Supp. 1095, 1103 (D.Haw.1994) ("Under the Eleventh Amendment, an unconsenting state in generally immune from suits brought in federal court.... Federal claims are permitted only if there is congressional authorization of the suit.") (citations omitted). For these reasons, Plaintiff's claims against Defendant State of Hawaii have been appropriately dismissed from this action.

Plaintiff's claims against Defendant Mark Bennett in his individual capacity are also unaffected

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1955749 (D.Hawai'i), 73 Fed.R.Serv.3d 1635
**(Cite as: 2009 WL 1955749 (D.Hawai'i))**

by *Nordyke.* In order to bring a § 1983 claim against Mark Bennett in his individual capacity, Plaintiff "must show that 'the official, acting under color of state law, caused the deprivation of a federal right.' " *Spoklie v. Montana,* 411 F.3d 1051, 1060 (9th Cir.2005) (quoting *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ). Even assuming without deciding that the denial of Plaintiff's application for a license to carry a gun on his person constituted a violation of his Second Amendment right, Plaintiff has failed to provide any evidence that these denials are related to any action taken by Mark Bennett. In the Previous Action, Judge Gillmor dismissed Plaintiff's claims against Defendant Mark Bennett in his official capacity because Plaintiff's allegations of "general oversight of State laws [were] insufficient to establish the required nexus between the ... Attorney General [Mark Bennett], and the alleged violation of Plaintiff's civil rights...." *Young,* 548 F.Supp.2d at 1164.

**\*7** Although Plaintiff has now named Mark Bennett in his individual capacity, Plaintiff has again failed to establish a nexus between Mark Bennett and the violation of Plaintiff's Second Amendment right. Indeed, this Court cannot find any specific claim by Plaintiff against Defendant Mark Bennett other than an allegation of a "working conspiracy" between Mark Bennett and codefendant Lawrence K. Mahuna. (Doc. # 1 at 14.) However, Plaintiff provides no further description of what this conspiracy may be, nor does he provide any facts to support his claim. For these reasons, Plaintiff's claims against Defendant Mark Bennett in his individual capacity have been appropriately dismissed from this action.

III. *Defendants County of Hawaii and Lawrence K. Mahuna's Motion to Dismiss*

Defendants County of Hawaii and Lawrence K. Mahuna argue that all of Plaintiff's claims against them are barred under the doctrine of collateral estoppel, or issue preclusion, as Plaintiff is merely restating the same claims that were dismissed with prejudice by Judge Gillmor in the Previous Action.[FN7] "Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Kamilche Co. v. United States,* 53 F.3d 1059, 1062 (9th Cir.1995) (quoting *Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1320 (9th Cir.1992)), *amended on rehearing,* 75 F.3d 1391 (9th Cir.1996). A previous decision has preclusive effect when,

> FN7. Defendants also argue that Plaintiff's Second Amendment claim should be dismissed because he lacks standing. Defendants acknowledge that *Nordyke* incorporated the Second Amendment against the states, but they assert that the case is inapplicable to the instant action because the Hawaii statute at issue is substantively different than the ordinance in *Nordyke.* However, this argument conflates whether Plaintiff has standing to sue for an alleged infringement of a constitutional right, which he does have under *Nordyke.* with whether the statute in question is constitutional, which remains to be determined.

(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.
*Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 885 (9th Cir.2000).

This Court has discussed at length in the instant and previous orders that Plaintiff has failed to assert any causes of action different from those in the Previous Action. The only factual difference between the instant action and the Previous Action was that Plaintiff reapplied for a license to carry a firearm under section 134-9 for the same reasons and was denied the license on the same grounds. Moreover, the same issues pertaining to Plaintiff's instant claims were decided in the Previous Action,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1955749 (D.Hawai'i), 73 Fed.R.Serv.3d 1635
**(Cite as: 2009 WL 1955749 (D.Hawai'i))**

Judge Gillmor's 42-page decision reached a judgment on the merits of these issues, and Plaintiff was also the plaintiff in the Previous Action.

However, the instant action differs from the Previous Action in two ways. First, Defendant Lawrence K. Mahuna is now named in his individual capacity instead of his official capacity. Second, Plaintiff has standing under *Nordyke* to bring an action against a state or local government for an alleged infringement of his Second Amendment right. Except for these two differences, Plaintiff's claims against Defendants County of Hawaii and Lawrence K. Mahuna are identical for the purposes of collateral estoppel to the claims asserted in the Previous Action and are thus barred from relitigation.

**\*8** Plaintiff's remaining claims against Defendants Lawrence K. Mahuna in his individual capacity and County of Hawaii are also dismissed. As discussed above with respect to Defendants in the Dismissal Order, the mechanism for Plaintiff's claims against a government official in their individual capacity for the alleged infringement of a constitutional right is 42 U.S.C. § 1983. Here, it is undisputed that Lawrence Mahuna acted under the color of state law, Hawaii Revised Statute section 134-9, when he denied Plaintiff's applications for a license. These denials occurred before the decision in *Nordyke* was issued, when there was no uncertainty as to the constitutionality of the law. Prior to *Nordyke,* the Ninth Circuit had held that the Second Amendment only conferred a collective right to the states, not a right to an individual. *See Hickman v. Block,* 81 F.3d 98 (9th Cir.1996), *abrogated by District of Columbia v. Heller,* --- U.S. ----, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Put another way, at the time Plaintiff applied for a license, his fundamental right to possess a firearm only served as protection from laws passed by the federal government. Only after *Nordyke* did Plaintiff's fundamental right extend to protect him from state and local firearm restrictions.

Therefore, even assuming without deciding that the Second Amendment can now be interpreted to confer an individual right to possess a firearm in public, Plaintiff has failed to establish that Lawrence Mahuna's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* --- U.S. ----, ----, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (citation omitted). Rather, Plaintiff's allegations show that when Lawrence Mahuna denied Plaintiff's application he acted in accordance with a law that Judge Gillmor had recently upheld as constitutional.[FN8] As there was no uncertainty as to the constitutional validity of Hawaii Revised Statute section 134-9 when Lawrence Mahuna denied Plaintiff's application, Plaintiff's claim fails to meet the *Pearson* requirements for § 1983 claims against a government official in their individual capacity. For these reasons Plaintiff's claims against Defendant Lawrence K. Mahuna in his individual capacity are dismissed.

> [FN8]. Although unclear, it appears that Plaintiff would have this Court believe that Lawrence Mahuna violated Plaintiff's right because Lawrence Mahuna "should have known" that his actions would later be considered unconstitutional. Plaintiff however fails to provide any factual or legal basis for this assertion, and so this Court does not address it.

With respect to Plaintiff's claim against Defendant County of Hawaii, Plaintiff now has standing to bring an action against a state or local government for an infringement of his rights under the Second Amendment. "Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief...." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Wong v. City & County of Honolulu,* 333 F.Supp.2d 942, 947 (D.Haw.2004). As discussed above, Plaintiff cannot maintain any claims for past violations of his constitutional right because no violations occurred. For that reason, Plaintiff can only seek prospective injunctive relief

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

from the County under the *Ex Parte Young* doctrine. *Ex Parte Young,* 209 U.S. 123, 154, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Maizner v. Hawaii,* 405 F.Supp.2d. 1225, 1230 (D.Haw.2005). Under this doctrine, a party may seek prospective injunctive relief for an ongoing violation of a federal statutory or constitutional right. *See Young,* 548 F.Supp.2d at 1163. Plaintiff has a claim for prospective injunctive relief against Defendant County of Hawaii if he can show both: (1) that the scope of the fundamental right conferred to Plaintiff under the Second Amendment encompasses the right to possess a firearm in public, and (2) that Hawaii Revised Statute section 134-9 infringes on this right.

**\*9** Plaintiff claims that the right to possess a firearm unconcealed on his person in public falls within the scope of his fundamental Second Amendment right as defined in *Heller* and *Nordyke.* FN9 Plaintiff, however, fails to support this claim with any language or reasoning from these cases. Rather, Plaintiff appears to rely on a broad reading of these cases as well as his own convictions and interpretation of the Constitution to determine the scope of his fundamental right. Although this Court accepts that *Heller* and *Nordyke* expanded the scope of the Second Amendment to embody an individual right to possess firearms for the purpose of self-defense, this Court cannot identify any language that establishes the possession of an unconcealed firearm in public as a fundamental right. *Heller* held as unconstitutional a law that effectively banned the possession of a useable handgun *in one's home. Nordyke* followed *Heller,* but upheld an ordinance banning firearms on government property because the property was considered a "sensitive" place where firearm possession could be regulated. Neither case stands for Plaintiff's proposition of a fundamental right to possess an unconcealed firearm in public. If Plaintiff does have right to possess a firearm in public, it is at most a non-fundamental right.

> FN9. For reasons unclear to this Court, Plaintiff concedes he does not have a right to carry a firearm concealed, but does have a right to carry one unconcealed in public.

In the Previous Action, Judge Gillmor noted that statutes that infringe on non-fundamental rights are "reviewed under the rational basis standard.... Applying the rational basis standard, 'we presume legislation is valid and will sustain it if the classification drawn by the statute is rationally related to a legitimate [governmental] interest.' " *Young,* 548 F.Supp.2d at 1169 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)) (other citation omitted). Judge Gillmor then held Hawaii Revised Statute section 134-9 does not raise any constitutional concerns because it is "rationally related to the legitimate government interest in public welfare and safety." *Id.* This Court agrees with Judge Gillmor's analysis and finds no reason to deviate from it now.

Even accepting all of Plaintiff's alleged facts as true, Plaintiff has failed to adequately state a constitutional violation under § 1983 because there has been no infringement of his fundamental rights. Defendants County of Hawaii and Lawrence K. Mahuna's Motion to Dismiss is, therefore, GRANTED.

### CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for Reconsideration and GRANTS Defendants County of Hawaii and Lawrence K. Mahuna's Motion to Dismiss. All of Plaintiff's claims against the named Defendants are DISMISSED WITH PREJUDICE. Clerk to enter judgment.

IT IS SO ORDERED.

D.Hawai'i,2009.
Young v. Hawaii
Slip Copy, 2009 WL 1955749 (D.Hawai'i), 73 Fed.R.Serv.3d 1635

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.