Page 1

--- F.Supp.2d ----, 2011 WL 1885641 (E.D.Cal.)
**(Cite as: 2011 WL 1885641 (E.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. California.
Adam RICHARDS et al., Plaintiffs,
v.
COUNTY OF YOLO and Yolo County Sheriff Ed Prieto, Defendants.

No. 2:09–cv–01235 MCE–DAD.
May 16, 2011.

**Background:** Non-profit organizations and two of their members brought action against county and county sheriff after the two members were denied gun permits under the county's concealed weapon licensing policy. The parties moved for summary judgment.

**Holdings:** The District Court, Morrison C. England, Jr., J., held that:
(1) county's concealed weapon licensing policy was rationally related to county's goals;
(2) the policy was not void for facial vagueness; and
(3) the policy did not violate equal protection.

Plaintiffs' motion denied; defendants' motion granted.

West Headnotes

**[1] Weapons 406 ⟲107(2)**

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k107 Construction
                406k107(2) k. Right to Bear Arms in General. Most Cited Cases

**Weapons 406 ⟲107(5)**

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k107 Construction
                406k107(5) k. Right as Individual or Collective; Militia Requirement. Most Cited Cases

Rights bestowed under the Second Amendment are fundamental, and apply equally to the federal government and the States; specifically, the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense in the home. U.S.C.A. Const.Amend. 2.

**[2] Weapons 406 ⟲107(2)**

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k107 Construction
                406k107(2) k. Right to Bear Arms in General. Most Cited Cases

The Second Amendment does not create a fundamental right to carry a concealed weapon in public. U.S.C.A. Const.Amend. 2.

**[3] Constitutional Law 92 ⟲1050**

92 Constitutional Law
    92VII Constitutional Rights in General
        92VII(A) In General
            92k1050 k. In General. Most Cited Cases

In determining whether government action substantially burdens a constitutionally-protected right, courts typically ask whether the restriction leaves open sufficient alternative avenues for exercising the right.

**[4] Constitutional Law 92 ⟲1050**

92 Constitutional Law
    92VII Constitutional Rights in General
        92VII(A) In General

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

92k1050 k. In General. Most Cited Cases

A regulation or policy does not substantially burden a constitutional right simply because it makes the right more difficult to exercise.

**[5] Weapons 406 ⟿106(3)**

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k106 Validity
                406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

County's concealed weapon licensing policy, which required applicants to demonstrate a valid reason for a permit, did not substantially burden citizens' Second Amendment right to bear and keep arms, and therefore rational basis review applied to the policy; even if residents were denied a concealed weapon for self-defense purposes, they were still more than free to license an unloaded weapon nearby their person, load it, and use it for self-defense in circumstances that could occur in a public setting. U.S.C.A. Const.Amend. 2.

**[6] Constitutional Law 92 ⟿1055**

92 Constitutional Law
    92VII Constitutional Rights in General
        92VII(A) In General
            92k1055 k. Reasonableness or Rationality. Most Cited Cases

A regulation is constitutional under rational basis review if it bears a reasonable relationship to a legitimate government interest.

**[7] Weapons 406 ⟿106(3)**

406 Weapons
    406I In General
        406k102 Constitutional, Statutory, and Regulatory Provisions
            406k106 Validity
                406k106(3) k. Violation of Right to Bear Arms. Most Cited Cases

County's concealed weapon licensing policy, which required applicants to demonstrate a valid reason for a permit, was rationally related to the county's efforts to maintain public safety and prevent both gun-related crime, and the death of its citizens, and was therefore constitutional. U.S.C.A. Const.Amend. 2.

**[8] Constitutional Law 92 ⟿656**

92 Constitutional Law
    92V Construction and Operation of Constitutional Provisions
        92V(F) Constitutionality of Statutory Provisions
            92k656 k. Facial Invalidity. Most Cited Cases

In a facial challenge to a statute outside of the First Amendment context, a plaintiff must demonstrate that no set of circumstances exists under which the statute would be valid, i.e. that the law is unconstitutional in all of its applications. U.S.C.A. Const.Amend. 1.

**[9] Constitutional Law 92 ⟿656**

92 Constitutional Law
    92V Construction and Operation of Constitutional Provisions
        92V(F) Constitutionality of Statutory Provisions
            92k656 k. Facial Invalidity. Most Cited Cases

In a facial challenge to a statute outside of the First Amendment context, courts are instructed to first determine whether the enactment reaches a substantial amount of constitutionally protected conduct by examining the ambiguous as well as the unambiguous scope of the enactment; such an inquiry must be examined in the light of the facts of the case at hand, which should ultimately demonstrate that the regulation is patently invalid because no standard of conduct is specified at all. U.S.C.A. Const.Amend. 1.

**[10] Constitutional Law 92 ⟿1164**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

92 Constitutional Law
   92X First Amendment in General
      92X(A) In General
         92k1162 Overbreadth in General
            92k1164 k. Substantial Impact, Necessity Of. Most Cited Cases

    An exception to the rigidity of the facial challenge test exists for issues involving the First Amendment; a law involving First Amendment protections may be overturned as impermissibly broad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep. U.S.C.A. Const.Amend. 1.

**[11] Constitutional Law 92 🔑1133**

92 Constitutional Law
   92VIII Vagueness in General
      92k1132 Particular Issues and Applications
         92k1133 k. In General. Most Cited Cases

**Weapons 406 🔑106(2)**

406 Weapons
   406I In General
      406k102 Constitutional, Statutory, and Regulatory Provisions
         406k106 Validity
            406k106(2) k. Vagueness and Overbreadth. Most Cited Cases

    County's concealed weapon licensing policy, which included evaluating an applicant's good moral character and good cause for seeking a permit, was not void for unconstitutional facial vagueness; applicants were clearly instructed to be of good moral character, and demonstrate good cause for requiring the license, and the policy went further by providing examples of the types of good cause that satisfied the terms of the policy. U.S.C.A. Const.Amend. 2.

**[12] Constitutional Law 92 🔑3041**

92 Constitutional Law
   92XXVI Equal Protection
      92XXVI(A) In General
         92XXVI(A)5 Scope of Doctrine in General
            92k3038 Discrimination and Classification
               92k3041 k. Similarly Situated Persons; Like Circumstances. Most Cited Cases

    The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated the same under the law. U.S.C.A. Const.Amend. 14.

**[13] Constitutional Law 92 🔑3039**

92 Constitutional Law
   92XXVI Equal Protection
      92XXVI(A) In General
         92XXVI(A)5 Scope of Doctrine in General
            92k3038 Discrimination and Classification
               92k3039 k. In General. Most Cited Cases

**Constitutional Law 92 🔑3050**

92 Constitutional Law
   92XXVI Equal Protection
      92XXVI(A) In General
         92XXVI(A)6 Levels of Scrutiny
            92k3050 k. In General. Most Cited Cases

    Modern equal protection analysis is a two step process: the first step is identifying the classification of groups, namely that a law is applied in a discriminatory manner or imposes different burdens on different classes of people; the second step requires the court to assess the legitimacy of a discriminatory statute under the appropriate level of scrutiny. U.S.C.A. Const.Amend. 14.

**[14] Constitutional Law 92 🔑3057**

92 Constitutional Law
   92XXVI Equal Protection
      92XXVI(A) In General

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

92XXVI(A)6 Levels of Scrutiny

92k3052 Rational Basis Standard; Reasonableness

92k3057 k. Statutes and Other Written Regulations and Rules. Most Cited Cases

Where an ordinance does not purposefully operate to the detriment of a suspect class, the only requirement of equal protection is that the ordinance be rationally related to a legitimate governmental interest. U.S.C.A. Const.Amend. 14.

**[15]** Constitutional Law 92 3478

92 Constitutional Law
   92XXVI Equal Protection
     92XXVI(E) Particular Issues and Applications
       92XXVI(E)1 In General
         92k3478 k. Right to Possess and Use Firearms. Most Cited Cases

**Weapons 406 106(4)**

406 Weapons
   406I In General
     406k102 Constitutional, Statutory, and Regulatory Provisions
       406k106 Validity
         406k106(4) k. Violation of Other Rights or Provisions. Most Cited Cases

County's concealed weapon licensing policy, which required applicants to demonstrate a valid reason for a permit, did not violate the Equal Protection Clause; the policy did not treat similarly situated individuals differently, and the good cause and good character clauses were rationally related to county's goals of reducing the incidence of unlawful public shootings, preventing police from safely responding to dangerous situations, generally preventing crime, and ensuring public safety. U.S.C.A. Const.Amends. 2, 14.

Alan Gura, Gura & Possessky, Alexandria, VA, Donald E. J. Kilmer, Jr., San Jose, CA, for Plaintiffs.

Serena Mercedes Sanders, Angelo, Kilday & Kilduff, Sacramento, CA, for Defendants.

### MEMORANDUM AND ORDER

MORRISON C. ENGLAND, JR., District Judge.

*\*1* Plaintiffs Adam Richards, Brett Stewart, the Second Amendment Foundation, Inc., and The Calguns Foundation, Inc. (collectively, "Plaintiffs") seek redress from Sheriff Ed Prieto and the County of Yolo (collectively, "Defendants") after Plaintiffs Richards and Stewart were denied gun permits under Yolo County's, and by extension Sheriff Prieto's, concealed weapon licensing policy.

Both Plaintiffs and Defendants have filed Motions for Summary Judgment. A hearing on the matter was held on March 10, 2011. For the reasons set forth below, Plaintiffs' Motion is denied and Defendants' Motion is granted.

### BACKGROUND
**A. Concealed Weapon License Policy**

California law generally prohibits individuals from carrying a concealed firearm in public.[FN1] *See* Cal.Penal Code §§ 12025(a)(2), 12027. With a permit and for self-defense purposes, one can obtain a license in California to carry a firearm "capable of being concealed upon the person." Penal Code § 12050(a)(1)(A)(i). However, applicants for such a license must provide good cause for applying, and demonstrate they are of "good moral character." Penal Code § 12050(a). Other requirements include a background check and completion of a training course. *See id.* Beyond these basic requirements, the state grants each municipal or county authority wide latitude to determine both the appropriate criteria for issuing a license and the need to impose any reasonable restrictions on the licensee. Penal Code § 12050(b). Plaintiffs are not challenging the California statute itself[FN2], but instead challenge Yolo County's interpretation of their statutory authority, namely its Concealed Weapon License Policy.

Consistent with the regulations under Califor-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

nia Penal Code, Yolo County and Defendant Prieto, as the Sheriff, have created a policy regulating the issuance of concealed weapon licenses to Yolo County residents. Sheriff Prieto retains "discretion to issue a license to carry a concealed firearm to residents within Yolo County." (*See* Policy, ECF No. 60–1, at 1.) The policy, accessible to the public, clearly enumerates the criteria for obtaining the license, and an applicant must, among other things, demonstrate that they have a valid reason to request the permit in the first place. (*Id.*) Examples of valid reasons listed in the policy "include, but are not limited to:" credible threats of violence against the applicant, and being a business owner who carries large sums of cash. (*Id.* at 1–2.) Examples of *invalid* reasons include hunting, fishing, or self-defense "without credible threats of violence." (*Id.* at 2.) The issuance of a license ultimately bears on whether the "Sheriff or his designee feels there is sufficient reason to grant the license." (*Id.*)

**B. Plaintiffs**

Plaintiffs Second Amendment Foundation, Inc. and The Calguns Foundation, Inc. are non-profit organizations designed to promote the rights of firearm holders, and more generally anti-gun control advocates. (*SAC* 2.) Both Plaintiffs Richards and Stewart are members and supporters of both organizations. (*Id.* at 1.)

**\*2** In March 2009, Plaintiff Richards contacted the Yolo County Sheriff's office to inquire about the procedure to obtain a permit to carry a handgun. Defendant was told that he could not obtain a concealed weapon license for self-defense purposes because that would not constitute good cause under the terms of the policy. (*Id.* at 4.) In addition, since Plaintiff Richards resides in Davis, the Yolo County Sheriff's office informed him that he would first have to apply for a concealed weapon license from the Chief of Police in the City of Davis. (*Id.*)

Similarly, in March 2010, Plaintiff Stewart applied for a concealed weapon license from Yolo County, after first being told that Davis police had discontinued issuing Carry Concealed Weapon permits. (*Id.* at 5.) On April 27, 2010, Plaintiff Stewart was informed in writing that he was being denied a permit by Yolo County because his application did not " 'meet the criteria' " for granting a license, as outlined in the policy. (*Id.*)

**STANDARD**

The Federal Rules of Civil Procedure[FN3] provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Once the moving party meets the requirements of Rule 56 by showing that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Each party seeking summary judgment bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. However, genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–631 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

L.Ed.2d 538 (1986)).

## ANALYSIS
### A. Second Amendment
#### 1. *Heller* and the Scope of Protection

Plaintiffs argue that, by maintaining a policy that deprives Plaintiffs Richards and Stewart of a concealed weapon license, Defendants are infringing on their Second Amendment right to bear arms, as the Yolo County license policy effectively acts as a complete ban on an individual's right to carry. They challenge the policy both on its face, and as applied. (*See* Mot. Summ. J. Hr'g Tr. 9:15–17, March 10, 2011, ECF No. 70.) Defendants, on the other hand, believe that the Second Amendment has never been interpreted as granting citizens the right to carry a concealed weapon in public, and restrictions on firearm possession has been the status quo in the United States for many years. Further, Defendants contend that Yolo County's policy does not violate the Second Amendment, because it is not a total ban on the possession of handguns.

**\*3** [1] The Second Amendment protects an individual's right to "keep and bear arms." U.S. Const. amend. II. Rights bestowed under the Second Amendment are "fundamental," and apply "equally to the Federal Government and the States." McDonald v. City of Chicago, ––– U.S. ––––, 130 S.Ct. 3020, 3050, 177 L.Ed.2d 894 (2010). Specifically, the Second Amendment "protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense in the home." McDonald, 130 S.Ct. at 3044. *See also* District of Columbia v. Heller, 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) ("the District's ban on handgun possession in the home [for self-defense purposes] violates the Second Amendment."); United States v. Vongxay, 594 F.3d 1111, 1115 (9th Cir.2010) (explaining the scope of *Heller* was limited to the right to register and keep a loaded firearm in the home for self-defense).

[2] However, as the Supreme Court of the United States recently clarified in a landmark case, the "right secured by the Second Amendment is not unlimited. From Blackstone through the 19th century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller, 554 U.S. at 626, 128 S.Ct. 2783. In fact, the Court was careful to explain that their decision did not, in any way, invalidate many of the longstanding state and federal prohibitions on firearm possession. Id. at 627, 128 S.Ct. 2783.[FN4] Based upon this, Heller cannot be read to invalidate Yolo County's concealed weapon policy, as the Second Amendment does not create a fundamental right to carry a concealed weapon in public.

Furthermore, the policy does not create a total ban on carrying a firearm, such that the policy completely infringes on the rights protected by the Second Amendment. Since the Supreme Court has yet to articulate the appropriate standard of review, the Ninth Circuit has determined that only regulations that "substantially burden the right to keep and bear arms trigger heightened scrutiny under the Second Amendment." Nordyke v. King, 644 F.3d 776, 786 (9th Cir.2011) (evaluating whether a restriction on gun sales substantially burdens Second Amendment rights). It then follows that if the regulation does not place a substantial burden to an individual's fundamental right, then rational basis review applies. Id. at 785–86 (In "a variety of contexts" the Supreme Court "applies mere rational basis scrutiny to laws that regulate, but do not significantly burden, fundamental rights.").[FN5]

[3] In determining whether government action "substantially burdens" a constitutionally-protected right, courts "typically ask whether the restriction leaves open sufficient alternative avenues" for exercising the right. Id. at 787. The appropriate inquiry here, under a substantial burden analysis, is whether Yolo County's restrictions leave Plaintiffs with "reasonable alternative means" to obtain and keep a firearm "sufficient for self-defense purposes." Id. at 787.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 1885641 (E.D.Cal.)
**(Cite as: 2011 WL 1885641 (E.D.Cal.))**

Page 7

**\*4** [4] California Penal Code has carved out a number of exceptions that allow individuals to possess and carry *loaded* firearms in public settings, including for use in hunting, or in a situation where someone who believes they are in "immediate, grave, danger and that the carrying of the weapon is necessary for the preservation of that person or property." Penal Code § 12031(j)(1).<sup>FN6</sup> A regulation or policy "does not substantially burden a constitutional right simply because it makes the right ... more difficult to exercise." *Nordyke,* 644 F.3d at 787–88.

[5] Under the statutory scheme, even if Plaintiffs are denied a concealed weapon license for self-defense purposes from Yolo County, they are still more than free to keep an unloaded weapon nearby their person, load it, and use it for self-defense in circumstances that may occur in a public setting. Yolo County's policy does not substantially burden Plaintiffs' right to bear and keep arms. Therefore, rational basis review applies.

[6][7] A regulation is constitutional under rational basis review if it bears "a reasonable relationship to a legitimate government interest." *United States v. Whitlock,* 639 F.3d 935, 941 (9th Cir.2011) (citing *United States v. LeMay,* 260 F.3d 1018, 1031 (9th Cir.2001)). As Defendants contend, regulating concealed firearms is an essential part of Yolo County's efforts to maintain public safety and prevent both gun-related crime and, most importantly, the death of its citizens. Yolo County's policy is more than rationally related to these legitimate government goals, and Plaintiffs' Motion for Summary Judgment fails as to this portion of their argument.

**2. Defendants' "Good Cause" Discretion**

Plaintiffs also assert that the portions of Yolo County's concealed weapon license policy evaluating an applicant's good moral character and good cause for seeking a permit, gives the government "unbridled discretion" in violation of the Second Amendment. In applying traditional First Amendment analysis, Plaintiffs contend the statute is a prior restraint on the freedom to keep and bear arms. Defendants, in turn, believe any analogy of the Second Amendment to the First is improper because it "ignores the fundamental difference between regulation of speech and guns." (Def's. Mot. for Summ. J. 24, ECF No. 59.)

[8] In a facial challenge <sup>FN7</sup> to a statute outside of the First Amendment context, a plaintiff must demonstrate that "no set of circumstances exists under which" the statute would be valid, "i.e. that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). *See also Hotel & Motel Ass'n. of Oakland v. City of Oakland,* 344 F.3d 959, 971 (9th Cir.2003) ("To bring a successful facial challenge outside the context of the First Amendment, the challenger must establish that no set of circumstances exists under which the statute would be valid." (internal citations omitted)); *Nordyke,* 644 F.3d at 787 n. 11 ("A facial challenge" is "the most difficult challenge to mount successfully.").

**\*5** [9] Courts are instructed to first determine whether "the enactment reaches a substantial amount of constitutionally protected conduct" by examining "the ambiguous as well as the unambiguous scope of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 & n. 6, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Such an inquiry must be "examined in the light of the facts of the case at hand," which should ultimately demonstrate that the regulation is patently invalid because "no standard of conduct is specified at all." *Id.* at 495 n. 7, 102 S.Ct. 1186 (internal citations omitted).

[10] An exception to the rigidity of the facial challenge test exists for issues involving the First Amendment. A law involving First Amendment protections "may be overturned as impermissibly broad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange,* 552 U.S. at 449 n. 6, 128 S.Ct. 1184

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(internal citations omitted). Plaintiffs suggest the Court turn to case precedent established from examining the rights and regulations carved from the First Amendment as a framework for assessing those rights indicated under the Second Amendment. However, Plaintiffs do not address the exception in their papers, but cite cases entrenched in First Amendment constitutional analysis. The Court sees no reason to analogize rights under the Second Amendment to those under the First, as plenty of case authority exists to provide a clear framework of analysis to facial challenges, without poaching precedent from another Amendment's framework.

Therefore, this Court cannot invalidate the good cause and good moral character portions of Yolo County's policy as unconstitutional on their face. Plaintiffs cannot demonstrate that there are zero circumstances under which Sheriff Prieto could clearly issue a concealed weapon permit to someone who demonstrates plausible good cause under the terms of the policy, and is also of objective good moral character. Any inquiry into the facial constitutionality of Yolo County's policy is futile, for it is both "undesirable" and near impossible for the Court to "consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation." *Gonzales v. Carhart,* 550 U.S. 124, 168, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007) (internal citations omitted); *Nordyke,* 644 F.3d at 786–87. Facial challenges are also disfavored for many reasons, most notably because they "rest on speculation." *Wash. State Grange,* 552 U.S. at 450, 128 S.Ct. 1184.

[11] Moreover, Yolo County's policy does contain a standard of conduct; applicants are clearly instructed to be of good moral character (and submit application documents corroborating such character), and demonstrate good cause for requiring the license. The policy goes further by providing examples of the types of good cause that satisfy the terms of the policy. While Plaintiffs are entitled to dislike the qualifications and standards created by Sheriff Prieto and Yolo County's policy, they cannot demonstrate that the policy itself is void for facial vagueness. For each of the above reasons, Plaintiffs' Motion for Summary Judgment on the Second Amendment claim fails and Defendants' Motion for Summary Judgment is granted.

**B. Equal Protection**

*6 Plaintiffs insist that Yolo County's concealed weapon license policy is subjective because Sheriff Prieto has discretionary authority to determine what constitutes "good cause." Plaintiffs also believe the policy is arbitrary and violates Equal Protection because some individuals are granted the right to bear arms for self-defense, while others are not. Defendants maintain that Yolo County's interest in preventing crime and ensuring public safety merits the policy's language and renders it constitutional.

[12][13] The Equal Protection Clause of the Fourteenth Amendment requires that all "persons similarly situated" be treated the same under the law. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1187 (1995). Modern equal protection analysis is a two step process: the first step is identifying the classification of groups, namely that a law is "applied in a discriminatory manner or imposes different burdens on different classes of people." *Id.*

[14] The second step requires the court to "assess the legitimacy of a discriminatory statute under the appropriate level of scrutiny." *Sagana v. Tenorio,* 384 F.3d 731, 740 (9th Cir.2004). Where an ordinance does not "purposefully operate to the detriment of a suspect class, the only requirement of equal protection is that the ordinance be rationally related to a legitimate governmental interest." *Nordyke,* 644 F.3d at 794 (internal citations omitted).[FN8]

[15] Plaintiffs' equal protection claim fails for two reasons. First, the policy does not treat similarly situated individuals differently. All law-abiding citizens who apply for a permit are not the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

same because some can demonstrate they have good cause and are of good moral character, and some cannot. Second, Defendants' good cause and good character clauses in the policy are clearly rationally related to Yolo County's goals of reducing the incidence of unlawful public shootings, prevent police from safely responding to dangerous situations, generally preventing crime, and ensuring public safety.

## CONCLUSION

Compared to many of this country's constitutional protections, the scope of rights under the Second Amendment is ambiguous and no doubt subject to change and evolution over time. Nonetheless, even in light of *Heller* and *McDonald,* Yolo County's concealed license policy is constitutionally valid. Plaintiffs' Motion for Summary Judgment (ECF No. 54) is DENIED. Defendants' Cross Motion for Summary Judgment (ECF No. 58) is GRANTED. The Clerk of Court is accordingly directed to enter judgment in favor of Defendants Yolo County and Yolo County Sheriff Ed Prieto.

IT IS SO ORDERED.

> FN1. However, there are a number of exceptions carved out by the statute. For example, nothing prevents a person from carrying a weapon, concealed or otherwise, in their home, place of business or on other designated private property. Penal Code § 12026(a). There are also a number of designated uses for firearms outside the scope of Yolo County's policy and lawful under California law, such as the use of a firearm for hunting or for sport as part of a gun club. See Penal Code § 12027.

> FN2. The State of California and/or its legislature is not a party to the action. Plaintiffs appear to be challenging Defendants' exercise of state law at the local level. (*See e.g.* Sec. Am. Compl., ECF No. 48 (hereinafter, "SAC").) However, Yolo County's policy derives its authority from the legislature's framework, and there is substantial overlap between the policy and California law. In addition, Plaintiffs' Motion for Summary Judgment specifically challenges portions of California's Penal Code. (ECF No. 54–1 at 21.) Recognizing the close overlap, this Court interprets Plaintiffs' arguments as those ultimately against Defendants, and not the state legislature or, by extension, the California Penal Code.

> FN3. Unless otherwise noted, all further references to Rule or Rules are to the Federal Rules of Civil Procedure.

> FN4. Plaintiffs' implicit argument is that *Heller* stands for the general right to carry a concealed weapon for self-defense purposes in public. (*See* Hr'g Tr. 23:9–13 ("There is a right to keep and bear arms. Bear arms means to carry them in public.").) The Supreme Court does explain that the historical inference of the word "bear" should be interpreted to mean that there is a right to carry "upon the person or in the clothing or in a pocket" a "weapon for a particular purpose—confrontation." *Id.* at 584–85, 128 S.Ct. 2783. However, *Heller's* ultimate holding is not the Court's interpretation of the historical significance of the Second Amendment's language. To the contrary, the Court, both in *Heller,* and subsequently in *McDonald,* took painstaking effort to clearly enumerate that the scope of *Heller* extends only to the right to keep a firearm *in the home* for self-defense purposes. *See supra* (emphasis added). This Court does not infer that *Heller* grants any right that "extends beyond the home," as Plaintiffs contended during oral argument. (Hr'g Tr. 11:8–10.) Courts "often limit the scope of their holdings, as such limitations are integral" to understanding the holdings' reach. *Vongxay,* 594 F.3d at

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

1115.

FN5. In their Summary Judgment Motion, Plaintiffs interpret *Heller* to mean that rational basis review could not, under any circumstances, be used to evaluate the merits of a policy regulating portions of the Second Amendment. (ECF No. 54–1 at 26.) Indeed, the Ninth Circuit previously interpreted *Heller* the same way; namely that rational-basis scrutiny would not be appropriate to review Second Amendment restrictions. *See Vongxay,* 594 F.3d at 1118 n. 5. However, earlier this month, the Ninth Circuit read *Heller* as "insisting that a Second Amendment backed *only* by rational basis review would have 'no effect,'" and heightened scrutiny is only appropriate for claims that substantially burden the right to bear and keep arms. *Nordyke,* 644 F.3d at 790–91 (citing *Heller,* 554 U.S. at 627 n. 27, 128 S.Ct. 2783) (emphasis added).

FN6. Immediate is defined as "the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance." *Id.*

FN7. Plaintiffs characterized this portion of their argument as a "facial challenge" during oral argument, and the pleadings support such an interpretation. (*See* Hr'g Tr. 9:15–10:8) An as-applied constitutional challenge to Yolo County's policy was not asserted under the analogous First Amendment analysis.

FN8. Though the right to keep and bear arms for self-defense is a fundamental right, "that right is more appropriately analyzed under the Second Amendment." *Id.* (citing *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims." (internal citations omitted))).

E.D.Cal.,2011.
Richards v. County of Yolo
--- F.Supp.2d ----, 2011 WL 1885641 (E.D.Cal.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.