RICHARD L HOLCOMB (HI Bar No. 9177)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite 808
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@live.com

ALAN BECK (HI Bar No. 9145)
Attorney at Law
4780 Governor Drive
San Diego, California 92122
Telephone: (619) 971-0414
Email: ngord2000@yahoo.com

KEVIN O'GRADY (HI Bar No. 8817)
The Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, HI 96813
Telephone: (808) 521-3367
Facsimile: (808) 521-3369
Email: kevin@criminalandmilitarydefensehawaii.com

Attorneys for Plaintiff Christopher Baker

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER BAKER,<br><br>               Plaintiff,<br>    vs.<br><br>LOUIS KEALOHA, as an individual and in his official capacity as Honolulu Chief of Police;<br>STATE OF HAWAII;<br>CITY AND COUNTY OF HONOLULU;<br>HONOLULU POLICE DEPARTMENT;<br>NEIL ABERCROMBIE, in his official capacity as Hawaii Governor,<br><br>          Defendants.<br>_____ | CASE NO.CV11-00528<br><br>ACK-KSC<br><br><br><br>PLAINTIFF CHRISTOPHER BAKER'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

The Defendants request the denial of Plaintiff Christopher Baker's request for a Preliminary Injunction.  First, each Defendant appears to recognize that the core decision that this Court must first make is whether there is a right to keep and bear arms outside the home.  Clearly there is.  And, upon recognizing the existence of that fundamental right, the questions become:   1) how should this Court determine whether the various burdensome restrictions and prohibitions of Hawaii law violate that right?; 2) applying the appropriate level of scrutiny, do Hawai'i's restrictions and prohibitions violate that right?; and 3) should the preliminary injunction issue?  Each of these questions are answered below.

## A.  The right to keep and bear arms applies outside the home.

Preliminarily, Mr. Baker notes that the Defendants do not attempt to grapple with the fact that the bearing of pistols is not permitted in Hawaii even inside the home.[1]  See Haw. Rev. Stat. § 134-25 Heller and McDonald, infra., have already

---

[1] Defendants City and County of Honolulu and Kealoha only respond with the Declaration of Major Thomas Nitta of the Honolulu Police Department, who swears:

> Mr. Baker's interpretation of H.R.S. § 134-24 (prohibiting an individual from 'bearing' a firearm in his own home) is inconsistent with what I consider a plain reading of the statute and in all my years of experience I have never heard of HPD enforcing H.R.S. § 134-24 as to prohibit an individual from bearing a firearm in his own home.

The fact that an unconstitutional statute is not saved by the government's failure or declination to enforce the statute escapes Major Nitta.  Ezell v. City of Chicago,
*Footnote Continued

1

determined that such prohibitions are unconstitutional.  Thus, an injunction should issue to allow Mr. Baker to, at the very least, bear a pistol in his home.  See e.g. Defendants City and County of Honolulu and Chief Louis Kealoha's Response, at page 18 (discussing Ezell, *infra*.).

As to the remainder of the argument, the United States Supreme Court, in District of Columbia v. Heller, 554 U.S. 570 (2008), held that the Second Amendment right to keep and bear arms applied to individuals for the purpose of self defense.  Indeed, this holding specifically suggests that the right of self defense is not extinguished beyond the threshold of a law-abiding citizen's front door.  As stated by the Honorable Paul V. Niemeyer, of the Fourth Circuit Court of Appeals:

> The Court stated that its holding applies to the home, where the need 'for defense of self, family, and property *is most acute*,' suggesting that some form of the right applies where that need is not 'most acute.'   Further when the Court acknowledged that the Second

---

651 F.3d 684, 695-96 (2011) ("the very 'existence of the statute implies the threat to prosecute'").  And, clearly, there being no exception for bearing in the home, the plain language can have no other interpretation than that of supporting Mr. Baker's allegation.

Mr. Baker also observes that Major Nitta swears that Dog the Bounty Hunter "nor anyone in his entourage" is permitted to carry a firearm.   It is widely known that Mr. Chapman is a convicted felon.   See http://en.wikipedia.org/wiki/Duane_Chapman.  Indeed, Mr. Chapman (on national television) informs a number of his captured fugitives of as much.  Mr. Baker has expressly acknowledged (and indeed supports) the prohibition against felons bearing firearms.  Federal law currently prohibits it.  18 U.S.C. § 922.  In fact, federal law prohibits Mr. Chapman's "entourage" from carrying a firearm.  18 U.S.C. § 922(h).

>Amendment was not unlimited, it listed as examples of regulations that were presumptively lawful, those 'laws forbidding the carrying of firearms in sensitive places such as *schools and government buildings*.'  If the Second Amendment right were confined to self defense *in the home*, the Court would not have needed to express a reservation for 'sensitive places' outside of the home.

United States v. Masciandaro, 638 F.3d 458, 468 (4th Cir. 2011).

Not surprisingly, various United States District Courts are also finding that the right extends beyond the home.  Today, for example, the Honorable Thomas E. Johnston of the United States District Court for the Southern District of West Virginia, found:

>The fact that courts may be reluctant to recognize the protection of the Second Amendment outside the home says more about the courts than the Second Amendment.  Limiting this fundamental right to the home would be akin to limiting the protection of First Amendment freedom of speech to political speech or college campuses.

United States v. Richard Timothy Weaver, *et. al.*, No. 2:09-cr-00222, Memorandum Opinion and Order, pages 8-9 n. 7 (S.D. W. Va. March 7, 2012).[2]

And, on March 2, 2012, the Honorable Benson Everett Legg of the United States District Court for the District of Maryland held that:

>Maryland's requirement of a 'good and substantial reason' for issuance of a handgun permit is insufficiently tailored to the State's interest in public safety and crime prevention.  The law impermissibly infringes the right to keep and bear arms, guaranteed by the Second Amendment.

---

[2] Attached as **Exhibit One**.

Raymond Woolard, *et. al.* v. Terrence Sheridan, *et. al.*, Civil Case No. L-10-2068, Memorandum at 23 (D. Md. March 2, 2012).[3]  Judge Legg found that:

> In addition to self-defense, the right was also understood to allow for militia membership and hunting.  To secure these rights, the Second Amendment's protections must extend beyond the home:  neither hunting nor militia training is a household activity, and 'self defense has to take place wherever [a] person happens to be.'

*Id*. at 10 (citations omitted).

Thus, Defendants' reliance on Fourth Circuit and Maryland cases have backfired.  Further, Defendants reliance on Young v. Hawaii, 2009 wl 1955749 (D. Haw. 2009) (attached to Defendants' Response) is also completely misplaced as that case was decided before the United States Supreme Court held in McDonald, *supra*. that Second Amendment rights were incorporated to the states through the Fourteenth Amendment.

The only contrary authority that the Defendants cite is another District Court case styled Piszcatoski v. Filko, __ F.Supp.2d __, 2012 wl 104917 (D. N. J. Jan. 12, 2012) (attached to Response).  The judge in that case upheld a "good cause" prerequisite to the issuance of a permit.  However, that case should not be relied upon to uphold Section 134-9 of the Hawai'i Revised Statutes.  Specifically, in New Jersey, the applicant enjoys "several tiers of review" (by a judge) in addition to "full appellate review" for a denied application.  Here, as Mr. Baker has

---

[3] Attached as **Exhibit Two**.

repeatedly raised, there is no review whatsoever of Chief Kealoha's sole discretion. Kealoha has adopted no guidelines to determine whether an "exceptional case" exists and, it appears, found that Mr. Baker was qualified to carry a firearm.[4]

Additionally, Defendants rely on an intermediate-level Illinois criminal case, which declined to hold specifically that the right applied outside the home because (according to the Defendants' response) the United States Supreme Court has controlled the pace of defining this right; and a criminal District of Columbia case reviewing the issue under the plain error standard. People v. Dawson, 934 N.E.2d 598 (Ill. App. Ct. 2010); Sims v. United States, 963 A.2d 147 (D.C. 2008). Both of these jurisdictions have had their respective prohibitions struck in McDonald and Heller, *supra*.

Finally, Defendants rely on California litigation. Although Mr. Baker does not agree with the findings of Peruta v. San Diego County, 758 F.Supp. 2d 1106, 1113-14 (S.D. Cal. 2010), the Court made clear that California citizens *could* carry a firearm openly for self defense purposes; and, therefore, there was little need to permit the concealed carry of weapons. As discussed below, the litigants and this

---

[4] **Exhibit Three**, Response to Interrogatories, Question 4, answering that the standard of review (and presumably factors) used to determine whether an exceptional case exists are set forth in H.R.S. § 134-9; **Exhibit Four**, Response to Request for Production of Documents, Question 3, no written procedures exist; **Exhibit Five**, Background check of Christopher Baker showing all checks "Negative."

5

Court are, in the immediate future, unlikely to receive any meaningful guidance from the Ninth Circuit as <u>Peruta</u> and all related decisions have been stayed pending the anticipated opinion in <u>Nordyke v. King</u>, 664 F.3d 774 (2011) (ordering the case be reheard in *en banc* for the second time).   And, unlike <u>Peruta</u>, in Hawaii of course, there is no such permission to carry either openly or concealed.

Despite Defendants' averments to the contrary, the recognition that the right to keep and bear arms extends outside the home is nothing new.[5]   Moreover, the

---

[5] On his popular blog, "The Volokh Conspiracy," Professor Eugene Volokh cites the following cases as suggesting that the right extends beyond the home:

> For cases or attorney general opinions holding or suggesting that there is a right to carry openly, see *State v. Reid*, 1 Ala. 612, 619 (1840) (dictum), *reaffirmed, Hyde v. City of Birmingham*, 392 So. 2d 1226, 1228 (Ala. Crim. App. 1980); *Dano v. Collins*, 802 P.2d 1021 (Ariz. Ct. App. 1990), *review granted but later dismissed as improvidently granted*, 809 P.2d 960 (Ariz. 1991); *Nunn v. State*, 1 Ga. 243 (1846), *reaffirmed, Strickland v. State*, 72 S.E. 260, 264 (Ga. 1911); *In re Brickey*, 70 P. 609 (Idaho 1902); Holland v. Commonwealth, 294 S.W.2d 83, 85 (Ky. 1956) (dictum); *State v. Chaisson*, 457 So. 2d 1257 (La. Ct. App. 1984); *City of Las Vegas v. Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971); State v. Kerner, 107 S.E. 222 (N.C. 1921); *State v. Nieto*, 130 N.E. 663, 664 (Ohio 1920) (dictum), *reaffirmed, Klein v. Leis*, 795 N.E.2d 633, 638 (Ohio 2003); *Glasscock v. City of Chattanooga*, 11 S.W.2d 678 (Tenn. 1928); *State ex rel. City of Princeton v. Buckner*, 377 S.E.2d 139 (W. Va. 1988); La. Op. Att'y Gen. No. 80- 992 (1990); Wisconsin Department of Justice Advisory Memorandum (Apr. 20, 2009), http://www.doj.state.wi.us/news/files/FinalOpenCarryMemo.pdf.
>
> For cases holding the right extends even to carrying a concealed weapon, though perhaps regulated through a nondiscretionary

*Footnote Continued

licensing regime, see *Kellogg v. City of Gary*, 562 N.E.2d 685, 705 (Ind. 1990); *Schubert v. DeBard*, 398 N.E.2d 1339 (Ind. Ct. App. 1980); *Bliss v. Commonwealth*, 12 Ky. (2 Litt.) 90 (1822), *abrogated as to concealed carry but not as to open carry by* Ky. Const. of 1850, art. XIII, § 25; *State v. Rosenthal*, 55 A. 610, 610–11 (Vt. 1903); *State v. Vegas*, Case No. 07 CM 687 (Cir. Ct. Milwaukee County Sept. 24, 2007), available at http://www.law.ucla.edu/volokh/vegas.pdf (concluding that under State v. Hamdan, 665 N.W.2d 785 (Wis. 2003), the right to bear arms may include the right to concealed carry in some narrow circumstances, especially where the person is engaging in dangerous activity such as delivering pizzas in high-crime areas).

Oregon courts take the view that the right extends to carrying weapons openly, but allows restrictions on carrying loaded guns, so long as the law allows the carrying of both an unloaded gun and ammunition. *See State v. Delgado*, 692 P.2d 610, 614 (Or. 1984) (striking down total ban on carrying switchblade knives); *Barnett v. State*, 695 P.2d 991 (Or. Ct. App. 1985) (per curiam) (striking down a total ban on carrying blackjacks); *State v. Boyce*, 658 P.2d 577, 578–79 (Or. Ct. App. 1983) (upholding a requirement that handguns be carried unloaded). The Louisiana *Chaisson* decision struck down a very limited carrying ban — one that applied only while hunting frogs at night — but its reasoning suggested that there was a constitutional right to carry for self-defense (including self-defense against alligators). 457 So. 2d at 1259; *see also State v. Chandler*, 5 La. Ann. 489, 490 (1850) (taking this view with regard to the Second Amendment). *City of Lakewood v. Pillow*, 501 P.2d 744 (Colo. 1972), also struck down a carry ban because it was broad enough to ban gun stores, ban people "from transporting guns to and from such places of business," and ban people from "possess[ing] a firearm in a vehicle or in a place of business for the purpose of self-defense"; the court concluded that "[s]everal of these activities are constitutionally protected," which suggests that carrying in a car might have been protected. *Id.* This is consistent with the Colorado right to bear arms' express exclusion of "the practice of carrying concealed weapons," Colo. Const. art. II, § 13, which suggests that carrying weapons unconcealed would be presumptively protected.

*Footnote Continued

historical analysis that the Defendants wish this Court to undertake has already been undertaken by the United States Supreme Court in both <u>Heller</u>, *supra*. and <u>McDonald v. City of Chicago</u>, 130 S.Ct. 3020, __ U.S. __ (2010). And, as noted above, the United States Supreme Court specifically found that the protection extended to activities that cannot be constrained to the four walls of a residence.[6]

---

All these cases speak of carrying in most public places; they often leave room for restrictions on carrying in particular places, such as businesses that serve liquor, churches, or polling places.

http://volokh.com/2012/03/05/federal-district-court-recognizes-right-to-carry-gun-outside-the-home-holds-unconstitutional-marylands-restrictive-carry-licensing-scheme/.

[6] Notably, Defendants City and County of Honolulu and Kealoha devote much of their response to an analysis of English law. The significance of English history is incomprehensible as the Bill of Rights, which includes the Second Amendment, was inspired by and ratified in response to the tyranny of England's reign over the American colonies. If such reasoning were accepted, mandatory membership into the Church of England would abrogate the First Amendment, bills of attainder would override the Fourth Amendment, and so forth. Then (and only under such unimaginable circumstances) should the Second Amendment rights of all Americans be determined by the Statute of Northampton, 2 Edw. 3, c. 3 (1328). Indeed, it is such statutes that our forefathers felt had divested them of their God-given "rights inherited from our English ancestors" necessitation the American revolution and the guarantee of inalienable human rights enumerated in the Bill of Rights. Fortunately, for all Americans, monarchial statutory prohibitions do not determine the breadth of those rights.

Defendants argue that this Court should apply a "rational basis standard" rather than the more rigorous "intermediate scrutiny standard" that the Fourth and Seventh Circuits have required when construing regulations on Second Amendment Rights outside the home.

### B.  At the very least, intermediate scrutiny should apply.

As noted above, the issue of the various levels of scrutiny that should apply to Second Amendment rights have been litigated in the Ninth Circuit for almost ten years.  Most recently, the Ninth Circuit has ordered that the issue be considered *en banc*, Nordyke, *supra*., staying all related cases.  The Fourth Circuit has adopted strict scrutiny in regards to bearing a firearm in the home and declined to adopt any standard for the same activity outside the home.  Masciandaro, 638 F.3d at 467.  However, the District Courts in the Fourth Circuit are applying, at minimum, intermediate scrutiny in regards to bearing outside the home.  Weaver, *supra*.; Woollard, *supra*.  In United States v. Skoien, 614 F.3d 638 (7th Cir. 2010), the Seventh Circuit applied intermediate scrutiny when determining whether a Defendant was constitutionally entitled to engage in activity proscribed by 18 U.S.C. § 922.

Further, Mr. Baker also raises procedural Due Process violations.  Procedural Due Process as applied to firearms has already been reviewed by the Second Circuit in Kuck v. Danaher, 600 F. 3d 159 - 2010.  In Kuck, the plaintiff

claimed "a violation of procedural due process, based on the allegedly arbitrary denial of his firearm permit and excessive delay in obtaining an appeal hearing". Id.  Applying the Matthews standard, the Second Circuit found that the plaintiff had a liberty interest in obtaining a firearms permit.  *Id*.  Moreover, they stated governmental interests are not "a license for indefinitely denying permit applicants a post-deprivation opportunity to contest an adverse finding by DPS." *Id*. Furthermore, the Second Circuit found that a deprivation of an economic interest would heighten the level of procedural due process.  *Id*.; See Spinelli, 579 F.3d at 171 ("The Supreme Court has 'repeatedly recognized the severity of depriving someone of his or her livelihood.'") (quoting Mallen, 486 U.S. at 243); Goldberg v. Kelly, 397 U.S. 254, 264 (1970).  Here, Mr. Baker suffers from both a liberty interest and an economic interest.  He has both a claim as a citizen wishing to carry firearms and an economic interest in defending himself while working as a process server.  Here, the deprivation is even more severe because he has no opportunity for appeal. The plaintiff in Kuck was merely facing a long delay.

Having established that intermediate scrutiny, at minimum, should apply, Mr. Baker believes that strict scrutiny should be applied.  The Seventh Circuit, although declining to dub the review "strict scrutiny" has applied such heightened review where:

> the plaintiffs *are* the "law-abiding, responsible citizens" whose Second Amendment rights are entitled to full solicitude under *Heller,*

and their claim comes much closer to implicating the core of the Second Amendment right. The City's firing-range ban is not merely regulatory; it *prohibits* the "law-abiding, responsible citizens" of Chicago from engaging in target practice in the controlled environment of a firing range. This is a serious encroachment on the right to maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense.

Ezell, 651 F.3d at 708. Here, Mr. Baker is the law-abiding responsible citizen as shown by the HPD background check, disclosed in discovery, and attached as **Exhibit Five**. Because the prohibitions apply to the core of the Second Amendment, *i.e.*, self-defense, Mr. Baker submits that this Court should apply something more akin to strict scrutiny.

### C.  The State cannot even satisfy an intermediate level of scrutiny.

There can be no doubt that "public health and safety" are compelling State objectives.  The gist of the Defendants' argument is that its requirement that an "exceptional case" exist before a citizen may exercise his or her rights is that such prohibition "reduce[s] the risk that guns will fire to deadly effect, purposefully or accidently."  Response at page 14.  As for its contention that it is a legitimate state interest to prevent the *purposeful* firing of guns in public, law-abiding responsible citizens do not purposefully fire guns in public – unless they are exercising the right that the Second Amendment was specifically designed to promote, that of self defense.  The State may not prohibit such purposeful discharges.

Insofar as criminals may purposefully discharge a firearm in public, there are ample screening procedures and prohibitions disallowing those criminals to possess the firearms in the first place[7]. The Defendants' response to this fallacy inherent in its argument is simply that we are all criminals who have been fortunate enough to evade commission of a crime or, at least, conviction:

> However, any workable definition of that term includes all who have not yet been convicted of a crime. Every murderer, robber, and rapist fell within that definition at some point in their lives.

Response at page 22. Thus, the Defendants advocate a prior restraint, applicable to all citizens, of all rights that are lost upon conviction of crimes (which, frighteningly, includes the right to vote) because someday we all may be convicted of those crimes. Such an argument deserves no more of a response than to summarily observe that, fortunately, this is not the law of the United States of America.

Nevertheless, in order to survive even an intermediate scrutiny analysis, the State must demonstrate that the regulation is substantially tailored to the established goal of promoting public safety. And, in appropriate circumstances, Mr. Baker observes that the government's regulatory interest in community can

---

[7] See H.R.S. 134-7 prohibiting fugitives, felons, persons convicted of an undefined "crime of violence" or illegal sale of any drug, a person who is or has been under treatment or counseling for drug or alcohol abuse, persons with mental defect, disease or disorder, or having a significant mental disorder from owning a firearm or ammunition.

outweigh an individual's liberty interest.  <u>United States v. Salerno</u>, 481 U.S. 739, 748-50 (1987).  However, like that of Maryland, Hawaii's statute is overly broad and unduly restrictive in promoting any legitimate government interest:

> The Maryland statute's failure lies in the overly broad means by which it seeks to advance this undoubtedly legitimate end. The requirement that a permit applicant demonstrate —good and substantial reason to carry a handgun does not, for example, advance the interests of public safety by ensuring that guns are kept out of the hands of those adjudged most likely to misuse them, such as criminals or the mentally ill. It does not ban handguns from places where the possibility of mayhem is most acute, such as schools, churches, government buildings, protest gatherings, or establishments that serve alcohol. It does not attempt to reduce accidents, as would a requirement that all permit applicants complete a safety course. It does not even, as some other States' laws do, limit the carrying of handguns to persons deemed —suitable by denying a permit to anyone —whose conduct indicates that he or she is potentially a danger to the public if entrusted with a handgun. <u>See Kuck v. Danaher</u>, No. 3:07cv1390(VLB), 2011 WL 4537976 at *11 (D. Conn. Sept. 29, 2011).
>
> Rather, the regulation at issue is a rationing system. It aims, as Defendants concede, simply to reduce the total number of firearms carried outside of the home by limiting the privilege to those who can demonstrate —good reason beyond a general desire for self-defense. In support of this limitation, Defendants list numerous reasons why handguns pose a threat to public safety in general and why curbing their proliferation is desirable. For example, they argue that an assailant may wrest a handgun away from its owner, and cite evidence that this possibility imperils even trained police officers. See Defs.' Mot. Summ. J. 15, Docket No. 26. They note that when a police officer is engaged in a confrontation with a criminal, the presence of an armed civilian can divert the officer's attention. Id. at 16. In addition, Defendants urge that while most permit holders are law-abiding, there is no guarantee that they will remain so. They cite studies purporting to show that the majority of murderers have no previous felony conviction that would have prevented them from

obtaining a permit. Id. at 35. Thus, they argue, a permitting scheme that merely denies permits to convicted felons is inadequate.

These arguments prove too much. While each possibility presents an unquestionable threat to public safety, the challenged regulation does no more to combat them than would a law indiscriminately limiting the issuance of a permit to every tenth applicant. The solution, then, is not tailored to the problem it is intended to solve. Maryland's —good and substantial reason requirement will not prevent those who meet it from having their guns taken from them, or from accidentally shooting themselves or others, or from suddenly turning to a life of crime. Indeed, issuing permits specifically to those applicants who can demonstrate an increased likelihood that they may need a firearm would seem a strange way to allay Defendants' fear that —when handguns are in the possession of potential victims of crime, their decision to use them in a public setting may actually increase the risk of serious injury or death to themselves or others. Id. at 15. If anything, the Maryland regulation puts firearms in the hands of those most likely to use them in a violent situation by limiting the issuance of permits to —groups of individuals who are at greater risk than others of being the victims of crime.‖ Id. at 40.

A law that burdens the exercise of an enumerated constitutional right by simply making that right more difficult to exercise cannot be considered —reasonably adapted to a government interest, no matter how substantial that interest may be. Maryland's goal of —minimizing the proliferation of handguns among those who do not have a demonstrated need for them, id. at 40, is not a permissible method of preventing crime or ensuring public safety; it burdens the right too broadly. Those who drafted and ratified the Second Amendment surely knew that the right they were enshrining carried a risk of misuse, and states have considerable latitude to channel the exercise of the right in ways that will minimize that risk. States may not, however, seek to reduce the danger by means of widespread curtailment of the right itself. —[E]ven the most legitimate goal may not be advanced in a constitutionally impermissible manner. Carey v. Brown, 447 U.S. 455, 464–65 (1980).

At bottom, this case rests on a simple proposition: If the Government wishes to burden a right guaranteed by the Constitution, it may do so

14

provided that it can show a satisfactory justification and a sufficiently adapted method. The showing, however, is always the Government's to make. A citizen may not be required to offer a —good and substantial reason‖ why he should be permitted to exercise his rights. The right's existence is all the reason he needs.

Woolard, *supra*.   Judge Legg's wise insight applies as much to the instant arguments as it does to those of Maryland.  Indeed, the government arguments are the same.  Thus, Mr. Baker is likely (if not inevitably) to prevail in this suit.

## D.  Defendants ignore non-lethal weapons.

Mr. Baker deserves a preliminary injunction permitting his possession and use of non-lethal weapons.  The Second Amendment also protects those "weapons of offence… or anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." Heller, supra @ 2791; State v Griffin, 2011 WL 2083893, *7 n. 62, (Del Super Ct, May 16, 2011) (extends to knives); City of Akron v Rasdan, 663 NE2d 947 (Ohio 1995) (same); State v Delgado, 692 P2d 610 (Ore. 1984) (same); State v Blocker, 630 P2d 824 (Ore. 1981) (billy clubs); Barnett v State, 695 P2d 991 (Ore. App. 1985) (same as to blackjacks); People v. Yanna, Case No. 10-10536 (Circuit Court for Bay County, Michigan April 21, 2011) (stun guns).[8]  Clearly, states may not ban non-lethal weapons as Hawaii has done.  Therefore, based on the foregoing, Plaintiff requests the preliminary injunction issue.

---

[8] Attached as **Exhibit Six**.

DATED:  Honolulu, Hawaii, February 16, 2012

                                       *s/Richard L. Holcomb*
                                       Richard L. Holcomb (HI Bar No. 9177)

                                       *s/Kevin O'Grady*
                                       Kevin O'Grady (HI Bar No. 8817)

DATED:  San Diego, California, February 16, 2012

                                       *s/Alan Beck*
                                       Alan Beck (HI Bar No. 9145)