STATE OF MICHIGAN
IN THE 18TH CIRCUIT COURT FOR THE COUNTY OF BAY

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff,

v

DEAN SCOTT YANNA,

    Defendant.
_____/

Case No. 10-10536-FH
Hon. Joseph K. Sheeran

## OPINION AND ORDER

This matter comes before the Court following Defendant's Motion to Dismiss as an Unlawful Infringement on the Right to Bear Arms. Defendant Dean Scott Yanna was charged with felony possession of a stun gun as an habitual offender.[1] Defendant argues inter alia that the statute prohibiting possession of such devices is unconstitutional under the Second Amendment to the United States Constitution. For the reasons stated in the following Opinion, the Court finds that the statute violates Defendant's right to bear arms as guaranteed by the Second Amendment to the Constitution of the United States, and thus, Defendant's Motion to Dismiss is GRANTED.

### Factual and Procedural Background

For purposes of deciding the Motion before the Court, the People and Defendant agreed that on June 5, 2010, Defendant possessed a stun gun in an "open carry" position. Defendant carried the device in a holster attached to his hip while working behind the counter at a convenience store next to another employee who was in possession of a firearm, which

---

[1] See MCL 750.224a and MCL 769.11.

Page 1 of 9

STATE OF MICHIGAN
COUNTY OF BAY
ATTESTED
A TRUE COPY
CYNTHIA A. LUCZAK
CLERK OF CIRCUIT COURT
By_____ Deputy

incidentally was also openly carried in a holster. Defendant was charged under MCL 750.224a, which makes it a felony to "possess...a portable device or weapon from which an electrical current, impulse, wave, or beam may be directed, which current, impulse, wave, or beam is designed to incapacitate temporarily, injure, or kill". This offense is punishable by up to four years imprisonment and a $2,000.00 fine, and included mandatory forfeiture of the device. The Information filed by the People gave notice that Defendant is an habitual offender and is subject to twice the maximum sentence due to his alleged prior convictions for fleeing and eluding a police officer[2] and assault with a dangerous weapon.[3]

On November 1, 2010, Defendant filed a Motion to Dismiss the charge, alleging violations of his right to bear arms under the Second Amendment to the United States Constitution and the Constitution of the State of Michigan, Article 1, Section 6. The People filed a Response in Opposition to the Defendant's Motion. A hearing on the Motion was held on November 18, 2010. Following the hearing, the Court denied Defendant's Motion for failure to file a brief in support as required by MCR 2.119. However, the Court agreed to reconsider the Motion upon receipt of Defendant's Brief. Subsequently, Defendant filed a Brief in Support, to which the People responded with a second brief in opposition.

The parties submitted an Amended Stipulation Regarding Constitutional Issues on February 24, 2011, which provided as follows:

> IT IS HEREBY STIPULATED between the parties in this matter that for purposes of arguing and deciding the constitutional issues only raised by the Defendant that the stun gun fall within the definition of the MCL 750.224a in that it discharges an

---

[2]Contrary to MCL 257.602a(2).

[3]Contrary to MCL 750.82.

electrical current that could incapacitate temporarily or injure but is generally nonlethal.

At an additional hearing held on February 24, 2011, the Court took the matter under advisement, and issues its Opinion below.

### Arguments

In his original Motion, Defendant argued solely that his right to bear arms under both the United States and Michigan Constitutions were violated. In his Brief in Support, however, Defendant raised additional arguments. In addition to challenges to the constitutionality of the statute under the United States and Michigan Constitutions, Defendant argued that the statute violates equal protection and is void for vagueness.

I. United States Constitution

The Second Amendment to the United States Constitution provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

Settling a matter of long-standing public and legal debate, the United States Supreme Court decided in *District of Columbia v Heller* that the Second Amendment conferred an individual right to keep and bear arms, rather than a right conferred for the benefit of the states.[4] In *McDonald v City of Chicago, Illinois*, the U.S. Supreme Court held that the Second Amendment right to keep and bear arms is fully applicable to the states by virtue of the due process clause of the Fourteenth Amendment.[5]

---

[4] *District of Columbia v Heller*, 128 S Ct 2783; 171 LEd2d 637 (2008).

[5] *McDonald v City of Chicago, Illinois*, 130 S Ct 3020; 177 LEd2d 894 (2010).

The United States Supreme Court has found that self-defense is a basic right, and individual self-defense is "the central component" of the Second Amendment right to bear arms. The Court explained that "the need for defense for self, family, and property is most acute" in the home.[6] The Court found that the right applied to handguns because they are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family".[7]

In *Heller*, the United States Supreme Court ruled that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding".[8] Interpreting *United States v Miller*,[9] the Court in *Heller* "read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shot guns".[10] The *Heller* Court favorably quoted definitions of arms which included defining arms as "weapons of offence, or armour of defence", and as "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another".[11] The Court also favorably quoted *Miller*, finding that the sorts of weapons protected are those in common use at the time. The

---

[6] *Heller, supra* at 2817.

[7] *Id.* at 2818, quoting *Parker v District of Columbia*, 478 F3d 370, 400 (D.C. Cir. 2007).

[8] *Id.* at 2792.

[9] *United States v Miller*, 307 US 174; 59 S Ct 816; 83 L Ed 1206 (1939).

[10] *Heller, supra* at 2815-16.

[11] *Id.* at 2791.

*Heller* Court found "that limitation to be fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'".[12]

The Court in *Heller* found that, like most rights, the right secured by the Second Amendment is not unlimited.[13] The right is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.[14] The Court cited examples of lawful prohibitions on carrying concealed weapons, prohibitions of the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, and laws imposing conditions and qualifications on the commercial sale of arms.[15] Thus, the Court in *Heller* found that a total ban on handguns, including possession of a handgun in the home, was unconstitutional.

One of the questions for this Court to decide is whether stun guns are "arms" for constitutional purposes. According to a recent law review article cited by both parties,

> Stun guns and Tasers work by producing electrical pulses that make the target's muscles spasm, and thus quickly but temporarily disable him. And unlike, say a baton or a similar weapon, they generally stop the target with one blow, and can be used even by people who are weak or disabled.[16]

According to this article, stun guns are contact weapons where the user must touch the target with the stun gun. By contrast, a taser works by shooting two wires tipped with barbed darts

---

[12] *Heller, supra* at 2817.

[13] *Id.* at 2816.

[14] *Id.*

[15] *Id.* at 2816-17.

[16] Eugene Volokh, *Nonlethal Self-Defense, (Almost Entirely) Nonlethal Weapons, and the Rights to Keep and Bear Arms and Defend Life*, 62 Stan. L. Rev. 199, 204 (2009).

which can penetrate clothing and deliver the shock to the targeted person through the wires. Stun gun shocks are almost never fatal.[17] The parties stipulated for purposes of this Motion that the stun gun falls within the definition of the statute in that it discharges an electrical current that could incapacitate temporarily or injure, but is generally nonlethal.

Michigan is one of only seven states criminalizing possession of a stun gun and its statute operates to totally ban stun guns in Michigan.[18] This Court is presented with the question of the Constitutionality of this statute. To determine the issue, the Court must determine if a stun gun is an "arm". The Court in *Heller* provided guidelines for defining the term "arm". Considering those factors, this Court finds that a stun gun is an "arm" for purposes of the Second Amendment. Owning a stun gun is legal in 43 states, and nearly 198,000 civilians exercise the right to own a stun gun as a nonlethal weapon of self-defense.[19] Stun guns are not dangerous and unusual weapons. In fact, they are less dangerous than firearms. Stun guns are nonlethal instruments of defense and, as such, cannot be totally banned without violating the Second Amendment. Although a stun gun was a not a weapon originally contemplated at the time the Second Amendment was adopted, "[j]ust as the First Amendment protects modern forms of communication, and the Fourth Amendment applies to modern forms of search", so too does the Second Amendment apply to modern arms technology.[20]

---

[17] Volokh, *supra* at 199.

[18] MCL 750.224a.

[19] Volokh, *supra* at 200, 201.

[20] *Heller, supra* at 2791.

Because the Court finds that a stun gun is an arm under the Second Amendment, it likewise follows that states may regulate the ownership and possession in the same manner as any other arm. Thus, prohibitions on the possession of stun guns by felons and the mentally ill and in sensitive places such as schools and government buildings, as well as conditions and qualifications on the commercial sale of stun guns would be constitutional. However, this Court holds that a total ban of stun guns, such as that effectuated by the Michigan statute under which Defendant is charged, is unconstitutional. The *Heller* Court found that a total ban on handguns was unconstitutional; in this case, the Court is presented with a nonlethal stun gun that Defendant possessed for self-defense purposes.[21] Based on the holding in *Heller* and *McDonald*, this Court finds that the Michigan statute totally banning stun guns is unconstitutional and Defendant's charge should be dismissed.

## II. Michigan Constitution

Under the Michigan Constitution, "[e]very person has a right to keep and bear arms for the defense of himself and the state".[22] In *People v Smelter*,[23] the Michigan Court of Appeals considered whether the statute prohibiting the possession of stun guns impermissibly infringes on

---

[21] MCL 750.224a, the Michigan statute banning the possession of stun guns, in effect preempted any opportunity for law-abiding citizens to establish a pattern of ownership of a nonlethal weapon. While such a pattern has been established by citizens in other states, this situation may highlight an unintended consequence of the analysis used by the United States Supreme Court in determining whether an instrument is an "arm" because a law may ban nonlethal arms that are developed with new technology. The ban could be put in place before people have the opportunity to establish a pattern of using a less than lethal instrument developed with new technology.

[22] Const 1963, art 1, §6.

[23] *People v Smelter*, 175 Mich App 153; 437 NW2d 341 (1989).

the right to keep and bear arms under the Michigan Constitution. The Court held:

> The right to regulate weapons extends not only to the establishment of conditions under which weapons may be possessed, but allows the state to prohibit weapons whose customary employment by individuals is to violate the law.[24]

Out of deference to the precedent established in *Smelter* and because the issue before this Court is decided under the U.S. Constitution, this Court need not address the arguments presented by Defendant under the Michigan Constitution. However, the same logic used in deciding the United States constitutional issue would apply in analyzing the constitutionality of the statute under the Michigan Constitution.

### III. Equal Protection

Defendant argued that MCL 750.224a violates equal protection because it bans the general public from being afforded the same protection permitted by personnel serving in various forms of a law enforcement capacity. By doing so, Defendant argued that citizens are denied a fundamental right to bear arms under the Michigan and United States Constitutions. In response, the People cite the Michigan Court of Appeals, stating "not all classifications violate the Equal Protection Clause. Because the classification at issue is not based on a suspect class, such as race, national origin or ethnicity, or a quasi-suspect class, such as gender or illegitimacy, the appropriate level of review is the rational basis test".[25] The People argued that, because there is no fundamental right to possess a stun gun, neither strict scrutiny nor intermediate scrutiny is warranted. Thus, as correctly noted by Defendant, "[t]he Heller Court did acknowledge that a

---

[24] *Smelter, supra* at 153, quoting *People v Brown*, 253 Mich 537, 541; 235 NW 245 (1931).

[25] *Hatcher v State Farm Mutual Automobile Insurance Co*, 269 Mich App 596, 602-603; 712 NW2d 744 (2006).

total ban would pass a rational basis test".[26] This Court agrees and finds that there is no violation of equal protection in this case.

IV. Void for Vagueness

Defendant argued that the statute is also void for vagueness because it is not limited to stun guns, but "could also be applied to cattle prods, dog training collars, or mosquito or insect zappers". "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement".[27] The People argue that Defendant's actions in this case, i.e. openly carrying a stun gun on his person and holstered to his belt at his place of employment, falls within the conduct prohibited by the statute at issue. Specifically, MCL 750.224a prohibits possession of a portable device or weapon from which an electrical current may be directed, which current is designed to incapacitate temporarily, injure, or kill. The Court finds that this statute puts ordinary people on fair notice of the prohibited conduct. The statute is not void for vagueness.

### Order

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is GRANTED and the charge is dismissed. This resolves the last pending claim and closes the case.

Date: April 21, 2011

HON. JOSEPH K. SHEERAN (P28575)
Circuit Court Judge

---

[26]*Defendant's Brief*, p. 3, citing *Heller, supra* at 2817, n. 27.

[27]*People v White*, 212 Mich App 298, 312; 536 NW2d 876 (1995), quoting *Kolender v Lawson*, 461 US 352, 357; 75 LEd2d 903 (1983).