IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

_____
                                )
CHRISTOPHER BAKER,              )
                                )
                Plaintiff,      )
                                )
        vs.                     )   Civ. No. 11-00528 ACK-KSC
                                )
LOUIS KEALOHA, as an individual )
and in his official capacity as )
Honolulu Chief of Police; STATE )
OF HAWAII; CITY AND COUNTY OF   )
HONOLULU; HONOLULU POLICE       )
DEPARTMENT; NEIL ABERCROMBIE,   )
in his official capacity as     )
Hawaii Governor,                )
                                )
                Defendants.     )
_____ )


**ORDER GRANTING DEFENDANTS STATE OF HAWAII AND GOVERNOR ABERCROMBIE'S MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY AND COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT AND LOUIS KEALOHA'S MOTION TO DISMISS, AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**


For the following reasons, the Court: (1) GRANTS

Defendants State of Hawaii and Governor Abercrombie's Motion for

Judgment on the Pleadings; (2) GRANTS IN PART and DENIES IN PART

Defendants City and County of Honolulu, Honolulu Police

Department, and Louis Kealoha's Motion to Dismiss; and (3) DENIES

-1-

Plaintiff's Motion for a Preliminary Injunction.

## I.  PROCEDURAL BACKGROUND

This case concerns Hawaii's ban on transporting and bearing firearms.  The crux of this case is Plaintiff's contention that the State of Hawaii unlawfully prohibits and unduly restricts Plaintiff's Second Amendment right to bear arms. In his Complaint, Plaintiff Christopher Baker alleges that he applied for a license to carry a firearm and was denied by Chief of Police Louis Kealoha without being provided a meaningful opportunity to be heard, a reason or explanation for the denial, or any opportunity for further review.  See Compl. at ¶ 2. Plaintiff names as Defendants the State of Hawaii and Hawaii Governor Neil Abercrombie (together, hereinafter the "State Defendants"), as well as the City and County of Honolulu, the Honolulu Police Department, and Chief of Police Louis Kealoha (together, hereinafter the "City Defendants").

There are three separate motions pending:  (1) Defendants State of Hawaii and Governor Abercrombie's Motion for Judgment on the Pleadings;(2) the City and County of Honolulu, Honolulu Police Department, and Louis Kealoha's Motion to Dismiss the Complaint; and (3)Plaintiff's Motion for a Preliminary Injunction.

Plaintiff filed a complaint on August 30, 2011, alleging deprivation of civil rights and seeking declaratory and

injunctive relief, damages, attorney's fees, all applicable statutory damages, fees or awards to which he may be entitled, costs, and also a preliminary injunction (hereinafter, the "Complaint"). (Doc. No. 1.)  On the same day, Plaintiff filed a Motion for a Preliminary Injunction against Defendants (Doc. No. 5, hereinafter "Mot. for P.I"), as well as a memorandum in support of the motion (Doc. No. 5-1, hereinafter Mem. in Supp. of Mot. for P.I."). Defendant Abercrombie is the Governor of the State of Hawaii, and was sued solely in his official capacity. (Compl. ¶ 13.)  Defendant Kealoha is Honolulu's Chief of Police, and was sued in both his individual and official capacities. (Compl. ¶ 14.)

The State Defendants filed an answer to the Complaint on September 21, 2011. (Doc. No. 14, the "Answer.")  On the same day, the City Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 15, hereinafter the "Mot. to Dismiss.")  On September 28, 2011, the State Defendants filed a Motion for Judgment on the Pleadings. (Doc. No. 18, hereinafter the "Mot. for Judg. on Pleadings.") The State Defendants also filed a memorandum in support of this motion. (Doc. No. 18-1, hereinafter "State Mem. in Supp. of Judg. on Pleadings.")

Subsequently, on February 16, 2012, Plaintiff submitted a Memorandum in Response to the City Defendants' Motion to Dismiss (Doc. No. 38, hereinafter "P's Resp. to MTD"), as well as

-3-

a Response to the State Defendants' Motion for Judgment on the Pleadings(Doc. No. 39, hereinafter "P's Resp. to Judg. on Pleadings.")

The State Defendants filed a Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction on February 27, 2012.  (Doc. No. 42, hereinafter "State Opp. to P.I.")  The City Defendants filed a separate Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction on February 29, 2012.  (Doc. No. 44, hereinafter "City Opp. to P.I.")[1]

On March 7, 2012, the State Defendants submitted a Reply Memorandum In Support Of Motion For Judgment On The Pleadings.  (Doc. No. 46, hereinafter "State Reply to Mot. for Judg. on Pleadings.")  On the same day, City Defendants submitted a Reply to Plaintiff's Opposing Memorandum And In Support Of Their Motion To Dismiss Plaintiff's Complaint.  (Doc. No. 47, hereinafter "City Reply for MTD.")  Also on March 7, 2012, Plaintiff filed a Reply to Defendants' Response To Plaintiff's Motion For Preliminary Injunction.  (Doc. No. 48, hereinafter "P's Reply for P.I.")

The Court granted The Brady Center To Prevent Gun Violence's (the "Brady Center") Motion for Leave to File an Amicus Curiae Brief.  (See Doc. Nos. 37, 40.)  On February 24,

---

[1] The City Defendants subsequently submitted an Errata to the Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction.  (Doc. No. 45.)

2012, the Brady Center submitted an amicus curiae brief (the "Amicus Brief") in support of Defendants.  (Doc. No. 41.)

This Court heard oral argument on these motions on Wednesday, March 21, 2012, and addresses the motions together herein.

## II.  FACTUAL BACKGROUND[2/]

Plaintiff Christopher Baker is a 27-year-old military service member with no criminal convictions or arrests, no outstanding judgments, and two service awards for honorable conduct.  (Compl. ¶ 49.)  He is also a licensed process server. Id. at ¶ 42.  In the course of doing business, Plaintiff alleges, he was at risk of attack "on a daily basis" by "irate and hostile persons" while he lawfully conducted this business.  Id. at ¶ 43. Further, Plaintiff alleges, on several occasions, he was "placed in imminent danger of suffering harm to himself or his property," and "had no means to defend himself in those situations."  Id. at ¶ 44.  On several occasions, officers from the Honolulu Police Department (hereinafter, "HPD") took "up to ten minutes or more" to respond to the scene, during which time Plaintiff was "terrorized and faced immediate threats of death and/or serious injury to himself, his family and his property."  Id. at ¶ 45.

---

[2/] The facts as recited in this order are for the purpose of disposing of these motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Plaintiff wrote the HPD requesting a license to carry a firearm in public pursuant to Hawaii Revised Statute Section 134-9 (hereinafter, "Section 134-9"), and was subsequently contacted by an HPD representative who instructed Plaintiff to complete an application form in person.  Id. at ¶¶ 58-59.  Plaintiff complied with this request on August 31, 2010, and received a letter denying his application on September 18, 2010.  Id. at ¶¶ 60-61. Plaintiff alleges that the letter expressed no concern over Plaintiff's fitness or ability to safely bear firearms and ammunition, but rather "merely" stated: "[w]e do not believe that the reasons you have provided constitute sufficient justification to issue you a permit.  Therefore your application has been denied."  Id. at ¶ 62.  Plaintiff alleges that his sole opportunity to participate in the decision-making process occurred when he completed an in-person application.  Id. at ¶ 60.[3/]

Plaintiff contends that he is unable to effectively defend himself because he cannot exercise his constitutional right to bear arms in the State of Hawaii; accordingly, Plaintiff alleges, he is unable to continue performing his job as a process server due to the danger associated with his lawful duties.  Id.

---

[3/] At the March 21, 2012 hearing, counsel for Plaintiff stated that Plaintiff did not re-apply for a license or communicate further with the Defendants to request the reasons for the initial denial.

-6-

at ¶¶ 46-47.  As a result, Plaintiff asserts, Defendants have

wrongfully denied Plaintiff of a property interest.  Id. at ¶ 47.

Specifically, Defendants' alleged violations of Plaintiff's civil

rights have precluded Plaintiff from earning income to support

his family; were he afforded a viable means of self-defense,

Plaintiff would resume his duties as a process server.  Id.

Further, even if Plaintiff were not engaged as a process server

or another dangerous profession, he "would still wish to exercise

his fundamental constitutional rights guaranteed by the Second

Amendment."  Id. at ¶ 48.

Plaintiff alleges that he is fit to exercise his Second

Amendment rights.  He has no criminal convictions or arrests, no

outstanding judgments against him, and has never had a

restraining order issued against him.  Id. at ¶ 49-50.  Further,

Plaintiff has never been adjudged insane, is not mentally

deranged, and has not suffered from any psychological,

psychiatric, behavioral, emotional or mental disorder or

condition that would preclude him from exercising his right to

keep and bear arms and ammunition.  Id. at ¶ 51.[4]

---

[4] Plaintiff additionally asserts that he is otherwise fit
to exercise his Second Amendment rights, stating that he does not
abuse or have an addiction to alcohol or drugs, has been trained
in the safe and proper use of extendable batons, is qualified to
operate and maintain firearms based upon his training by the
United States Department of Defense, is a certified pistol
instructor for the National Rifle Association of America, holds a
service medal for Expert Pistol Marksmanship, and is licensed to
(continued...)

### III.   STANDARD OF REVIEW

**A.  Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") states, "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion.  See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003). As a result, a motion for judgment on the pleadings for failure to state a claim may be granted " 'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'"  McGlinchy, 845 F.2d at 810 ( quoting Hishon v. King & Spalding, 467 U.S. 69,(1984)).

Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir. 1997) ( citing McGann v. Ernst & Young, 102 F.3d 390,

---

[4]/ (...continued)
carry a concealed firearm in the State of Georgia, among other things.  See Compl. ¶¶ 52-57.

392 (9th Cir.1996)). "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." McGlinchy, 845 F.2d at 810. "Nonetheless, conclusory allegations without more are insufficient to defeat a [Rule 12(c)] motion to dismiss for failure to state a claim." Id.

**B. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal of a complaint that fails "to state a claim upon which relief can be granted." Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). Courts may also "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d

-9-

1119 (9th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  See Sprewell, 266 F.3d at 988; Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do." Id. (internal
citations and quotations omitted).  Dismissal is appropriate
under Rule 12(b)(6) if the facts alleged do not state a claim
that is "plausible on its face." Id. at 570.  "Determining
whether a complaint states a plausible claim for relief
will . . . be a context-specific task that requires the reviewing
court to draw on its judicial experience and common sense."
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citation
omitted).  "[W]here the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the
complaint has alleged—but it has not 'show[n]'—'that the pleader
is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

        "Dismissal without leave to amend is improper unless it
is clear that the complaint could not be saved by any amendment."
Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009)
(internal quotation marks omitted).  "But courts have discretion
to deny leave to amend a complaint for futility, and futility
includes the inevitability of a claim's defeat on summary
judgment." Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th
Cir.1987) (citations and internal quotation marks omitted).

## C.  Motion For A Preliminary Injunction

        A plaintiff seeking a preliminary injunction must
establish that he is likely to succeed on the merits, that he is

likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008) (explaining that, "[t]o the extent that [the Ninth Circuit's cases have suggested a lesser standard, they are no longer controlling, or even viable" (footnote omitted)); see also Stormans, Inc. v. Selecky, 571 F.3d 960, 978 (9th Cir. 2009) (concluding that this is the "proper legal standard for preliminary injunctive relief").  Pursuant to the standard set forth in Winter, even where a likelihood of success on the merits is established, a mere possibility of irreparable injury is insufficient to warrant preliminary injunctive relief, because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").  555 U.S. at 22.

The Ninth Circuit also articulated an alternate formulation of the Winter test, pursuant to which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that

there is a likelihood of irreparable injury and that the injunction is in the public interest." <u>Farris v. Seabrook</u>, 667 F.3d 1051, 1057 (9th Cir. 2012)(applying the <u>Cottrell</u> factors as espoused in <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011), to hold that the district court erred - although error was harmless - when it applied the first <u>Cottrell</u> factor and last three <u>Winter</u> factors, but failed to find that the balance of the hardships tipped sharply in the plaintiffs' favor, as <u>Cotrell</u> requires, or a likelihood of success on the merits, as <u>Winter</u> requires); <u>see also</u> <u>M.R. v. Dreyfus</u>, 663 F.3d 1100, 1108 (9th Cir. 2011) (recognizing <u>Winter</u> test as well as alternate <u>Cottrell</u> test for the grant of a preliminary injunction).

A district court has "great discretion" in determining whether to grant or to deny a preliminary injunction.  <u>See, e.g.</u>, <u>Siales v. Hawaii State Judiciary, Dep't of Human Res.</u>, Civ. No. 11-00299 DAE-RLP, 2012 WL 220327, at *2 (D. Haw. Jan. 24, 2012) (quoting <u>Wildwest Inst. v. Bull</u>, 472 F.3d 587, 589-90 (9th Cir. 2006)).

## IV.  DISCUSSION

### A.  The Motion for Judgment on the Pleadings

The State Defendants made a Motion for Judgment on the Pleadings pursuant to Rules 7 and 12(c) of the Federal Rules of Civil Procedure.  (Doc. No. 18.)  In their motion, the State

Defendants assert two central arguments:  (1) Plaintiff's federal constitutional claims against the State Defendants are barred by Eleventh Amendment immunity; and (2) Plaintiff's claims against Defendant Abercrombie for injunctive relief are also barred.  In considering this motion, the Court takes all allegations in the pleadings as true, and construes the Complaint – and resolves all doubts – in the light most favorable to Plaintiff, as the non-moving party.  <u>McGlinchy</u>, 845 F.2d at 810.

**1.      Plaintiff's § 1983 Claims Against The State of Hawaii Are Barred By Sovereign Immunity**

The State Defendants contend that Plaintiff's federal constitutional claims against the State Defendants are barred because the State of Hawaii has not waived its sovereign immunity in federal court for civil rights actions.  (State Mem. in Supp. of Judg. on Pleadings, at 3.)  The State Defendants invoked the doctrine of sovereign immunity in their Answer to the Complaint. (Answer at 14.)

The State Defendants are correct.  The doctrine of sovereign immunity applies when civil rights claims are brought against the State of Hawaii.  The doctrine of sovereign immunity is set out in the Eleventh Amendment of the United States Constitution:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or

-14-

Subjects of any Foreign State.

U.S. Const. amend. XI.  The United States Supreme Court has held that Eleventh Amendment immunity extends to lawsuits against a State or its agencies by citizens of that same State.  Hans v. Louisiana, 134 U.S. 1 (1890).  Generally, the doctrine of sovereign immunity bars the federal courts from entertaining suits brought against a state or its agencies absent a State's consent or Congressional abrogation.  Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992); Wilbur v. Locke, 423 F.3d 1101, 1111 (9th Cir. 2005), cert. denied, 546 U.S. 1173 (2006).

Absent a waiver or abrogation of immunity, federal statutory and constitutional claims for money damages are barred against state officials sued in their official capacities.  See Dittman v. State of California, 191 F.3d 1020, 1025-26 (9th Cir. 1999).  Further, in order to waive sovereign immunity, a State must unequivocally express its consent to such waiver.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  The State of Hawaii has not waived its sovereign immunity from suit in federal court for civil rights actions.  In the instant case, the State Defendants explicitly invoked the doctrine of sovereign immunity (See Answer at 4.)

Congress possesses the power to abrogate the sovereign immunity of the States pursuant to Section 5 of the Fourteenth

Amendment of the United States Constitution:  "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."  U.S. Const. amend. XIV.  In order to do so, Congress must enact a statute which "explicitly and by clear language indicate[s] on its face an intent to sweep away the immunity of the States."  <u>Quern v. Jordan</u>, 440 U.S. 332, 332 (1979); <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 73 (2000).  However, Congress did not abrogate the States' Eleventh Amendment immunity when it enacted 42 U.S. 1983.  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 65-66 (1989).  Consequently, the State of Hawaii is not a "person" for purposes of liability under Section 1983.  Accordingly, Plaintiff may not sue the State of Hawaii for monetary damages under Section 1983.

A state official acting in his official capacity, except where sued for prospective injunctive relief, is also not a "person" for purposes of liability under Section 1983.  <u>See</u> <u>Sherez v. State of Hawaii Dep't of Educ.</u>, 396 F. Supp. 2d 1138, 1142-43 (D. Haw. 2005)(dismissing claims against the Department of Education and against state official in official capacity on Eleventh Amendment immunity grounds).

The Court notes that Plaintiff conceded – both in his Opposition to the Motion for Judgment on the Pleadings, and at the March 21, 2012 hearing – that he is not entitled to damages against the State Defendants.  (<u>See</u> P's Resp. to Judg. on

Pleadings at 2.)

Nevertheless, in his opposition, Plaintiff purports to rely upon <u>Young v. Hawaii</u>, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008),[5/] for the proposition that the State and State Governor are contemplated in this Court's definition of "persons" under 42 U.S.C. 1983.  The provision upon which Plaintiff relies, however, refers to <u>local government units</u>, not the State of Hawaii or State Governor.[6/]  Further, Plaintiff apparently attempts to cast doubt upon the effect of ratification of the Fourteenth Amendment on the Eleventh Amendment's grant of sovereign immunity.[7/]

---

[5/] This Court notes that the opinion in <u>Young v. State of Hawaii</u> was issued prior to <u>McDonald</u>, wherein the Supreme Court explicitly extended the right to bear arms to the States.  The court's discussion is nevertheless helpful in providing an interpretation of the scope of the right to carry a firearm, assuming (although it was not the case at the time) that this right were to apply to the States as it now does.

[6/] Plaintiff asserts that "this Court has consistently recognized that the United States Supreme Court has extended the definition of 'persons' to include governmental entities"; however Plaintiff relies upon language stating that "local government units can be sued directly for damages and injunctive or declaratory relief."  548 F. Supp. 2d 1151, 1164 (D. Haw. 2008) (quoting <u>Wong v. City & County of Honolulu</u>, 333 F. Supp. 2d 942, 947 (D. Haw. 2004) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 166-67 n. 14 (1985)).  The cases cited by Plaintiff refer to local government units, which are not party to the Motion for Judgment on the Pleadings.

[7/] Plaintiff also cites <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445 (1976) in support of his argument that the enforcement provision of the Fourteenth Amendment limits state immunity.  This case is inapposite; <u>Fitzpatrick</u> considered the issue of whether Congress abrogated sovereign immunity as to <u>Title VII</u> claims, not Section 1983 claims.  The U.S. District Court for the District of Hawaii
(continued...)

-17-

Contrary to Plaintiff's argument, the answer is clear:  Congress did not expressly waive sovereign immunity of the States in enacting 42 U.S.C. §1983, and the State Defendants clearly invoked such immunity in this suit.[8/]

Accordingly, this Court lacks jurisdiction over all of Plaintiff's federal constitutional claims against the State of Hawaii, and against Defendant Abercrombie in his official capacity, to the extent that they present claims for money damages.  See Young, 548 F. Supp. 2d at 1163-64.  For these reasons, the Court GRANTS the State Defendants' Motion for

_____

[7/] (...continued) explicitly concluded in Young v. Hawaii – the very case upon which Plaintiff relies – that "Congress, in passing 42 U.S.C. 1983 . . . did not abrogate Eleventh Amendment immunity of state governments.  The Court lacks jurisdiction over all of Plaintiff's federal constitutional claims against the State of Hawaii . . . ."  548 F. Supp. 2d at 1163.

[8/] Plaintiff cites selectively to case law that is not on point or controlling, such as an excerpt from Justice Hugo Black's dissent in a case from 1947 advocating for full incorporation of the Bill of Rights to the states.  Pl's Response to Mot. for Judg. on Pleadings, at 8 (citing Adamson v. California, 332 U.S. 46, 331-32 (1947) (Black, J., dissenting)).  Plaintiff also purports to distinguish the instant case from Young, a Second Amendment case involving Haw. Rev. Stat. 134-9 wherein the United States District Court for the District of Hawaii found in favor of the State, citing sovereign immunity.  548 F. Supp. 2d at 1158.  Plaintiff asserts that Young is distinguishable because whereas the question in that case was "whether Congress abrogated the sovereign immunity of the states through passing 42 U.S.C. 1983 . . . . [h]ere, however, Mr. Baker argues that the ratification of the Fourteenth amendment [sic] abrogated the sovereign immunity of the States as to Second Amendment claims."   Pl's Response to Mot. for Judg. on Pleadings, at 8.  Plaintiff cites no case law, and this Court is aware of none, that supports this contention.

Judgment on the Pleadings on all claims against the State of Hawaii, and against Defendant Abercrombie to the extent the claims seek money damages against him in his official capacity.

**2.   Non-Monetary Claims Against Governor Abercrombie**

The doctrine of sovereign immunity does not bar Plaintiff from bringing claims under Section 1983 for prospective injunctive relief against the Governor of Hawaii in his official capacity.  Under the doctrine established in Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a suit "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law."  Wilbur v. Locke, 423 F. 3d 1101, 1107 (9th Cir. 2005), abrogated on other grounds by Levin v. Commerce Energy, Inc., __ U.S. __, 130 S.Ct. 2323 (2010). This is because "official capacity actions for prospective relief are not treated as actions against the State."  Will, 491 U.S. at 71 n. 10.  The parties agree on this point.  (See Mot. for Judg. on Pleadings, at 5; Pl's Resp. to Mot. for Judg. on Pleadings, at 10.)

To determine whether the doctrine memorialized in Ex Parte Young avoids an Eleventh Amendment bar to suit, the court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Verizon Md., Inc.

-19-

v. Public Serv. Comm'n of Md., et al., 535 U.S. 635, 645 (2002);

ACS of Fairbanks, Inc. v. GCI Comm'n Corp., 321 F.3d 1215, 1216-

17 (9th Cir. 2003).  A plaintiff may not seek a "retroactive

award which requires the payment of funds from the state

treasury."  Foulks v. Ohio Dep't of Rehabilitation and

Correction, 713 F.2d 1229, 1323 (6th Cir. 1983) (citing Edelman

v. Jordan, 415 U.S. 651 (1974)).

　　　　The Court reviews Plaintiff's Complaint to determine

the type of relief sought, and in doing so construes the

Complaint – and resolves all doubts – in the light most favorable

to Plaintiff.  Here, Plaintiff's prayer for injunctive relief (to

the extent that it is lodged against Defendant Abercrombie in his

official capacity) seeks that the Defendants be permanently

enjoined from enforcing and maintaining allegedly

unconstitutional sections of the Hawaii Revised Statutes.  This

prayer for relief satisfies our "straightforward inquiry."

Verizon Maryland, 535 U.S. at 636.  As for Plaintiff's prayer for

declaratory relief – namely, declaring certain provisions of

Chapter 134 unconstitutional – even though arguably Plaintiff

seeks a declaration of past, as well as future, violations

(although not entirely clear from Plaintiff's Complaint),

construing the Complaint in favor of the Plaintiff this Court

concludes that this prayer for relief may proceed under Ex Parte

Young.  Verizon Maryland, 535 U.S. at 636  (citing Edelman v.

Jordan, 415 U.S. 651, 668 (1974)).

However, the Court's inquiry does not end there.  In order to sustain a claim against Governor Abercrombie, the Complaint must adequately allege a "nexus between the violation of federal law and the individual accused of violating that law." Id. (quoting Pennington Seed, Inc. v. Produce Exchange No. 299, 457 F.3d 1334, 1342 (Fed. Cir. 2006)).  Without this limitation, "the suit [would] merely make [the defendant] a representative of the state and therefore improperly make the state a party to the suit."  Pennington Seed, 457 F.3d at 1342 (quoting Ex Parte Young, 209 U.S. at 157).  In order to establish this nexus between the violation of federal law and the individual accused of violating that law, the Plaintiff must demonstrate "more than simply a broad general obligation to prevent a violation."  Id. (citing Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979) (governor or attorney general of a state are not proper defendants in every action attacking the constitutionality of a state statute merely because they have a general obligation to enforce state laws)).

In his Complaint, Plaintiff asserts that Governor Abercrombie "is responsible for the execution and enforcement of the Hawaii Revised Statutes complained of in this action." Compl. ¶ 13.  However, Plaintiff alleges in the next paragraph that Defendant Honolulu Police Chief Louis Kealoha "has sole

-21-

discretion in approving or denying the permits which are brought into question within this action." Id. ¶ 14.  Throughout the Complaint, Plaintiff repeatedly fails to draw any distinction among the Defendants with respect to his allegations, and does not articulate any facts directly connecting Governor Abercrombie to the alleged constitutional violations.[9/]

Plaintiff urges that this Court "should not be seduced into disregarding the obvious role of the Governor in this action or any similar future actions." (Mot. for Judg. on Pleadings at 3.)  He adds that, "Defendant Abercrombie, as Governor, is a state officer who is in direct control of the armed forces of the State . . . . as head of the Executive Branch, [he] is the state official ultimately responsible for enforcing the laws – even the unconstitutional laws at issue in this suit." (Pl's Resp. to Mot. for Judg. on Pleadings at 13.)  Plaintiff further argues that Governor Abercrombie's role is akin to that of the California Governor in Los Angeles County Bar Ass'n v. Eu,

---

[9/] Plaintiff refers to Defendants collectively in vague and repeated allegations that they "are propagating customs, policies, and practices that violate Mr. Baker's rights" under the United States Constitution.  See, e.g., Compl. ¶¶ 83, 89, 97, 103,111, 117, 127, 133, 142, 148, 155, 161.  In order for Plaintiff to proceed with this claim, Governor Abercrombie's connection to the enforcement of the statutes at issue "must be fairly direct[;] a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the statutory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." Young, 548 F. Supp. 2d at 1164 (quoting Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992)).

wherein the Ninth Circuit Court of Appeals found a sufficient nexus to sustain an action against the governor.  979 F.2d at 704.  A close reading of that case, however, reveals that the defendant governor in fact had a "specific connection to the challenged statute."  The governor in Eu "ha[d] a duty to appoint judges to any newly-created judicial positions," a role that was directly connected to the state statute at issue involving the number of judges for the superior court in Los Angeles County and related litigation delays.  Id.

Plaintiff asserts that Governor Abercrombie's role is analogous to that of the California governor in Eu because Governor Abercrombie is responsible for appointing a new Deputy Director of Law Enforcement for the Department of Public Safety at the beginning of every term, and this Deputy Director has authority over two law enforcement departments and routinely enforced the challenged statutes in conjunction with county police.  (P.'s Resp. to Mot. for Judg. on Pleadings at 14.)  This causal chain is attenuated,  and Plaintiff fails to establish any action on the part of Governor Abercrombie that actually links him to enforcement of the statutes at issue.

Plaintiff's allegations are insufficient to establish a nexus between the alleged violation of federal law and the individual accused of violating that law.  See, e.g., Pennington, 457 F.3d at 1342-43 ("A nexus between the violation of federal

law and the individual accused of violating the law requires more
than simply a broad general obligation to prevent a violation; it
requires an actual violation of federal law by that individual.")
The United States District Court for the District of Hawaii has
held that an allegation that the Governor of Hawaii is
responsible for the oversight of laws enacted in this State is
insufficient to subject the governor to suit.  Young, 548 F.
Supp. 2d. at 1164 (citing Los Angeles County Bar Ass'n, 979 F.2d
at 704).[10/]  As Defendants argue in their Reply Memorandum,
"[r]egardless of whatever merit his claims may have against other
defendants in this action, Plaintiff does not allege anywhere
that Governor Abercrombie had any involvement in the denial of
his firearm application."  (State Reply to Mot. for Judg. on
Pleadings at 4.)

Accordingly, although Plaintiff may be entitled to
injunctive and/or declaratory relief by virtue of a claim
properly asserted against other Defendants, the Court concludes
that Plaintiff may not obtain injunctive relief from Governor
Abercrombie.  The Court hereby GRANTS State Defendants' Motion
for Judgment on the Pleadings on all claims against the State

_____

[10/] Since the Court is granting the State's Motion for
Judgment on the Pleadings, the Court finds it unnecessary to
address the standing issues raised by the State in its Reply in
Support of the Motion for Judgment on the Pleadings.  Moreover,
in any event, if this Court finds any of the State statutes to be
unconstitutional as alleged, then such statute(s) could not be
enforced by anyone.

Defendants.

## B.   The Motion to Dismiss

On September 21, 2011, the City Defendants filed a Motion to Dismiss the Complaint.  Generally, the City Defendants argue that the Complaint "is exceedingly long, confusing, redundant and full of conclusory statements."  (Mot. to Dismiss, at 2.)  Moreover, the City Defendants assert, the Complaint "raises improper claims and names improper parties."  Id.  The City Defendants advance five central arguments in their Motion to Dismiss.  This Order addresses each argument in turn.  For purposes of the Motion to Dismiss, the Court assumes the facts as alleged in the Complaint to be true.

In its Motion to Dismiss, the City contends that Plaintiff fails to state a claim under 42 U.S.C. § 1983.  (City Motion to Dismiss at 11.)  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  In order to establish municipal liability under Section 1983, a plaintiff must demonstrate that he was deprived of a right under the Constitution or federal law, and

-25-

that the violation "was the product of a policy, practice, or custom adopted and promulgated by the city's officials." Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) (noting that in order to establish liability, plaintiff must show that the city had a policy, practice, or custom which amounted to "deliberate indifference" to the constitutional or federal right and was the "moving force" behind the constitutional violation); see also Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978).

In the past, the Ninth Circuit has not required parties to provide much detail at the pleading stage regarding the "policy or custom" alleged.  Citing Monell, courts have long recognized that "[i]n this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007) (quoting Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)).

However, in Starr v. Baca, the Ninth Circuit acknowledged and addressed the conflicts in the Supreme Court's recent jurisprudence on the pleading requirements applicable to civil actions.  See 652 F.3d 1202 (9th Cir. 2011) (addressing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Dura Pharm.,

-26-

Inc. v. Broudo, 544 U.S. 336 (2005); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam); and Ashcroft v. Iqbal, 556 U.S. 662 (2009)). The court held:

> [W]hatever the difference between [Swierkiewicz, Dura Pharmaceuticals, Twombly, Erickson, and Iqbal], we can at least state the following two principles common to all of them. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr, 652 F.3d at 1218 (emphasis added).  The Ninth Circuit has since held that this standard applies to Monell claims against government officials.  AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).  In light of this authority, the Court acknowledges that in order to withstand the Motion to Dismiss, Plaintiff's Complaint must present more than simply a recital of the elements of a cause of action for his counts alleging constitutional violations and seeking relief pursuant to Section 1983; the allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require [Defendants] be subjected to the expense of discovery and continued litigation."  Starr, 652 F.3d at 1218.

-27-

1.        **Overview of Plaintiff's Claims**

The Complaint purports to assert thirteen causes of action, each of which is alleged against all Defendants. (See Compl. at 23-45.) Although it contains 165 paragraphs, all but one cause of action is brought pursuant to Section 1983 for civil rights violations based upon constitutional rights under the Second, Fifth, or Fourteenth Amendments (or some combination thereof).[11/] Id. In his Prayer for Relief, Plaintiff seeks declaratory and injunctive relief, attorney's fees and costs, and (apparently as a separate prayer) attorney's fees and costs pursuant to 42 U.S.C. § 1988, damages including but not limited to loss of income, research costs, travel fees, and case costs, statutory damages or awards, and costs of suit. Compl. at 45-49.

2.        **The Contested Provisions from the Hawaii Revised Statutes, Chapter 134**

Plaintiff attacks the constitutionality of eight separate provisions of Chapter 134 of the Hawaii Revised Statutes, however his primary contention involves Section 134-9: Licenses to Carry. This statute provides as follows:

---

[11/] Specifically, the Counts are as follows: (I) Unlawful Prohibition; (II) Unlawful Prohibition; (III) Unreasonable Regulations; (IV) Unreasonable Regulations; (V) Unreasonable Regulation § 134-9; (VI) Unreasonable Regulation § 134-9; (VII) Due Process Violation; (VIII) Due Process Violation; (IX) Mr. Baker's Application; (X) Mr. Baker's Application; (XI) Less-Than-Lethal Weapons; (XII) Less-Than-Lethal Weapons; and (XIII) Preliminary Injunction. Compl. ¶¶ 76-165.

**Haw. Rev. Stat. § 134-9:   Licenses to carry.**

(a)     In an exceptional case, when an applicant shows
        reason to fear injury to the applicant's person or
        property, the chief of police of the appropriate county
        may grant a license to an applicant who is a citizen of
        the United States of the age of twenty-one years or
        more or to a duly accredited official representative of
        a foreign nation of the age of twenty-one years or more
        to carry a pistol or revolver and ammunition therefor
        concealed on the person within the county where the
        license is granted.  Where the urgency or the need has
        been sufficiently indicated, the respective chief of
        police may grant to an applicant of good moral
        character who is a citizen of the United States of the
        age of twenty-one years or more, is engaged in the
        protection of life and property, and is not prohibited
        under section 134-7 from the ownership or possession of
        a firearm, a license to carry a pistol or revolver and
        ammunition therefor unconcealed on the person within
        the county where the license is granted.  The chief of
        police of the appropriate county, or the chief's
        designated representative, shall perform an inquiry on
        an applicant by using the National Instant Criminal
        Background Check System, to include a check of the
        Immigration and Customs Enforcement databases where the
        applicant is not a citizen of the United States, before
        any determination to grant a license is made.  Unless
        renewed, the license shall expire one year from the
        date of issue.

(b)     The chief of police of each county shall adopt
        procedures to require that any person granted a license
        to carry a concealed weapon on the person shall:

    (1) Be qualified to use the firearm in a safe manner;

    (2) Appear to be a suitable person to be so licensed;

    (3) Not be prohibited under section 134-7 from the
        ownership or possession of a firearm; and

    (4) Not have been adjudged insane or not appear to be
        mentally deranged.

(c)     No person shall carry concealed or unconcealed on
        the person a pistol or revolver without being
        licensed to do so under this section or in

-29-

compliance with sections 134-5(c) or 134-25.

(d)     A fee of $10 shall be charged for each license and
        shall be deposited in the treasury of the county
        in which the license is granted. [L 1988, c 275,
        pt of §2; am L 1994, c 204, §8; am L 1997, c 254,
        §§2, 4; am L 2000, c 96, §1; am L 2002, c 79, §1;
        am L 2006, c 27,§3 and c 66, §3; am L 2007, c 9, §8]


As the Brady Center aptly summarizes in its Amicus

Brief, most of the other statutes at issue are "Place to Keep"

statutes requiring firearms to "be confined to the possessor's

place of business, residence, or sojourn," but permitting "the

transport of firearms between those places and repair shops,

target ranges, licensed dealerships, organized firearms shows,

firearm training places, and police stations. See Haw. Rev.

Stat. § 134-23 (loaded firearms); § 134-24 (unloaded firearms); §

134-25 (pistols and revolvers); § 134-27 (ammunition). Section

134-26 prohibits carrying or possessing loaded firearms on a

public highway. Those sections exempt permit-holders from their

purview, and Plaintiff's apparent grievance with them is that he

is subject to them – and therefore unable to carry his firearm

about as he pleases – because his permit request was denied.

Section 134-5 permits the use of rifles and shotguns for hunting

or target shooting. Plaintiff's complaint with this section is

that it does not specifically authorize the use of a handgun for

target shooting . . . . Finally, Section 134-51 prohibits the

concealed carry of deadly or dangerous weapons." (See Amicus

-30-

Brief at 5 n.2.)

Prior to addressing the City Defendants' substantive arguments as to why this Court should dismiss certain counts in the Complaint, the Court considers whether the Complaint complies with the pleading standards set forth in Federal Rule of Civil Procedure 8(a).

**3.        Failure to Comply with Rule 8(a)**

The City Defendants allege that the Complaint fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure in that it is "needlessly long, highly repetitious and confusing." Id. at 3.  Rule 8(a) states, in part, that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Although Plaintiff's complaint is forty-nine (49) pages long and asserts thirteen (13) causes of action, City Defendants allege that "all but one claim is brought under 42 U.S.C. § 1983, and alleges a violation of either his 2nd, 5th or 14th Amendment rights." Id. at 5.  Furthermore, although Plaintiff's chief complaint concerns the State of Hawaii's gun laws, "there is no effort made to parse [Plaintiff's] claims between those laws and the particular actions of City Defendants of which he complains." Id. at 6.

Plaintiff responds that his Complaint does, in fact, consist of "clear and concise averments stating which defendants

are liable to [Plaintiff] for which wrongs, based on the evidence." (P's Resp. to MTD at 2) (quoting McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996))). In an attempt to bolster this claim, Plaintiff notes that the State Defendants "cogently and timely answered the Complaint," and the City Defendants "were capable of attributing (what they now aver are) infirmities to the Complaint, often with specific paragraph citations." Id. at 2-3. Plaintiff further argues that the "sweeping nature" of the statutory scheme at issue, as well as the number of constitutional rights allegedly implicated, "necessitate" the Complaint's length. Id. A finding that Plaintiff has failed to comply with Rule 8(a) allegedly would "cripple any Plaintiff's ability to challenge unconstitutional statutes or government officials' actions." Id. at 3. Plaintiff characterizes the City Defendants' Rule 8(a) argument as a "thinly-veiled ruse designed to unduly burden Mr. Baker with litigation costs." Id.

Upon careful review, although the Court agrees with the City Defendants that the Complaint is prolix and repetitive, and should have been drafted more clearly, this particular deficiency is not a basis for dismissal. There is no reasonable basis for confusion as to which Defendants are associated with which claims, and the Court can identify Plaintiff's causes of action. In summary, although Plaintiff's Complaint is repetitive and at times unclear, it "plausibly suggest[s] an entitlement to

-32-

relief, such that it is not unfair to require [Defendants] be subjected to the expense of discovery and continued litigation." Starr, 652 F.3d at 1218.  Accordingly, the Court DENIES the City Defendants' Motion to Dismiss based upon failure to comply with Rule 8(a).[12/]

In their Reply to Plaintiff's Opposing Memorandum and in Support of the Motion to Dismiss, Defendants emphasize that Plaintiff has failed to address – and thereby implicitly concedes – City Defendants' arguments regarding: (i) Plaintiff's Fifth Amendment claims; (ii) the impropriety of HPD as a party; and (iii) the claim for injunctive relief.  The City Defendants ask that the Court find in their favor "with no further discussion of these matters," pursuant to the arguments outlined in their Motion to Dismiss.  (City Reply to MTD at 2.)  The Court now addresses these arguments.

**4.      Plaintiff's § 1983 Claims for Violation of his Fifth Amendment Rights**

The City Defendants correctly assert that Plaintiff's four claims alleging violation of his right to due process under the Fifth Amendment (Counts VII, VIII, IX, and X) must be dismissed.  The Fifth Amendment due process clause "applies to the actions of the federal government, not a municipality."  Low

---

[12/] Nevertheless, should Plaintiff choose to file an amended Complaint, Plaintiff should be more concise and consolidate the causes of action and be specific in identifying the Defendants involved with each cause of action.

v. City of Sacramento, No. 2:10-cv-01624 JAM KJN PS, 2010 WL 3714993 (E.D. Cal. Sept. 17, 2010).  Indeed, the Ninth Circuit has plainly held that "[t]he Due Process Clause of the Fifth Amendment . . . [applies] only to actions of the federal government – not to those of state or local governments." Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); see also Binque v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) ("The Fifth Amendment's due process clause only applies to the federal government."); Castillo v. McFadden, 399 F.3d 993, 1002 n. 5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States . . . .").

Here, Plaintiff has only named the State of Hawaii, City and County of Honolulu, HPD, and a state and local government employee as defendants, and has not alleged that the federal government or a federal actor played a role in the events giving rise to Plaintiff's Fifth Amendment claim.  See Low, 2010 WL 3714993, at * 7.  Significantly, Plaintiff offers no response to the City Defendants' argument, leaving the resolution of these claims "to the Court's discretion."  (Pl's Response to Defs' Mot. to Dismiss, at 2.)  Plaintiff's counsel also conceded at the March 21, 2012 hearing that Plaintiff's Fifth Amendment claims are improper.

Accordingly, this Court will dismiss Counts VII, VIII, IX, and X of the Complaint as to the City Defendants, to the extent that they allege a violation of the Due Process Clause of the Fifth Amendment.[13/]   This dismissal is with prejudice.

**5.        Claims Against the Honolulu Police Department**

The Court will GRANT the City Defendants' Motion to Dismiss all claims against HPD based upon the argument that HPD is not a proper party to this action.   In their Motion to Dismiss, the City Defendants assert that HPD cannot be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.   (See Mot. to Dismiss, at 7.)

The City Defendants are correct.   Courts in the Ninth Circuit generally have treated police departments as part of a municipality.[14/]   Plaintiff's counsel concurred that dismissal of

_____

[13/] The Court does not consider the Fifth Amendment Due Process claims as they relate to the State Defendants, as all claims against the State Defendants were considered fully supra in connection with the State Defendants' Motion for Judgment on the Pleadings.

[14/] See, e.g., Headwaters Forest Def. v. County of Humboldt, et al., 276 F.3d 1125, 1127 (9th Cir. 2002) (treating police departments as part of their respective county or city); Young, 548 F. Supp. 2d at 1164-65(concluding that defendants HPD and the County of Hawaii should be treated as one party for purposes of municipal liability under § 1983); Hoe III v. City and County of Honolulu, et al., Civ. No. 05-00602 DAE-LEK, 2007 WL 1118288, at *5 (D. Haw. 2007) ("This Court treats claims against municipalities, such as the City and County of Honolulu, and their respective police departments as claims against the
(continued...)

HPD was warranted at the March 21, 2012 hearing.  Based upon the

foregoing, the Court, in its discretion, GRANTS the City

Defendants's Motion to Dismiss all claims against HPD, with

prejudice.

**6.        Plaintiff's Official Capacity Claims Against Defendant Kealoha**

Louis Kealoha is named as a defendant both individually

and in his official capacity as Chief of Police of HPD.  (Compl.

¶ 14.)  In their Motion to Dismiss, the City Defendants assert

that Plaintiff's allegations against Defendant Kealoha in his

official capacity are "duplicitous, unnecessary and should be

dismissed."  (See Motion to Dismiss, at 9.)  The City Defendants

cite Supreme Court precedent stating that "a suit against a

governmental officer 'in his official capacity' is the same as a

suit against the entity of which the officer is an agent."  Id.

at 8 (citing McMillian v. Monroe County, Ala., 520 U.S. 781, 785

fn. 2 (1997).[15/]

---

[14/] (...continued)
municipalities."). Additionally, the Hawaii Supreme Court has
held that individual departments within the City are not separate
entities.  City and County of Honolulu v. Toyama, 61 Haw. 156,
598 P.2d 168, 172 (1979) (the city's Building Department and
Department of Housing and Community Development were "both
departments of the executive branch of appellee" and "both
supervised by appellee's managing director," and therefore did
not constitute legal entities separate and apart from the City
and County of Honolulu).

[15/] The City Defendants also rely upon Satterfield v. Borough
of Schuylkill Haven, 12 F. Supp. 2d 423 (E.D. Pa. 1998) (held:
(continued...)

Defendants also contend that courts that have specifically dealt with situations wherein a municipality and its police chief, named in his official capacity, are sued under the same cause of action, have found that the chiefs are unnecessary parties and dismissed them. (Mot. to Dismiss, at 8-9.)[16] Any allegation of an unlawful policy or custom against Kealoha in his official capacity, City Defendants assert, "would necessarily run against the City." Id. at 9.

Plaintiff responds that Defendant Kealoha is "the individual responsible for granting or denying licenses to carry pursuant to HRS §134-9. (P's Resp. to MTD at 10.) He adds, "while [Plaintiff] is entitled to injunctive and declaratory relief against Defendant City and County of Honolulu, it was Chief Kealoha who has directly violated [Plaintiff's] rights." Id. at 10-11.[17]

---

[15] (...continued)
public official sued in his official capacity is "legally indistinct from the municipality for which he serves."). Mot. to Dismiss at 8.

[16] Defendants cite Beverly v. Casey, 2006 WL 298810 (D. Neb. 2006)("Because suing a municipal official in his official capacity is equivalent to suing the municipality, the police chief is an unnecessary party."); Admiral Theatre v. City of Chicago, 832 F. Supp. 1195, 1200 (N.D. Ill. 1993) ("Where the unit of local government is sued as well, the suit against the officials is redundant and should therefore be dismissed.")

[17] Plaintiff correctly distinguishes McMillian v. Monroe Cty., 520 U.S. 781 (1997) – cited by Defendants in their Motion to Dismiss. This case is inapposite in that the Sheriff
(continued...)

-37-

The Supreme Court noted decades ago, and it is well settled, that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell, . . . local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).

As the City Defendants assert, "[a]ny allegation of an unlawful policy or custom against Kealoha in his official capacity would necessarily run against City." (Mot. to Dismiss at 9.)  In fact, in a recent opinion addressing alleged violations of a Plaintiff's Second Amendment rights – and alleging that Section 134-9, among others, was unconstitutional – the United States District Court for the District of Hawaii exercised its discretion to dismiss official capacity claims against the Chief of Police because the claims were duplicative of those asserted against the County of Hawaii.  See Young, 548 F. Supp. 2d at 1164.

The Court finds that the official-capacity claims duplicate the claims asserted against the City and County of Honolulu, and accordingly DISMISSES Plaintiff's official capacity claims against Defendant Kealoha insofar as Plaintiff seeks monetary damages.  See Wong v. City & Cnty. of Honolulu, 333 F.

_____

[17]/ (...continued)
Defendant was held to be an actor of the State, not the County. Id. at 793.

Supp. 2d 942, 947 (2004).[18/]  This dismissal is with prejudice.
However, in the event that Plaintiff ultimately fails to
establish municipal liability against the City, at this time the
Court in its discretion declines to dismiss the official capacity
claims against Kealoha insofar as Plaintiff seeks injunctive
relief.

**7.        Plaintiff's Claim for Injunctive Relief**

        As the City Defendants argue, it is well-settled that
injunctive relief is only a possible remedy if a plaintiff
succeeds on one of his independent causes of action; it is not
its own cause of action. See Marzan v. Bank of Am., 779 F. Supp.
2d 1140 (D. Haw. 2011) (recognizing the "well-settled rule that a
claim for 'injunctive relief' standing alone is not a cause of
action); see also Jensen v. Quality Loan Serv. Corp., 702 F.
Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive
relief by itself does not state a cause of action . . . .")
(quoting Mbaba v. Indymac Federal Bank F.S.B., No. 1:09-CV-01452-
OWW-GSA, 2011 WL 424363, at *4 (E.D. Cal. Jan. 27, 2010)).

        Although Plaintiff may request injunctive relief in
connection with one of the substantive claims asserted in his

_____

        [18/] The City Defendants have not moved to dismiss the claims
brought against Defendant Kealoha in his individual capacity.
Accordingly, the Court does not address the individual capacity
claims asserted against Defendant Kealoha in this Order.

Complaint, "a separately pled claim or cause of action for injunctive relief is inappropriate." Jensen, 702 F.Supp. at 1201.  Plaintiff does not challenge Defendants' argument in his Reply.  (See P's Reply for P.I.)  Additionally, at the March 21, 2012 hearing, counsel for Plaintiff conceded that a separate count for injunctive relief is not permissible.

Accordingly, although it notes that Plaintiff may request injunctive relief in his Prayer for Relief in connection with a separate substantive claim, the Court GRANTS the City Defendants' Motion to Dismiss Count XIII as it is improperly pled as an independent cause of action.  This claim is DISMISSED with prejudice.

The Court observes that the City Defendants have not addressed Plaintiff's remaining claims under Section 1983 alleging violation of Plaintiff's rights under the Second and Fourteenth Amendments of the United States Constitution.  (See Mot. to Dismiss.)  Accordingly, the Court will not consider these claims and declines to dismiss them against the remaining Defendants at this time; although the Court does consider them infra in connection with Plaintiff's Motion for a Preliminary Injunction.

C.   **Motion for Preliminary Injunction**

For the reasons described herein, the Court will DENY Plaintiff's Motion for a Preliminary Injunction, and further

-40-

declines to consolidate the hearing of this Motion with a trial
on the merits pursuant to Rule 65(a)(2).

In his Motion for a Preliminary Injunction, Plaintiff
seeks an injunction prohibiting Defendants from enforcing and
maintaining Sections 134-5, 134-9(c), 134-16, 134-23 through 27,
and 134-51 of the Hawaii Revised Statutes during the pendency of
the lawsuit.  (Mot. for P.I. at 3.)  Plaintiff asserts that such
an injunction would permit the citizens of Hawaii who "are not
otherwise specifically adjudicated to be so dangerous as to
curtail or infringe upon their presumptively intact
constitutional rights, such as [Plaintiff], to carry and bear
firearms and otherwise freely exercise their Second Amendment
Rights," while those who are "unfit" to possess a firearm would
still be prohibited from doing so pursuant to 18 U.S.C. § 922.[19]
Id.

In the alternative, Plaintiff seeks an injunction
compelling Defendants to issue Plaintiff a license authorizing
Plaintiff to bear a concealed or openly displayed firearm,
including a pistol or handgun, in public for all "protected"
purposes.  Id. at 3-4.  Plaintiff contends that issuance of this

_____

[19] This federal statute outlines unlawful acts under the
"firearms" chapter of Title 18 ("Crimes and Criminal Procedure")
of the United States Code.  The Court notes that 18 U.S.C. 922 is
by no means identical to the Hawaii Revised Statutes at issue,
nor does it have the effect of regulating the type of activity
covered by these state statutes.

license is his only means, as a law-abiding citizen of the State
of Hawaii, to keep or bear firearms pursuant to his
constitutional rights.  Id.  He further alleges that the statute
which governs licensing, Haw. Rev. Stat. 134-9, is "on its face,
unduly restrictive, and in practice, never utilized absent some
relationship with local law enforcement." (Mem. in Supp. of Mot.
for P.I. at 4.)

As described in detail above, in order to prevail on a
motion for a preliminary injunction, a plaintiff must establish:
(i) that he is likely to succeed on the merits; (ii) that he is
likely to suffer irreparable harm in the absence of preliminary
relief; (iii) that the balance of equities tips in his favor; and
(iv) that an injunction is in the public interest.  Winter v.
Natural Res. Def. Council, Inc., 555 U.S. 7 (2008).  As the State
Defendants correctly note, "injunctive relief is an extraordinary
remedy that may only be awarded upon a clear showing that the
plaintiff is entitled to such relief." (State Opp. to P.I. at 4)
(quoting Winter, 555 U.S. at 22).  The Ninth Circuit has also
recognized an alternate formulation of the Winter test, pursuant
to which "serious questions going to the merits and a balance of
hardships that tips sharply towards the plaintiff can support
issuance of a preliminary injunction, so long as the plaintiff
also shows that there is a likelihood of irreparable injury and
that the injunction is in the public interest." Farris v.

-42-

Seabrook, 667 F.3d 1051, 1057 (9th Cir. 2012).

The Court will address Plaintiff's motion under each of these tests, as well as the City Defendants' and State Defendants' arguments in their opposition memoranda, in turn.

## 1.   Likelihood of Success on the Merits

Plaintiff contends that he is likely to succeed on the merits in his lawsuit against the Defendants.  (Mem. in Supp. of Mot. for P.I. at 7-13.)  The Court disagrees.  The crux of Plaintiff's case concerns his contention that his Second Amendment right to bear arms was infringed when Defendants denied him a license to carry under HRS § 134-9.  Id.  For the reasons discussed herein, the Court concludes that Plaintiff is unlikely to succeed on the merits with respect to his Second Amendment claims.

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In District of Columbia v. Heller, the Supreme Court recognized that the Second Amendment protects the individual right to keep and bear arms for self-defense.  554 U.S. 570 (2008).  At issue in Heller were two restrictions:  (1) a ban on handgun possession in the home, which the Court characterized as among the most restrictive in the "history of our Nation"; and (2) the requirement that firearms be

-43-

kept inoperable at all times.  Id. at 628.  The Supreme Court
held that the District of Columbia's prohibition on operable
handguns in the home was unconstitutional because the right to
self-defense is central to the Second Amendment and the
regulation extended to the home, "where the need for defense of
self, family, and property is most acute."  Id. at 628.

     In so holding, the Supreme Court recognized that the
right to bear arms is not unlimited, noting that "the majority of
19th-century courts to consider the question held that
prohibitions on carrying concealed weapons were lawful under the
Second Amendment or state analogues."  Id. at 626.  The Court
also stated, "we do not undertake an exhaustive historical
analysis today of the full scope of the Second Amendment,"
however "nothing in our opinion should be taken to cast doubt on
longstanding prohibitions on the possession of firearms"  by
certain classes of persons, such as the mentally ill and
convicted felons, and in certain places constituting security
concerns.  Id. at 626-27 & n. 26.  The Supreme Court suggested
that the core purpose of the right conferred by the Second
Amendment was to permit "law-abiding, responsible citizens to use
arms in defense of hearth and home." Id. at 635.[20/]  Two years

_____

     [20/]   The Supreme Court also engaged in a detailed discussion
of the meaning of the word "bear."  See Heller, 554 U.S. at 584.
The Supreme Court noted that "at the time of the founding, as
now, 'bear' meant to 'carry.'"  Id.  However, used in conjunction
                                                  (continued...)

later, in McDonald v. City of Chicago, the Supreme Court held

that the Second Amendment right to keep and bear arms is fully

applicable to the States by virtue of the Fourteenth Amendment.

130 S.Ct. 3020 (2010).  In McDonald v. City of Chicago, the

Supreme Court stated that its "central holding" in Heller was

"that the Second Amendment protects a personal right to keep and

bear arms for lawful purposes, most notably for self-defense

within the home."  130 S.Ct. 3020, 3044 (2010) (emphasis

added).[21]

In the wake of Heller, many courts have observed that

although the Supreme Court did not set the outer bounds of the

Second Amendment, it did explicitly state that "[l]ike most

rights, the right secured by the Second Amendment is not

---

[20] (...continued)
with "arms," the Supreme Court concluded that "bear" had a
different meaning, referring to "carrying for a particular
purpose - confrontation."  Id.  In his Motion for a Preliminary
Injunction, Plaintiff emphasizes that the Supreme Court dedicated
eight pages to analyzing the meaning of the phrase "bear arms,"
concluding that it "is the right to carry weapons in case of
confrontation."  (See Mot. for P.I. at 6-7.)  Accordingly,
Plaintiff contends that the Supreme Court understood the Second
Amendment right "to keep and bear Arms" to include a general
right to carry guns in public. (Mot. for P.I. at 7-9.)  The Court
acknowledges Plaintiff's argument, however in light of the
uncertainty surrounding Heller, the Court joins other courts in
awaiting direction from the Supreme Court with respect to the
outer bounds of the Second Amendment.  See Masciandaro, 638 F.3d
at 475.

[21] The Court notes that the Supreme Court again left some
room for argument as to the operative scope of the Second
Amendment in utilizing such words as "central holding" and "most
notably."  See McDonald, 130 S.Ct. at 3044.

unlimited." See Kachalsky v. Cacace, No. 10-CV-5413 (CS), 2011 WL 3962550 (S.D.N.Y. Sept. 2, 2011)(citing Heller, 554 U.S. at 626)).  Courts that have had occasion to consider the outer limits of the Second Amendment rights espoused in Heller have recognized that an "emphasis on the Second Amendment's protection of the right to keep and bear arms for the purpose of 'self-defense in the home' permeates the [Supreme] Court's decision and forms the basis for its holding – which, despite the Court's broad analysis of the Second Amendment's text and historical underpinnings, is actually quite narrow." Kachalsky, 2011 WL 3962550 at *19.[22/]

In Heller, the Supreme Court did not decide the level of constitutional scrutiny to be applied in reviewing restrictions upon a person's Second Amendment right to bear arms.

_____

[22/] Nevertheless, lower courts have widely recognized that the Supreme Court's opinion in Heller did not clearly trace the bounds of an individual's right to bear and carry arms for purposes of self-defense.  In fact, as Plaintiff noted in his Reply to Defendants' Response to Plaintiff's Motion for a Preliminary Injunction, a district court in the Fourth Circuit recently extended the Second Amendment right to bear arms beyond the home.  See Woollard v. Sheridan, Civ. No. L-10-2068, 2012 WL 69574 (D. Md. Mar. 2, 2012).  This recent opinion demonstrates the uncertainty created by Heller, and stands in contrast to the holdings of many other courts to have addressed the scope of the Second Amendment.  Further, Woollard must be viewed in light of the Fourth Circuit's admonition in Masciandaro noting that courts should await direction from the Supreme Court to determine the scope of protected Second Amendment activity in light of Heller. See Masciandaro, 638 F.3d at 475.  ("On the question of Heller's applicability outside the home environment, we think it prudent to await direction from the Court itself.")

Heller, 554 U.S. at 624.[23/]   The Ninth Circuit had occasion to consider this issue in Nordyke v. King, holding that "only regulations which substantially burden the right to keep and to bear arms trigger heightened scrutiny."   644 F.3d 776, 786 (9th Cir. 2011).   However, the court decided to rehear Nordyke en banc and declared that its earlier opinion may not be cited as precedent by or to any court in this Circuit.   See Nordyke v. King, 664 F.3d 774, (9th Cir. 2011).   On March 20, 2012, an en banc panel of the Ninth Circuit Court of Appeals heard arguments and ordered the dispute to mediation.   Nordyke v. King, No. 07-15763 (9th Cir. Apr. 4, 2012).   Accordingly, the state of Second Amendment case law in this Circuit, and the applicable level of scrutiny, is in flux.

The Court heeds the Third Circuit's admonition in Masciandaro:   "On the question of Heller's applicability outside the home environment, we think it prudent to await direction from the Court itself."   638 F.3d at 475.   However, in the meantime, the Court turns to other Circuit Courts of Appeal for guidance.

---

[23/] However, the Court did rule out two types of scrutiny. First, it held that rational basis review was improper, explaining that "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."   554 U.S. at 629 n.27.   Further, the Court rejected Justice Breyer's suggested "interest-balancing approach," concluding that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest balancing approach.' Id. at 634.

Generally, those appellate courts that have addressed the issue have concluded that intermediate scrutiny should be applied to firearms restrictions that implicate protected Second Amendment activity.[24/]   Most federal district courts to have addressed the issue have also applied some form of intermediate scrutiny to challenged firearms regulations that are found to implicate

---

[24/] See, e.g., United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010).  The Third Circuit Court of Appeals articulated a two-step analysis in which, prior to determining the level of scrutiny to be applied, a court must first determine whether the statute at issue implicates a Second Amendment right as articulated in Heller:  "As we read Heller, it suggests a two-pronged approach to Second Amendment challenges.  First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.  If it does not, our inquiry is complete.  If it does, we evaluate the law under some form of means-end scrutiny.  If the law passes muster under that standard, it is constitutional.  If it fails, it is invalid."   Id. at 89.   The Court formulated the second prong of the applicable test as whether the asserted governmental interest was "significant," "substantial," or "important," and whether the fit between the challenged regulation and the asserted objective is "reasonable, not perfect."  Id. at 97-98.  See also  United States v. Reese, 627 F.3d 792 (10th Cir. 2010) (applying intermediate scrutiny); United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011)(same); United States v. Skoien, 614 F.3d 638, 641 (7th Cir. 2010) (same).
   Although the Court of Appeals for the Seventh Circuit recently recognized a limited extension of the Second Amendment right to bear arms, the statute at issue in that case was found to operate as a "complete ban on gun ownership within the City limits" and an imposition of "an impossible pre-condition on gun ownership for self-defense in the home" because firing range training was a prerequisite to all lawful carry, including in the home.  Ezell v. City of Chicago, 651 F.3d 684, 710-11 (7th Cir. 2011). As the Court explains in this Order, the sections of the Hawaii Revised Statute at issue in this litigation do not contain any language restricting possession of a firearm in the home. See Haw. Rev. Stat. §§ 134-5, 134-9, 134-16, 134-23, 134-24, 134-25, 134-26, 134-27, 134-51.

protected Second Amendment activity.[25/]

Recently, the United States District Court for the District of Hawaii had occasion to consider the very statute at the center of the instant litigation – Section 134-9.  In Young v. Hawaii, the court noted that it could not "identify any language [in Heller] that establishes the possession of an unconcealed firearm in public as a fundamental right.  Heller held as unconstitutional a law that effectively banned the possession of a useable handgun in one's home."  Civ. No. 08-00540 DAE-KSC, 2009 WL 1955749, at *9 (D. Haw. July 2, 2009).[26/]

Plaintiff's principal challenge is to Haw. Rev. Stat. § 134-9, which empowers a county chief of police to grant a concealed-carry license for a pistol or revolver and ammunition

_____

[25/] See, e.g., Osterweil v. Bartlett, No. 1:09-cv-825, 2011 WL 1983340, at *10 (N.D.N.Y. May 20, 2011) (applying intermediate scrutiny to statute prohibiting nonresidents not employed in New York State from obtaining a firearms license); United States v. Smith, 742 F. Supp. 2d 855, 864-65 (S.D. W. Va. 2010)( applying intermediate scrutiny to statute criminalizing possession of firearm by person convicted of misdemeanor crime of domestic violence); Kuck v. Danaher, Civ. No. 3:07:cv1390(VLB), 2011 WL 4537976 (D. Conn. Sept. 29, 2011) (applying intermediate scrutiny to hold that state officials did not violate plaintiff's Second Amendment right to bear arms by revoking pistol permit based upon determination under statute that he was not "suitable" in light of his arrest for breach of peace); Peruta v. County of San Diego, 758 F. Supp. 2d 1106 (S.D. Cal. 2010); Kachalsky v. Cacace, No. 10-CV-5413 (CS), 2011 WL 3962550 (S.D.N.Y. Sept. 2, 2011); Piszczatoski v. Filko, Civ. No. 10-006110, 2012 WL 104917 (D.N.J. Jan. 12, 2012).


[26/] The Court observes that this opinion was issued prior to McDonald, 130 S.Ct. 3020.  See supra, n.5.

-49-

"in an exceptional case," and an open-carry license for a pistol or revolver and ammunition to those "engaged in the protection of life and property" where "the urgency or the need has been sufficiently indicated." Id.   Plaintiff, having been denied a license, asserts that Section 134-9 "is unconstitutional as it broadly prohibits the open and concealed bearing of firearms unless, and not until, the applicant satisfies to the Chief of Police that the applicant's circumstances constitute an 'exceptional case' and/or that an 'urgency or need has been sufficiently indicated.'" Compl. ¶ 37.   This section is limited to pistols and revolvers. See, e.g., State v. Modica, 58 Haw. 249, 567 P.2d 420 (Haw. 1977).

Significantly, Section 134-9 contains explicit exceptions that provide avenues for the carrying of a concealed weapon in exceptional cases due to a demonstrated fear of injury to person or property, as well as for the carrying of an unconcealed weapon in cases of sufficient urgency or need. See Haw Rev. Stat. § 134-9.   Plaintiff applied for a licence, and the Police of Chief determined that Plaintiff did not meet these exceptions.   It has long been recognized that the Second Amendment right "was not a right to keep and carry any weapon whatsoever and for whatever purpose." Heller, 554 U.S. at 626.

The case law analyzing Section 134-9 recognizes this exception intended to protect an individual's right to self-

defense within the home, emphasizing that the statute "prohibiting a person from carrying a concealed or unconcealed pistol or revolver on his person without being licensed <u>does not proscribe a person from carrying or possessing an unregistered revolver at his place of residence</u> since the possession or carrying of a firearm is proscribed only outside of the possessor's place of residence, business, or sojourn." <u>See</u> <u>State v. Rabago</u>, 67 Haw. 332, 686 P.3d 824 (1984) (emphasis added).

Further, the United States District Court for the District of Hawaii has previously recognized that the Hawaii Revised Statutes at issue do not implicate the protected activity in <u>Heller:</u> "Chapter 134 pertains only to the carrying of weapons on one's person and does not constitute a complete ban to the carrying of weapons or pertain to possessing weapons in one's home; and it provides for an exception for those who can establish a fear of injury." <u>Young v. Hawaii</u>, Civ. No. 08-00540 DAE-KSC, 2009 WL 874517, at *5 (D. Haw. Apr. 1, 2009).[27/]

Plaintiff also challenges the constitutionality of various "Place to Keep" statutes that require firearms to "be confined to the possessor's place of business, residence, or sojourn," but permit the transport of firearms between those places and repair shops, target ranges, licensed dealerships,

---

[27/] The Court observes that this opinion was issued prior to <u>McDonald</u>, 130 S.Ct. 3020. <u>See</u> <u>supra</u>, n.5.

organized firearms shows, firearm training places, and police

stations.  See Haw Rev. Stat. § 134-23 (loaded firearms), § 134-

24 (unloaded firearms), § 134-25 (pistols and revolvers), § 134-

26 (prohibition on carrying/possessing loaded firearms on a

public highway, § 134-27 (ammunition).[28/]  These statutory

provisions, Plaintiff contends, are unconstitutional because they

impermissibly burden his Second Amendment right to carry firearms

in all "non-sensitive" places. (See, e.g., Compl. ¶ 78;  Mot.

for P.I. at 1.)[29/]  Plaintiff argues, without concrete support,

that Sections 134-24 and 134-25 actually prohibit Plaintiff from

bearing a firearm "within his home," apparently relying upon the

---

[28/] Effective May 2, 2006, Haw. Rev. Stat. § 134-6 was
repealed in its entirety in Act 66 of 2006.  See generally State
v. Ancheta, 121 Hawaii 471, 2009 WL 3776408 (Hawaii App. Nov. 9,
2009); see also 2006 Haw. Sess. Laws Act 66, § 6 at 110, § 10 at
110.  Haw. Rev. Stat. § 134-6(c) was replaced with Haw. Rev.
Stat. § 134-25 (regarding offenses related to places to keep a
pistol or revolver); the Legislature also enacted Haw. Rev. Stat.
§§ 134-23, 134-24 and 134-27, pertaining to places to keep
firearms other than pistols or revolvers, as well as ammunition.
See Haw. Sess. Laws Act 66, § 1 at 105-107.

[29/] Plaintiff also challenges Section 134-5 – which permits
the use of rifles and shotguns for hunting or target shooting –
apparently challenging that the statute does not specifically
authorize the use of handguns for target shooting.  See
Preliminary Injunction Memorandum, at 12; Compl. ¶ 72 ("Because
citizens, including Mr. Baker, are guaranteed the right to keep
and bear a firearm, those citizens also enjoy a corollary right
to train and become proficient in the use of that tool.")
Plaintiff fails to recognize that Section 134-25 explicitly
permits the transport of pistols and revolvers to and from target
ranges and the possessor's place of business, residence, and
sojourn, so long as they are unloaded and in an enclosed
container. Accordingly, there is no ban on engaging in training
and target practice with a handgun.

dictate that a firearm must be "confined" to a possessor's residence or sojourn. Compl. ¶ 26.

As the Brady Center notes in its Amicus Brief, contrary to Plaintiff's interpretation, the Court does not read the "Place to Keep" statutes as prohibiting an individual's carrying of a firearm within the home. Hawaii courts have required that charges brought under these statutes "allege that the firearm at issue was away from [the defendant's] place of business, residence or sojourn." State v. Ancheta, 220 P.3d 1052, 2001 WL 3776408, at *7 (Haw. Ct. App. 2009)[30/]; see also Rabago, 686 P.2d at 826. Although the Court understands the basis of Plaintiff's argument with regard to restrictions in "non-sensitive" places, particularly in light of the uncertainty created by Heller, the Court nonetheless declines to extend the reach of the Second Amendment right to bear arms to all "non-sensitive" places without further guidance from the higher courts. As discussed earlier, in McDonald v. City of Chicago, the Supreme Court underscored that Heller's "central holding" was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home"; however, as the Court previously noted, the Supreme Court again

---

[30/]  In Ancheta, the court dismissed a count that alleged only that defendant "did carry or possess" a firearm and "did fail to confine" the firearm because it "did not allege that the firearm at issue was away from [defendant's] place of business, residence or sojourn").

-53-

could have been more precise in defining the contours of the Second Amendment.  130 S.Ct. 3020, 3044 (2010).

The Court concludes Plaintiff is unlikely to succeed in demonstrating that any of the Hawaii Revised Statutes at issue in this litigation implicate protected Second Amendment activity. Additionally, the Court concludes that even if the Hawaii Revised Statutes at issue in this litigation were found to implicate protected Second Amendment activity, and therefore were subject to intermediate scrutiny, Plaintiff is not likely to succeed in establishing that the challenged statute fails to be "substantially related to an important government objective." (City Opp. to P.I. at 14.) Courts have long recognized – and continue to recognize today – that the government has a "compelling" "interest in preventing crime." See, e.g., United States v. Salerno, 481 U.S. 739, 754 (1987).

The government has a significant interest in empowering local law enforcement to exercise control over both concealed and open-carry firearm permits. See Kachalsky, 2011 WL 3962550, at *27-29.  The laws comprising Chapter 134 of the Hawaii Revised Statutes have been on the books since 1907.  Historically, in addressing the provisions of Chapter 134, the State legislature has recognized the need to "amend the existing firearms laws so that they will be more effective in deterring and preventing the proliferation of crimes involving the illegal possession and use

of firearms in the State of Hawaii." (See Haw. House Journal, Standing Comm. Rep. 1102.)

Considering the State of Hawaii's clear and important government objective in the protection of public health and safety (as discussed in greater detail under the "Balancing of the Equities" and "Public Interest" prongs below), the Court concludes that Plaintiff is not likely to establish that the State of Hawaii's restrictions on carrying firearms in public places is unconstitutional pursuant to the Second Amendment.[31] Accordingly, this factor weighs against the grant of a preliminary injunction.

## 2. Irreparable Harm

Plaintiff contends that he will suffer "both an irreparable liberty interest and a property interest" if this Court does not grant a preliminary injunction. (Mot. for P.I. at 18.) He argues that deprivation of his liberty, standing alone, merits issuance of the injunction, but also claims he has suffered and continues to suffer irreparable loss of a property

---

[31] In his Motion for a Preliminary Injunction, Plaintiff also asserts that he is likely to succeed on the merits with respect to his Due Process claim under the Fourteenth Amendment. (See Mem. in Supp. of Mot. for P.I. at 13.) Plaintiff's due process argument is based upon his assertion that he has a fundamental Second Amendment right to a gun license under Section 134-9. Id. at 17. For the reasons described above, the Court concludes that Plaintiff is not likely to establish that he has a fundamental Second Amendment right to carry a gun in public. Accordingly, the Court concludes that Plaintiff is unlikely to succeed on the merits with respect to his due process claim.

interest, namely, his inability to earn income as a licensed process server due to his inability to adequately defend himself. Id. at 18.

The Court finds that Plaintiff has given short shrift to this prong, and in fact, comes up short. As an initial matter, a plaintiff seeking a preliminary injunction must show that "irreparable injury is likely in the absence of an injunction"; the mere possibility of irreparable harm is insufficient. Winter, 555 U.S. at 22.

Moreover, contrary to Plaintiff's assertion that he was "forced" to stop earning an income as a process server due to his inability to defend himself, the City Defendants assert that Plaintiff in fact stopped earning this income voluntarily and any harm suffered was self-inflicted. (City Opp. P.I. at 18) (citing Decl. of Thomas Nitta, pp. 2-4 (noting that of approximately 75 process servers in the City and County of Honolulu, Plaintiff is the only process server to have applied for a concealed carry license)). Although Plaintiff stated in his application for a license that he was threatened while performing his job as a process server, Major Thomas Nitta declared under penalty of perjury that the documented "incident" involved a confrontation between Plaintiff and a 63-year-old man, and it was that man – not Plaintiff – who called 911. (See Decl. of Thomas Nitta at 3.) Major Nitta also declared that he is aware of no law that

would prevent Plaintiff from carrying pepper spray to defend himself.  (See Decl. of Thomas Nitta at 4.)

The City Defendants also distinguish the instant case from Ezell v. City of Chicago, wherein the Court of Appeals for the Seventh Circuit reversed a district court's denial of a preliminary injunction.  651 F.3d 684 (7th Cir. 2011).  Ezell involved an ordinance that had the effect of restricting the right to possess firearms in defense of the home – a right explicitly recognized in Heller.  Id.  Unlike the right at issue in Ezell, the constitutional right that Plaintiff contends is compromised in the instant case – to carry a concealed weapon in public – has not been recognized by the Supreme Court or the overwhelming majority of circuit and district courts that have interpreted its holding.  Plaintiff claims that he may be attacked in the future and require a firearm to protect himself.  (See City Opp. to P.I. at 19.)  The City Defendants respond that Plaintiff's claimed harm is speculative and cannot form the basis of a claim for irreparable harm.  Id.

The Court agrees.  Plaintiff has failed to establish that he will suffer irreparable harm in the absence of a preliminary injunction.  He has not shown that any of the alleged harm is likely to be anything more than mere speculation, which is inadequate to establish irreparable harm. See Winter, 555 U.S. at 8; see also Goldie's Bookstore, Inc. v. Superior Court of the

<u>State of Cal.</u>, 739 F.2d 466, 472 (9th Cir.1984) ("speculative injury does not constitute irreparable injury" (citing Wright, Miller and Kane 11 Fed. Practice and Procedure § 2948 at 436 (1973))).

Moreover, Plaintiff has failed to show that he will continue to suffer loss of income by not working as a process server for some other reason aside from his apparently voluntary decision to resign (particularly in light of the Declaration noting that only Plaintiff, of some 75 process servers in the City and County of Honolulu, applied for a concealed carry license, and that nothing prevents Plaintiff from carrying pepper spray).

Accordingly, Plaintiff has failed to establish irreparable harm and this factor weighs against granting the preliminary injunction.

## 3.  Balancing of the Equities

Plaintiff's argument that the balance of equities mandates relief is unavailing.  (Mem. in Supp. of Mot. for P.I. at 19-21.)  Plaintiff attempts to draw an analogy to <u>Klein v. City of San Clemente</u>, a case addressing a challenge to a prohibition on free speech.  584 F.3d 1196 (9th Cir. 2009).  The <u>Klein</u> court, in ruling that the balance of equities tipped "<u>sharply</u> in favor of enjoining the ordinance," was not faced with the potentially severe repercussions of unleashing countless

-58-

firearms onto the open streets of the city.  Plaintiff has also failed to establish that the statutes at issue infringe upon a fundamental right such as the one at issue in <u>Klein</u>.

Plaintiff is misguided in concluding that "the State of Hawaii suffers no harm by enjoining the aforementioned statutes and issuing a permit." (Mem. in Supp. of Mot. for P.I. at 20.) Without any support, Plaintiff asserts that he and other "similarly situated" persons are "low risk" because "they are law abiding and mentally sound citizens." <u>Id.</u> at 21.  Plaintiff contends that granting the injunction "imposes no burden" on the Defendants because it "would promote the Hawaiian government's goal of protecting and promoting the fundamental rights of its citizens." <u>Id.</u>  Plaintiff apparently ignores the potential severe safety risk that is created in exchange for "protecting and promoting" a right that Plaintiff likely cannot establish is fundamental under the Constitution as an initial matter.  For these reasons, it is abundantly clear that the balance of the equities militates against a grant of a preliminary injunction.

## 4.  The Public Interest

Plaintiff asserts that granting the preliminary injunction would serve the public interest because "[e]very law abiding citizen in the State of Hawaii currently suffers deprivation of their Second Amendment rights because of these unconstitutional firearms regulations." (Mem. in Supp. of Mot.

for P.I. at 22.)  The "only" argument Plaintiff anticipates on this prong is the possibility that the preliminary injunction "might increase crime." Id. at 23 (emphasis in the original). This possibility, Plaintiff asserts, does not create a real threat because "unsuitable" applicants are already prohibited from carrying firearms under 18 U.S.C. § 922. Id.  Additionally, Plaintiff alleges, citizens are more likely to encounter danger and harm while venturing in public than in the home.  Id. at 24. It follows, Plaintiff asserts, that "[o]bviously if the Second Amendment protects the use of firearms for confrontational purposes and confrontation is more likely to occur beyond the threshold of a citizen's front door, the Second Amendment permits the carrying and bearing of firearms in public. Id. at 24-25.

Plaintiff fails to provide any concrete evidence that the federal criminal prohibitions on firearm possession are an adequate substitute for the prohibitions contained in the Hawaii Revised Statutes.  Moreover, as the Court has explained, the central statute at issue – Section 134-9 – provides for exceptions in cases where an individual demonstrates an urgency or need for protection in public places.  See Haw. Rev. Stat. §134-9.  Accordingly, individuals who demonstrate such urgency or need for public protection may be permitted to bear arms in case of confrontation.

The protection of public health and safety, as well as

-60-

crime prevention, obviously are "important government objectives." (State Opp. to P.I. at 11) (citing Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996), Foucha v. Louisiana, 504 U.S. 71, 81 (1992).)  The State Defendants also direct the Court's attention to a recent case before the District Court for the Southern District of California, wherein the court – considering California's concealed weapons regulations – stated that the government had an "important interest" in reducing the number of concealed weapons in public to reduce risk to other members of the public, and reducing the number of concealed handguns in public due to their disproportionate use in life-threatening crimes of violence.  Peruta v. County of San Diego, 758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010).  Additionally, the District Court for the District of Hawaii recently held that the State of Hawaii has a legitimate governmental interest in public welfare and safety in the context of regulating firearms.  Young, 2009 WL 1955749, at *9.

     The City Defendants bolster these arguments in their separate opposition memorandum, aptly noting that "Plaintiff's requested injunction would permit the carrying of any firearm by any person without regard to their training or intent to use the weapon for crimes of violence, without regard to whether the person was intoxicated, and without limitation as to the nature of the public place.  Thus, the State would be compelled to allow

weapons to be carried into courthouses; government offices; churches; schools; and public businesses, including bars and banks." (City Opp. to P.I. at 20.)

The City Defendants also call into question Plaintiff's argument that Hawaii has experienced an eleven percent decrease in crime over the past five years while gun ownership has increased for four consecutive years. In fact, the City Defendants argue, the relevant offenses have actually risen (albeit slightly) over the past three years. Id. at 22. The Court observes that a rise in gun ownership is not synonymous with a rise in the number of licenses to carry firearms in public - the right at issue in this litigation. Plaintiff offers no statistics indicating a benefit to public safety or decrease in crime in relation to an increase in the number of licenses granted for the open or concealed carrying of a firearm.

The City Defendants underscore a central concern for the Court: the possibility that "some unspeakably tragic act of mayhem [could occur] because in the peace of our judicial chambers we miscalculated as to Second Amendment Rights." Masciandaro, 638 F.3d at 475 (concluding that "danger would rise exponentially" if the right to carry weapons was extended from the home to the public square).

The State Defendants contend that Plaintiff's alternative request for an order compelling that Defendants issue

-62-

him a license under Haw. Rev. Stat. 134-9 should be denied because Plaintiff has failed to demonstrate that his "perceived need to carry a weapon in public outweighs the public's interest in safety." (State Opp. to P.I. at 12.)  The Court agrees.

The potential harm to Plaintiff is speculative and far from irreparable, whereas the potential harm to society posed by a preliminary injunction presents a clear and serious risk to public safety.

For these reasons, the Court concludes that granting either of Plaintiff's requests for a preliminary injunction would not be in the public interest.

The Court concludes that Plaintiff has failed to establish: (i) the likelihood of success on the merits; (ii) irreparable harm; (iii) that granting the injunction would be in the public interest; or (iv) that the balance of the equities favors a grant of the preliminary injunction.  Consequently, Plaintiff has failed to establish any of the enumerated Winter elements for a preliminary injunction.  Plaintiff also fails to satisfy the Cottrell factors, because he has demonstrated neither serious questions going to the merits nor a balance of hardships that tips sharply toward his favor.  See Cottrell, 632 F.3d at 1135.  For these reasons, Plaintiff's Motion for a Preliminary Injunction is DENIED.

### V.   CONCLUSION

For the foregoing reasons, the Court:  (1) GRANTS the State Defendants' Motion for Judgment on the Pleadings; (2) GRANTS in part and DENIES in part the City Defendants' Motion to Dismiss the Complaint; and (3) DENIES Plaintiff's Motion for a Preliminary Injunction.

With respect to the Motion to Dismiss, the following claims are dismissed with prejudice:  (i) all claims against HPD; (ii) Counts VII, VIII, IX, and X, insofar as they allege violations of Plaintiff's Fifth Amendment rights; (iii) Count XIII (for injunctive relief); and (4) all official capacity claims against Defendant Kealoha, insofar as they seek money damages.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, April 30, 2012.

_Alan C. Kay_
_____
Alan C. Kay
Sr. United States District Judge

Baker v. Kealoha, et al., Civ. No. 11-00528 ACK-KSC:  Order Granting Defendants State of Hawaii and Governor Abercrombie's Motion for Judgment on the Pleadings, Granting in Part and Denying in Part Defendants City and County of Honolulu, Honolulu Police Department and Louis Kealoha's Motion to Dismiss, and Denying Plaintiff's Motion for a Preliminary Injunction.